IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
In re:                                                         :    Chapter 11
                                                               :
                                                               :    Case No. 09-14353 (___)
TUBO DE PASTEJÉ, S.A. DE C.V., et al.,[1]                      :
                                                               :    Joint Administration Requested
                                                               :
                        Debtors.                               :
---------------------------------------------------------------x

## DECLARATION OF RAFAEL DÁVILA OLVERA IN SUPPORT OF CHAPTER 11 PETITIONS AND VARIOUS FIRST DAY APPLICATIONS AND MOTIONS

I, Rafael Dávila Olvera, hereby declare under penalty of perjury:

1. I am the Chief Financial Officer of each of Tubo de Pastejé, S.A. de C.V. ("Tubo"), a corporation organized under the laws of the United Mexican States, and Cambridge-Lee Holdings, Inc. ("CLH"), a Delaware corporation, together the above-captioned debtors and debtors in possession (collectively, the "Companies"). In this capacity, I am responsible for overseeing the Companies' treasury, cash management, financial reporting, forecasting, and credit compliance functions, and am familiar with the Companies' businesses and financial affairs.

2. Concurrently with the filing of this declaration (the "Declaration") on the date hereof (the "Petition Date"), each of Tubo and CLH has filed in this Court a voluntary

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are Tubo de Pastejé, S.A. de C.V. (2827) ("Tubo") and Cambridge-Lee Holdings, Inc. (2123) ("CLH"). The service address for Tubo is Km. 109 Carretera Panamericana, México-Querétaro, Jocotitlán, Estado de México, 50700, and the service address for CLH is 86 Tube Drive, Reading, PA 19605.

petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code").

3. To operate effectively and minimize certain of the potential adverse effects of the commencement of these chapter 11 cases, the Companies have requested certain relief in "first day" applications and motions filed with the Court (collectively, the "First Day Pleadings"). The First Day Pleadings, described below, seek, among other things, to establish certain administrative procedures to promote a seamless transition into chapter 11. This relief will be critical to the Companies' restructuring efforts.

4. I submit this Declaration to assist the Court and other parties in interest in understanding the circumstances that compelled the commencement of these chapter 11 cases and in support of the Companies' petitions for relief under the Bankruptcy Code and the First Day Pleadings. Any capitalized term not defined herein shall have the meaning ascribed to that term in the relevant First Day Pleading. Except as otherwise indicated herein, all facts set forth in this Declaration are based on my personal knowledge, my discussions with other members of the Companies' senior management, my review of relevant documents, or my opinion based on my experience, knowledge, and information concerning the Companies' financial condition. If called upon to testify, I could and would testify competently to the facts set forth in this Declaration. I am authorized to submit this Declaration on behalf of both Tubo and CLH.

5. Part I of this Declaration provides an overview of the businesses, organizational structure, and capital structure of the Companies as well as an overview of the circumstances leading to the commencement of these chapter 11 cases. Part II summarizes the motion for joint administration and other motions or applications filed on the Petition Date.

I. **Business; Organizational Structure; Circumstances Leading to Bankruptcy**

6. Tubo and CLH were both established on April 29, 1993, as holding companies. Tubo is a wholly owned subsidiary of Industrias Unidas, S.A. de C.V. ("IUSA"), which is a large diversified industrial group that manufactures a range of copper and electrical products. Tubo is the direct parent company of CLH. CLH is either the majority or sole parent of several United States based operating subsidiaries (the "Non-Debtor U.S. Entities"). The Non-Debtor U.S. Entities are part of IUSA's copper tubing and copper alloys businesses and handle related trading and manufacturing activities and personnel and services in the United States. None of the Non-Debtor U.S. Entities is a debtor in these cases.

7. Each of Tubo and CLH is a privately owned entity, and equity securities in the Companies are not listed or traded on any public exchange or market. Tubo maintains its corporate headquarters at Paseo de la Reforma 2608, Penthouse, Colonia Lomas Altas, 11950, Mexico, D.F., Mexico. CLH maintains its corporate headquarters at 86 Tube Drive, Reading, PA 19605.

8. _Prepetition Indebtedness_. IUSA, as issuer, The Bank of New York Mellon (formerly The Bank of New York), as trustee, (the "Trustee") and certain guarantors are parties to that certain Indenture, dated as of November 13, 2006, (as modified and supplemented, the "Indenture") pursuant to which IUSA issued $200 million in 11.50% senior notes due 2016 (the "Notes"). On November 16, 2006, Tubo, as pledgor, and the Trustee entered into that certain Pledge and Security Agreement (the "Pledge"). Pursuant to the Pledge, Tubo granted to the Trustee for the benefit of the Notes a non-recourse pledge of the capital stock of CLH (the "Pledged Stock").

9.  <u>Circumstances Leading To Bankruptcy</u>. IUSA and its subsidiaries, including the Companies and the Non-Debtor U.S. Entities (collectively, the "<u>IUSA Group</u>"), have been negatively affected by general economic conditions worldwide, which have depressed spending and the construction industry, which contains major consumers of the products of the IUSA Group. In addition, increased volatility in the price of commodities, especially copper, has resulted in increased costs of manufacturing. As a result, the IUSA Group has experienced cash flow issues in the months leading up the Petition Date and IUSA failed to make an interest payment that became due under the Notes on November 15, 2009 (the "<u>Technical Default</u>"). Pursuant to the Indenture, there is a grace period for payment of interest, which is applicable to the Technical Default and expires in mid December.

