# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x
In re:                                              :       Chapter 11
                                                    :
                                                    :       Case No. 09-14353 (KJC)
TUBO DE PASTEJÉ, S.A. DE C.V., et al.,[1]           :
                                                    :       Jointly Administered
                                                    :
                    Debtors.                        :
------------------------------------------------------------x

**Objection Deadline: October 26, 2010, at 4:00 p.m. (prevailing Eastern time)**
**Hearing Date: November 2, 2010, at 3:00 p.m. (prevailing Eastern time)**

## SECOND MOTION FOR ORDER, PURSUANT TO 11 U.S.C. §§ 105(a) AND 1121(d), EXTENDING EXCLUSIVE PERIODS TO FILE PLAN OF REORGANIZATION AND SOLICIT ACCEPTANCES THEREOF

Tubo de Pastejé, S.A. de C.V. ("Tubo") and Cambridge-Lee Holdings, Inc. ("CLH" and, together with Tubo, the "Company"), the above-captioned debtors and debtors in possession, hereby submit this motion (the "Motion") for entry of an order, pursuant to sections 105(a) and 1121(d) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), extending the period during which only the Company may file a plan of reorganization (the "Exclusive Filing Period") and the period during which only the Company may solicit acceptances thereto (the "Exclusive Solicitation Period" and, together with the Exclusive Filing Period, the "Exclusivity Periods"), each by approximately three months. In support of this Motion, the Company respectfully states as follows:

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are Tubo de Pastejé, S.A. de C.V. (2827) ("Tubo") and Cambridge-Lee Holdings, Inc. (2123) ("CLH"). The service address for Tubo is Km. 109 Carretera Panamericana, México-Querétaro, Jocotitlán, Estado de México, 50700, and the service address for CLH is 86 Tube Drive, Reading, PA 19605.

**Preliminary Statement**

1.  Industrias Unidas, S.A. de C.V. ("IUSA") is the direct parent company of Tubo. IUSA, as issuer, The Bank of New York Mellon (formerly The Bank of New York), as trustee, (the "Trustee") and certain guarantors are parties to that certain Indenture, dated as of November 13, 2006 (as modified and supplemented, the "Indenture") pursuant to which IUSA issued $200 million in 11.50% senior notes due 2016 (the "Notes"). On November 16, 2006, Tubo, as pledgor, and the Trustee entered into that certain Pledge and Security Agreement (the "Pledge"). Pursuant to the Pledge, Tubo granted to the Trustee for the benefit of the Notes a non-recourse pledge of the capital stock of CLH (the "Pledged Stock").

2.  The Company commenced these chapter 11 cases (the "Chapter 11 Cases") approximately ten months ago in the face of a drastic downturn in the global economy, which depressed spending and the construction industry, the major consumers of the products of the Company's non-debtor operating subsidiaries (the "Subsidiaries") and the other operating subsidiaries of IUSA (IUSA and its subsidiaries, including the Company and the Subsidiaries, collectively, the "IUSA Group"). In addition, increased volatility in the price of commodities, especially copper, has resulted in increased costs of manufacturing. As a result, the IUSA Group experienced cash flow issues in the months leading up to the filing of the Company's chapter 11 petitions and IUSA failed to make an interest payment that became due under the Notes on November 15, 2009 (the "Technical Default"). A grace period for payment of interest, which is applicable to the Technical Default, expired in mid-December 2009. To maintain the status quo and preserve valuable equity in the Subsidiaries, the Company commenced these Chapter 11 Cases.

3. The IUSA Group has been exploring a long term solution for its cash flow problems, seeking to bridge the current economic dislocation. Representatives of the IUSA Group have participated in discussions, starting before the Petition Date, with an *ad hoc* group of holders of the Notes (the "Noteholders") regarding the Technical Default and a potential restructuring of certain terms of the Indenture.

4. As of the date hereof, the negotiations among the IUSA Group, the Noteholders, and other key creditor constituencies of the IUSA Group are continuing and the Company has made significant progress during the course thereof. In fact, the Company expects that it will soon be able to file a consensual plan of reorganization (and disclosure statement) based on the outcome of these negotiations.