10.  The IUSA Group has been exploring a long term solution for its cash flow problems, seeking to bridge the current economic dislocation. Representatives of the IUSA Group have initiated discussions with an *ad hoc* group of holders of the Notes (the "<u>Noteholders</u>") regarding the Technical Default and a potential restructuring of certain terms of the Indenture. To this end, the IUSA Group made a proposal to the Noteholders, contemporaneously with the initiation of the Technical Default, by which IUSA requested relief on interest payments due pursuant to the Notes while promising full payment of the principal over a longer timeframe than contemplated in the Notes.

11.  As of the Petition Date, the Noteholders were in the process of organizing and hiring counsel to assist them in negotiations with the IUSA Group. While the Noteholders are organizing and negotiations are ongoing, it appears unlikely that any agreement or forbearance will be entered into prior to the expiration of the grace period. Therefore, to

maintain the status quo and preserve valuable equity in certain of the Non-Debtor U.S. Entities represented by the Pledged Stock, the Companies have commenced these chapter 11 cases.

12. As of the Petition Date, neither Tubo nor CLH has any employees. Neither of the Companies has any accounts or cash other than intercompany payables and receivables. IUSA has funded retainers for the Companies' counsel in the chapter 11 cases. The Non-Debtor U.S. Entities use their own bank accounts and a system of intercompany transactions in order to fund their operations. All United States property insurance policies are issued to Non-Debtor U.S. Entities. Certain other policies were historically issued in the CLH name, although payments were made by one or more of the Non-Debtor U.S. Entities and allocated to others through intercompany charges.

13. There are virtually no pending claims or transactions directly between CLH and its affiliates.[2] Corporate allocations of expenses, management fees, and other fees allocable to the Non-Debtor U.S. Entities are levied directly on the Non-Debtor U.S. Entities. Any dividends paid by the Non-Debtor U.S. Entities to CLH are up-streamed through CLH to IUSA, as a result of CLH's status as parent of the Non-Debtor U.S. Entities. As of the Petition Date, Tubo owed certain of its affiliates approximately $6 million in three intercompany receivables resulting from asset tax payments in Mexico.

---

[2] The Companies have identified only one intercompany "transaction" between CLH and the Non-Debtor U.S. Entities which may be considered currently pending. Certain advances by two Non-Debtor U.S. Entities to IUSA, which advances the Companies believe to be permanent distributions, may technically flow through CLH and Tubo before going to IUSA. This is merely a book-keeping matter. The funds have been advanced to IUSA, but may not have been properly classified on the books of CLH or Tubo.

## II. First Day Motions and Applications

### A. Joint Administration Motion

14. On the Petition Date, the Companies filed with the Court a motion seeking entry of an order directing the joint administration of Tubo and CLH's chapter 11 cases for procedural purposes only (the "Joint Administration Motion"). The Companies believe this motion is necessary to enable them to operate their businesses with minimal disruption and loss of productivity.

15. The Companies anticipate that, during the course of their chapter 11 cases, it will be necessary to file numerous motions and applications seeking relief on behalf of both Tubo and CLH. Joint administration will further the interests of judicial economy by obviating the necessity of filing duplicate motions, entering duplicate orders, maintaining duplicate files, and forwarding duplicate notices to parties-in-interest. The United States Trustee for the District of Delaware ("U.S. Trustee") and other parties in interest will similarly benefit from joint administration because it will spare them the time and effort of reviewing duplicative pleadings and papers.

16. The rights of the respective creditors of Tubo and CLH will not be adversely affected by the proposed joint administration of these cases, and, in fact, the rights of all creditors will be enhanced by the reduction in costs resulting from the joint administration.

17. I believe that joint administration of Tubo and CLH's chapter 11 cases is in the best interests of the Companies, their estates, and all parties in interest and that the Joint Administration Motion should be granted in all respects.

### B. Retention of Counsel

18. Pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, the Companies have requested that the Court approve the employment of Milbank, Tweed, Hadley & M<sup>c</sup>Cloy LLP ("Milbank"), as their counsel, and Pachulski, Stang, Ziehl & Jones LLP ("PSZJ"), as their Delaware counsel, each under a general retainer, to perform the extensive legal services that will be required during these chapter 11 cases (the "Retention Applications"). The Companies have selected Milbank and PSZJ as their attorneys because of the firms' extensive general experience and knowledge, and, in particular, recognized expertise in the field of debtors' protections, creditors' rights, and business reorganizations under chapter 11 of the Bankruptcy Code.

19. Milbank is also is familiar with the Companies' businesses and financial affairs and is well qualified to provide the services required by the Companies in their chapter 11 cases. Prior to the Petition Date, the Companies engaged Milbank to assist and advise them with respect to formulating, evaluating, and implementing various restructuring, reorganization, and other strategic alternatives. Notably, Milbank advised IUSA in connection with its 2006 offering of the Notes and in setting up its $150 million euro short-term note program in 2007, as well as additional matters relating to those transactions. Most recently, Milbank assisted and advised the Companies in connection with the preparation for, and commencement of, these chapter 11 cases. Accordingly, Milbank has significant relevant experience with the Companies to deal effectively and efficiently with the potential legal issues and problems that may arise in the context of these chapter 11 cases. The Companies believe that Milbank is both well qualified and uniquely able to represent them in their chapter 11 cases in an efficient and timely manner.

20. I believe that the retention of Milbank and PSZJ as the attorneys for the Companies is in the best interests of the Companies, their estates, and all parties in interest and that the Retention Applications should be granted in all respects.

[THE REMAINDER OF THIS PAGE WAS INTENTIONALLY LEFT BLANK]

## Conclusion

21. I believe approval of the First Day Pleadings is in the best interests of all stakeholders. I respectfully request that the Court grant all relief requested in those pleadings and such and other further relief as may be just and proper.

I declare that this Declaration is true and correct to the best of my knowledge, information, and belief.

By: _____
Rafael Dávila Olvera
Chief Financial Officer