5. On March 19, 2010, the Company filed the Debtors' Motion For Order Pursuant to 11 U.S.C. §§ 105(a) and 1121(d) Extending Exclusive Periods to File Plan of Reorganization and Solicit Acceptances Thereof (Docket No. 77). This Court granted such motion on April 7, 2010, pursuant to the Order Pursuant to 11 U.S.C. §§ 105(a) and 1121(d) Extending Exclusive Periods to File Plan of Reorganization and Solicit Acceptances Thereof (Docket No. 92). The exclusive periods extended pursuant to such order are currently scheduled to expire on October 7, 2010 and December 6, 2010, respectively.

6. The Company, and the IUSA Group generally, continue to negotiate with their stakeholders to develop an appropriate exit from bankruptcy for the Company and the Company believes that the parties are close to a consensual resolution. Accordingly, an extension of the Exclusivity Periods as requested in this Motion is warranted and should be granted.

## Background

### A. Chapter 11 Cases

7. On December 8, 2009 (the "Petition Date"), CLH and Tubo de Pasteje, S.A. de C.V. each filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code. Each debtor continues to operate its businesses and manage its estate as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases, and no committees have been appointed or designated.

### B. Business Operations

8. Tubo and CLH are holding companies established in 1993. Tubo, a corporation organized under the laws of the United Mexican States, is a wholly owned subsidiary of IUSA, which is part of a large diversified industrial group that manufactures copper and electrical products. CLH, a Delaware corporation, is a direct subsidiary of Tubo, and is either the majority or the sole equity owner of several United States-based operating Subsidiaries. As of the Petition Date, neither debtor had any employees, nor substantial cash or accounts other than limited intercompany payables and receivables.

9. The Subsidiaries are active participants in IUSA's copper tubing and copper alloy businesses and conduct trading and manufacturing activities and services in the United States. The Subsidiaries use their own bank accounts and a system of intercompany transactions to fund their operations. Corporate expenses allocated to the Subsidiaries, including management and professional fees, are levied directly on the Subsidiaries. None of the Subsidiaries is a debtor in the Chapter 11 Cases.

### Jurisdiction and Venue

10. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relief Requested

11. By this Motion, the Company requests the entry of an order, pursuant to sections 105(a) and 1121(d) of the Bankruptcy Code, extending (i) the Exclusive Filing Period approximately 90 days, from October 7, 2010, to and including January 5, 2011, and (ii) the Exclusive Solicitation Period, approximately 90 days, from December 6, 2010, to and including March 7, 2011. The Company additionally requests that these extensions be granted without prejudice to its right to seek further extensions of the Exclusivity Periods.

### Basis for Relief Requested

12. To promote balanced and successful reorganizations under chapter 11 of the Bankruptcy Code, Congress provided debtors with the exclusive right, for a reasonable period of time, to propose a plan of reorganization and solicit votes thereon. Section 1121(b) of the Bankruptcy Code establishes an initial period of 120 days after the commencement of a chapter 11 case during which only a debtor may file a plan. See 11 U.S.C. § 1121(b). If the debtor files a plan within such 120-day period, section 1121(c)(3) of the Bankruptcy Code extends the exclusivity period to 180 days after the commencement of a chapter 11 case to permit the debtor to garner support for such plan. See 11 U.S.C. § 1121(c)(3).

13. Congress further provided bankruptcy courts the authority and flexibility to extend a debtor's Exclusivity Periods upon a demonstration of cause, subject to certain limitations. Specifically, section 1121(d) of the Bankruptcy Code provides:

5

> (1) Subject to paragraph (2), on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.
>
> (2)(A) The 120-day period specified in paragraph (1) may not be extended beyond a date that is 18 months after the date of the order for relief under this chapter.
>
> (B) The 180-day period specified in paragraph (1) may not be extended beyond a date that is 20 months after the date of the order for relief under this chapter.

11 U.S.C. § 1121(d).[2] The party requesting an extension to the Exclusivity Periods bears the burden of establishing cause for such extensions. See In re Newark Airport/Hotel L.P., 156 B.R. 444, 451 (Bankr. D.N.J.), aff'd, 155 B.R. 93 (D.N.J. 1993) ("Since the debtor seeks the extension, the burden is on it to demonstrate the existence of good cause."); In re Pine Run Trust, Inc., 67 B.R. 432, 434 (Bankr. E.D. Pa. 1986) (same).

14. Although the Bankruptcy Code does not define "cause," legislative history and case law indicate that it is intended to be a flexible standard allowing bankruptcy courts, in their discretion, to balance the competing interests of debtors and their creditors. See H.R. Rep. No. 95-595, at 231, 232 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6191 (noting that Congress intended to give bankruptcy courts flexibility to protect a debtor's interest by allowing it an unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest). See also First American Bank of New York v. Southwest Gloves and Safety Equip., Inc., 64 B.R. 963, 965 (D. Del. 1986) (noting section 1121(d) of Bankruptcy Code provides bankruptcy court with flexibility to "increase [the] period of exclusivity in its discretion"). For this reason, the decision to extend a debtor's exclusivity is committed to the

---

2   The extensions requested herein to the Company's Exclusivity Periods do not implicate either the 18-month or 20-month absolute deadlines set forth in section 1121(d)(2)(A) and (B), respectively.

sound discretion of the bankruptcy court based upon the facts and circumstances of each particular case. See, e.g., In re Adelphia Commc'ns Corp., 352 B.R. 578, 586 (Bankr. S.D.N.Y. 2006) ("A decision to extend or terminate exclusivity for cause is within the discretion of the bankruptcy court and is fact-specific.").

15. Bankruptcy courts typically examine several of the following factors in determining whether a debtor has had an adequate opportunity to develop, negotiate, and propose a chapter 11 plan and thus whether there is "cause" to extent the Exclusivity Periods:

(i) the size and complexity of the debtor's case;

(ii) the necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;

(iii) the existence of good faith progress towards reorganization;

(iv) the fact that the debtor is paying its bills as they become due;

(v) whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(vi) whether the debtor has made progress in negotiations with its creditors;

(vii) the amount of time which has elapsed in the case;

(viii) whether a debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtors' reorganization demands; and

(ix) whether an unresolved contingency exists.

See, e.g., id. at 587 (listing all nine factors) (citing In re Dow Corning Corp., 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997)); In re Express One Int'l. Inc., 194 B.R, 98, 100 (Bankr. E.D. Tex. 1996) (same). Not all factors are relevant to every case, and courts have found cause to extend exclusivity based on various combinations of these factors, as well as others. See Bunch v. Hoffinger Indus. (In re Hoffinger Indus.), 292 B.R. 639, 644 (B.A.P. 8th Cir. 2003) ("[W]e emphasize that these are only factors, not all of which are relevant in every case. . . . It is within the discretion of the bankruptcy court to decide which factors are relevant and give appropriate

7

weight to each."); see, e.g., In re Homestead Partners, Ltd., 197 B.R, 706, 720 (Bankr. N.D. Ga. 1996) (finding "cause" to extend exclusivity where substantial progress towards plan had been made and complex legal issues have occupied much of the debtor's plan-making opportunities); In re Amko Plastics, Inc., 197 B.R. 74 (Bankr, S.D. Ohio 1996) (finding "cause" to extend exclusivity where insufficient time had passed for debtor to negotiate realistically with creditors and no evidence of unwillingness to do so or lack of good faith); In re Newark Airport/Hotel L.P., 156 B.R. at 451 (finding "cause" to extend exclusivity where plan negotiations were slowed by, among other things, protracted cash collateral dispute); In re Express One International. Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (finding "cause" to extend exclusivity where case was sufficiently large and complex and debtor had been diligent in its attempts to reorganize).

16. Notwithstanding the pending deadline on October 7, 2010, of the current Exclusive Filing Period, pursuant to rule 9006-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the filing of this Motion shall operate to automatically extend the existing deadline until such time as this Court has had an opportunity to consider the relief requested herein.

### Cause Exists to Extend the Company's Exclusivity Periods

17. As set forth below, application of certain of the relevant foregoing factors to the facts present in these Chapter 11 Cases demonstrates ample "cause" to grant the Company's requested extensions of the Exclusive Periods.

**I.   More Time Is Needed To Permit the Company To Negotiate
      Consensual Plan And Prepare Adequate Information**

18. In considering an extension of a debtor's exclusive periods, courts often assess a debtor's progress towards development of a consensual plan. See, e.g., In re Amko Plastics, Inc., 197 B.R. at 77. The Company, together with the IUSA Group, have engaged in

8

extensive and continuing discussions with the Noteholders and other creditor constituents and, in fact, the parties have exchanged numerous drafts of a term sheet proposal outlining, among other things, the IUSA Group's proposal to restructure the Notes. Once the parties have reached an agreement in principle, the Company expects to be able to formulate and file a plan of reorganization and disclosure statement shortly thereafter. The Company is not seeking the requested extensions to pressure creditors to meet the Company's demands. The Company submits that extension of the Exclusivity Periods is warranted to allow the Company adequate opportunity to finalize and confirm a chapter 11 plan of reorganization.

## II. The Company Has Made Good Faith Progress Towards Reorganization

19. As discussed above, the Company has made significant progress in these Chapter 11 Cases -- i.e., by actively working with the Noteholders and other creditor constituencies in an attempt to reach a consensual restructuring of the Company's debt. The Company's request to extend the Exclusive Filing Period is intended to facilitate an orderly, efficient and cost-effective process for the benefit of the Noteholders and all creditors. See In re McLean Indus., Inc., 87 B.R. at 834 (stating courts may assess whether debtor's motives for seeking extension of exclusivity are proper). The Company has been, and will continue to be, engaged in discussions with its creditor constituents, including the Noteholders, with respect to its business plan and ultimate reorganization and is not seeking the requested extensions to pressure creditors to the Company's demands. Accordingly, a three-month extension of the Exclusive Periods is warranted.

## III. The Company Is Paying Its Postpetition Obligations As They Become Due

20. Courts considering whether to extend a debtor's exclusive period may also assess its liquidity and solvency. See In re Hoffinger Indus., 292 B.R. at 644 (affirming

9

extension of exclusivity based, in part, on evidence that debtor "is paying its postpetition expenses as they become due and adequate cash and lines of credit are in place to pay administrative claims in the future"); In re McLean Indus., 87 B.R, at 834 (holding debtor's use of cash to maintain other assets did not prejudice its right to seek extension of exclusivity). With access to the cash of its non-debtor Subsidiaries, the Company has sufficient liquidity to pay, and is paying, its postpetition bills as they come due, including United States Trustee's fees, insurance premiums, and related fees. Moreover, the Company believes that it will have sufficient cash to continue to pay its postpetition obligations as they become due. Thus, the Company is managing its business effectively and preserving the value of its assets for the benefit of creditors, warranting an extension of the Exclusivity Periods.

**IV.    The Company's Chapter 11 Cases Have Been Pending For Less Than Ten Months**

21.    This is the second request for an extension of the Exclusive Periods, and it comes less than ten months after the Petition Date. As noted above, although the Company has made substantial progress since the Petition Date negotiating with the Noteholders and laying the groundwork for its reorganization, it still must, among other things, negotiate the terms of a plan of reorganization with its creditor constituents and better understand the outcome of issues affecting the copper tubing industry and financial markets as a whole. The Company seeks an extension of each of the Exclusivity Periods to negotiate and propose a plan and prepare a disclosure statement containing adequate information. Accordingly, a 90 day extension of the Company's Exclusive Periods is warranted.

**No Prior Request**

22.    No prior application for the relief sought herein has been duly made by the Company to this or any other Court.

## Notice

23. Notice of this Application has been provided to (i) the U.S. Trustee; (ii) The Bank of New York Mellon (formerly The Bank of New York), as trustee under that certain Indenture, dated as of November 13, 2006, pursuant to which IUSA issued $200 million in 11.50% senior notes due 2016; (iii) the creditors holding the twenty (20) largest unsecured claims against the Company, as listed on their chapter 11 petitions; and (iv) those persons who have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. The Company submits that, in light of the relief requested, no other or further notice need be provided.

**WHEREFORE**, the Company respectfully requests entry of an order, substantially in the form attached to this Motion, (i) extending the Exclusive Filing Period to and including January 5, 2011; (ii) extending the Exclusive Solicitation Period to and including March 7, 2011; (iii) preserving the Company's right to seek further extensions of the Exclusivity Periods; and (iv) granting such other relief as the Court deems just and proper.

Dated: October 6, 2010

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
Michael R. Seidl (Bar No. 3889)
919 North Market Street, 17th Floor
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
   ljones@pszjlaw.com
   mseidl@pszjlaw.com

-and-

MILBANK, TWEED, HADLEY & McCLOY LLP
Dennis F. Dunne
Risa M. Rosenberg
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
   ddunne@milbank.com
   rrosenberg@milbank.com

*Attorneys for Tubo de Pasteje, S.A. de C.V. and Cambridge-Lee Holdings, Inc.*