Reorganized Debtors as necessary to continue the D&O Liability Insurance Policies in full force) all of the D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained herein, Confirmation of the Plan shall not discharge, impair, or otherwise modify any obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such obligation shall be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be Filed.

### 6.5 **Compensation and Benefits Plans**.

6.5.1 Except and to the extent previously assumed by an order of the Bankruptcy Court, on or before the Confirmation Date, all employee compensation and Benefit Plans, including Benefit Plans and programs subject to sections 1114 and 1129(a)(13) of the Bankruptcy Code, entered into before or after the Petition Date and not since terminated, shall be deemed to be, and shall be treated as if they were, executory contracts that are to be assumed hereunder. The Debtors' obligations under such plans and programs shall survive confirmation of the Plan, except for (1) executory contracts or Benefit Plans specifically rejected pursuant to the Plan (to the extent such rejection does not violate sections 1114 and 1129(a)(13) of the Bankruptcy Code) and (2) such executory contracts or Benefit Plans as have previously been rejected, are the subject of a motion to reject as of the Confirmation Date or have been specifically waived by the beneficiaries of any of such Benefit Plans or executory contracts.

6.5.2 Neither of the Debtors is a sponsor of a defined benefit pension plan under ERISA. However, the Retirement Plan Sponsor, a Non-Debtor Subsidiary, is the sponsor of the Retirement Plan that has been frozen since 1993. As of the most recent FAS valuation of the Retirement Plan for the fiscal year ended December 31, 2009, the Retirement Plan was adequately funded, with funding in excess of the aggregate pension benefit obligations under the Retirement Plan. After the Plan Effective Date, the respective obligations, if any, of the Reorganized Debtors and the Retirement Plan Sponsor will be reinstated under the Plan.

## SECTION 7.
## PROVISIONS GOVERNING DISTRIBUTIONS

7.1 **Timing and Calculation of Amounts to Be Distributed**. Except as otherwise provided in the Plan, on the Plan Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Plan Effective Date, on the date that such a Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtors as of the Distribution Record Date shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class and in the manner provided herein. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Section 7.4 hereof. Except as otherwise provided herein, Holders of

Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Plan Effective Date.

7.2 **Disbursing Agent**.

7.2.1 Except as otherwise provided herein, all distributions under the Plan shall be made by the Reorganized Debtors as Disbursing Agents or such other Entity designated by the Reorganized Debtors as a Disbursing Agent on the Plan Effective Date. A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. In the event that a Disbursing Agent is so ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtors.

7.2.2 Distributions of the New Series A Notes shall be made by IUSA to the Indenture Trustee for the benefit of the Holders of the Noteholder Pledge Claims.

7.3 **Rights and Powers of Disbursing Agent**.

7.3.1 *Powers of Disbursing Agent*. The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

7.3.2 *Expenses Incurred On or After Plan Effective Date*. Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Plan Effective Date (including taxes) and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors. Notwithstanding the foregoing, the Reorganized Debtors shall have no obligation to pay any fees or expenses incurred, or any compensation or expense reimbursement claims made, by IUSA on account of the distributions of the New Series A Notes.

7.4 **Distributions on Account of Claims Allowed After the Plan Effective Date**.

7.4.1 *Payments and Distributions on Disputed Claims*. Distributions made after the Plan Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Plan Effective Date but which later become Allowed Claims shall be deemed to have been made on the Plan Effective Date.

7.4.2 *Special Rules for Distributions to Holders of Disputed Claims*. Notwithstanding any provision otherwise in the Plan and except as may be agreed to by the Debtors or the Reorganized Debtors, on the one hand, and the Holder of a Disputed Claim, on the other hand, no partial payments and no partial distributions shall be made with respect to any

Disputed Claim until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

7.5 **Delivery of Distributions and Undeliverable or Unclaimed Distributions**.

7.5.1 *Delivery of Distributions in General*. Except as otherwise provided herein, the Reorganized Debtors shall make distributions to Holders of Allowed Claims, except for Holders of Allowed Claims in Class T3, at the address for each such Holder as indicated on the Debtors' books and records as of the date of any such distribution; provided, however, that the manner of such distributions shall be determined at the discretion of the Reorganized Debtors; and provided, further, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in the Debtors' books and records or, as applicable, any Proof of Claim filed by that Holder. Distributions of New Series A Notes of the Reorganized Debtors to Holders of Allowed Claims in Class T3 shall be made to the Indenture Trustee for the benefit of the Holders of the Noteholder Pledge Claims and Unsecured Parent Guaranty Claims as provided herein. The Indenture Trustee shall, in turn, promptly administer the distributions to the Holders of Allowed Noteholder Pledge Claims, in accordance with the Plan and the Existing Indenture.

7.5.2 *Distributions Free and Clear*. Except as otherwise provided herein, any distributions under the Plan and the issuance and distribution of the New Notes shall be free and clear of any Liens, Claims and encumbrances, and no other entity, including but not limited to the Debtors, the Reorganized Debtors, or the members of the IUSA Group shall have any interest, legal, beneficial or otherwise, in assets transferred to holders of Allowed Claims or Eligible Debt pursuant to the Plan.

7.5.3 *Undeliverable Distributions and Unclaimed Property*. In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then current address of such Holder, at which time such distribution shall be made to such Holder without interest; provided, however, such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the Plan Effective Date. After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors or IUSA, as applicable (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such Claim shall be discharged and forever barred.

7.5.4 *Compliance with Tax Requirements/Allocations*. In connection with the Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors reserve the

right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens and encumbrances. Except as otherwise provided herein, distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

       7.5.5 *Setoff*. Each Debtor and each Reorganized Debtor may withhold (but not set off except as set forth below) from the distributions called for under the Plan on account of any Allowed Claim (other than a Noteholder Pledge Claim or the Unsecured Parent Guaranty Claims) an amount equal to any claims, equity interests, rights, and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the Holder of any such Allowed Claim. In the event that any such claims, equity interests, rights, and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the Holder of any such Allowed Claim are adjudicated by Final Order or otherwise resolved, the Debtors may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant hereto on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim) the amount of any adjudicated or resolved claims, equity interests, rights, and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the Holder of any such Allowed Claim, but only to the extent of such adjudicated or resolved amount. Neither the failure to effect such a setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such claims, equity interests, rights, and Causes of Action that the Debtors or the Reorganized Debtors may possess against any such Holder, except as specifically provided herein.

## SECTION 8.
## MEANS FOR IMPLEMENTATION OF THE PLAN

       8.1 **Continued Corporate Existence**. The Reorganized Debtors shall continue to exist after the Plan Effective Date as separate corporate entities in accordance with applicable law under their respective Corporate Documents, except to the extent such Corporate Documents may be amended including to comply with section 1123(a)(6) of the Bankruptcy Code, without the need for any further corporate action. Any proposed amendments to the Corporate Documents, including but not limited to any changes in the corporate and organizational structure of the Debtors, shall be filed in the Plan Supplement. On and after the Plan Effective Date, the Corporate Documents, as so amended, if necessary, shall continue to govern the Reorganized Debtors' operations. After the Plan Effective Date, the Reorganized Debtors shall be authorized to (i) establish new by-laws or corporate charters for either of the Reorganized Debtors, and/or (ii) change the corporate structure (e.g., corporation to limited liability company) of either Reorganized Debtor under the law of its applicable jurisdiction of organization, without further order of the Bankruptcy Court.

       8.2 **Revesting of Assets**. Except as otherwise set forth herein or in the Confirmation Order, as of the Plan Effective Date, the property of the Estates, together with any property of the Debtors that is not property of the Estates and that is not specifically disposed of pursuant to the Plan, shall revest in the applicable Reorganized Debtors free and clear of all Claims, Liens,

encumbrances and other interests of the Holders of Claims or Interests. Thereafter, the Reorganized Debtors may operate their businesses and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code, Bankruptcy Rules, and Bankruptcy Court.

8.3    **Operation of Business and Properties**.  Without limiting the generality of the foregoing, all rights, privileges, entitlements, authorizations, grants, permits, licenses, easements, franchises, and other similar items which constitute part of, or are necessary or useful in the operation of the property or the business of the Debtors or the Reorganized Debtors, whether in the United States, Mexico or elsewhere, shall be vested in the applicable Reorganized Debtors on the Plan Effective Date, and shall thereafter be exercisable and usable by the Reorganized Debtors to the same extent they would have been exercisable and usable by the Debtors before the Petition Date or by the Estates or Debtors in Possession during the pendency of the Chapter 11 Cases.

8.4    **Retention of Causes of Action**.  Except to the extent any Causes of Action are expressly and specifically waived, released or abandoned under the Plan or the Confirmation Order, or pursuant to any contract, instrument, release, or other agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code: (1) any and all Causes of Action accruing to any Debtor or its Estate against any Person shall remain assets of and vest in the applicable Reorganized Debtor, whether or not litigation relating thereto is pending on the Plan Effective Date, and whether or not such Causes of Action have been listed or referred to in the Plan, the Disclosure Statement, the Schedule of Retained Causes of Action, or any other document Filed with the Bankruptcy Court; and (2) neither any Debtor nor any Reorganized Debtor waives, relinquishes, or abandons (nor shall they be estopped or otherwise precluded from asserting) any Causes of Action: (a) whether or not such Causes of Action have been listed or referred to in the Plan, the Disclosure Statement, the Schedule of Retained Causes of Action, or any other document Filed with the Bankruptcy Court; (b) whether or not such Causes of Action are currently known to the Debtors; and (c) whether or not a defendant in any litigation relating to such Causes of Action Filed a Proof of Claim, a notice of appearance or any other pleading or notice in the Chapter 11 Cases, voted for or against the Plan, or received or retained any consideration under the Plan.  Without in any manner limiting the generality of the foregoing, notwithstanding any otherwise applicable principle of law or equity, including, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion or any similar doctrine, the failure to list, disclose, describe, identify, or refer to any Causes of Action in the Plan, the Schedule of Retained Causes of Action or any other document Filed with the Bankruptcy Court shall in no manner waive, eliminate, modify, release, or alter the Reorganized Debtors' right to commence, prosecute, defend against, settle, and realize upon any Causes of Action that any Debtor or any Reorganized Debtor has, or may have, as of the Confirmation Date.

8.4.1    Without limiting the generality of the foregoing, except as otherwise provided in the Plan, the Confirmation Order, any other order of the Bankruptcy Court or any Plan Document, nothing shall affect any Debtor's or Reorganized Debtor's rights and defenses, both legal and equitable, with respect to any Disputed Claims, including, but not limited to, all rights with respect to legal and equitable defenses to setoffs or recoupments against such Claims.

8.4.2   Due to the Plan's Unimpaired and/or agreed treatment of Claims, the Debtors and the Reorganized Debtors waive their rights to institute or prosecute any Avoidance Actions.

8.5     **Cancellation of Existing Agreements**.

8.5.1   Except for the purposes of evidencing a right to distribution under the Plan, and except as expressly provided in the Plan or the Confirmation Order, on the Plan Effective Date, the Existing Indenture, the Existing Pledge Agreement and any and all notes, instruments or other documents evidencing the Old 2016 Notes, the Noteholder Pledge Claims, the ESBDS Loan and the Unsecured Parent Guaranty Claims shall be deemed cancelled and extinguished and of no further force and effect, and, upon the delivery to the Holders of the Allowed Noteholder Pledge Claims and Allowed Unsecured Parent Guaranty Claims their ratable distribution of the New Series A Notes as set forth in Section 4, the obligations of the Debtors, the Non-Debtor Subsidiaries, IUSA, the Existing Guarantors and any of their respective affiliates to the Holders of the Old 2016 Notes and ESBDS Loan shall be discharged. The Indenture Trustee is authorized to take whatever action may be necessary or appropriate (in each case, as requested by Tubo or Reorganized Tubo) to effectuate the terms and conditions specified herein. Without limiting the generality of the foregoing, the Indenture Trustee shall be expressly obligated to deliver to the trustee under the New Series A Indenture the shares pledged pursuant to the New Pledge Agreement to be held as collateral for the New Series A Notes.

8.5.2   For the avoidance of doubt, this Section 8.5 shall apply only to notes, instruments or other documents which evidence the Old 2016 Notes, the ESBDS Loan and any guaranties and pledges thereunder, and except as otherwise expressly provided the Plan or the Confirmation Order, all other notes, instruments, and other documents evidencing Claims against any Debtor shall continue in full force and effect after the Plan Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

8.5.3   Notwithstanding the foregoing, the Existing Indenture shall continue in effect for the purposes of allowing IUSA and/or the Indenture Trustee to make all distributions on account of the Allowed Noteholder Pledge Claims pursuant to the Plan and to perform any other necessary administrative functions with respect thereto.

8.6     **New Notes**.  A full description of the New Series A Notes and New Series B Notes is attached to the Disclosure Statement as Exhibit 4, and the New Indentures shall be included in the Plan Supplement.

8.7     **Restructuring Transactions**.  On the Plan Effective Date, the following restructuring transactions (the "Restructuring Transactions") shall be effectuated:

8.7.1   IUSA shall enter into the New Indentures for the New Notes;

8.7.2   IUSA shall issue and distribute the New Series A Notes to the (a) Holders of Old 2016 Notes/Allowed Noteholder Pledge Claims and (b) Holders of the ESBDS Loan/Holders of Allowed Unsecured Parent Guaranty Claims, in each instance in full and final satisfaction and discharge of all such obligations of any member of the IUSA Group with respect to such obligations;

8.7.3  IUSA shall issue and distribute the New Series B Notes to the Holders of Series B Eligible Debt that have elected to participate in the Consensual Exchange, in each instance in full and final satisfaction and discharge of all such obligations of any member of the IUSA Group with respect to such Series B Eligible Debt. Each Holder of Series B Eligible Debt shall receive New Series B Notes in a principal amount equal to (i) 100.00% of the principal amount of Series B Eligible Debt held by such Holder (other than Series B Eligible Debt consisting of Agreed Costs or Copper Debt Finalization Amount), plus (ii) unpaid and accruing interest on such principal amount of Series B Eligible Debt (other than Series B Eligible Debt consisting of Agreed Costs or Copper Debt Finalization Amount) at the rate set forth on Schedule A hereto from the date specified on Schedule A hereto through November 15, 2011, plus (iii) 1.75% of the principal amount of Eligible Debt and Copper Debt Finalization Amount held by such Holder, plus interest thereon compounded at the rate set forth on Schedule A hereto from May 15, 2010 through November 15, 2011, plus (iv) 100% of the Agreed Costs held by such Holder , plus interest thereon compounded at the rate set forth on Schedule A hereto from May 15, 2010 through November 15, 2011.

8.7.4  Tubo, and each other subsidiary of IUSA, S.A. de C.V. that has agreed to guarantee the New Notes pursuant to the terms of the Restructuring Agreement, shall execute and deliver the New Indentures as a guarantor thereunder; and

8.7.5  Tubo shall execute and deliver the New Pledge Agreement.

**8.8  Effectuating Documents; Further Transactions.**

8.8.1  The entry of the Confirmation Order shall constitute a direction to and authorization for the Plan Proponents and the Reorganized Debtors (as the case may be) and their respective directors and officers to take or cause to be taken any action that they deem necessary or appropriate to consummate the transactions contemplated by this Plan and the Plan Supplement, and to execute any contracts, instruments, and other agreements or documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, in each case, without further order by the Bankruptcy Court.

8.8.2  The appropriate officers (including the chief executive officer, chief financial officer, president, treasurer, or any vice president thereof) of each Reorganized Debtor, each acting singly, shall be authorized to execute, deliver, file or record such contracts, instruments, releases, and other agreements or documents, and take such actions, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and the transactions contemplated by the Plan and the Plan Supplement.  The secretary, assistant secretary or other appropriate officer of each Reorganized Debtor shall be authorized to certify or attest to any of the foregoing actions.

**8.9  Management of Reorganized Debtors.**

8.9.1  Subject to the New Corporate Documents, on the Plan Effective Date, the management, control, and operation of each Reorganized Debtor shall become the general responsibility of its respective board of directors in accordance with applicable non-bankruptcy law.  Except as otherwise disclosed on or before the Confirmation Date, the individuals serving

as members of the Board of Directors of each Debtor as of the Petition Date shall continue to serve as directors of each respective Reorganized Debtor. Subject to the New Corporate Documents, the directors of each Reorganized Debtor shall have the responsibility for the management, control, and operation of each respective Reorganized Debtor on and after the Plan Effective Date.

8.9.2    As part of the Plan Supplement, but in any event prior to the Confirmation Date, the Debtors will File a schedule disclosing such additional information as is necessary to satisfy section 1129(a)(5) of the Bankruptcy Code including the (1) identity and affiliation of any individual who is proposed to serve as an officer or director of any Reorganized Debtor; (2) identity of any other insider who will be employed or retained by any Reorganized Debtor; and (3) compensation for each such individual.

## SECTION 9.
## DISCHARGE, RELEASES AND EXCULPATION

9.1    **Discharge**.

**9.1.1    Except as otherwise provided in the Plan or the Confirmation Order, all consideration distributed under this Plan shall be in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims and Equity Interests of any nature whatsoever against the Debtors or any of their Estates, assets, properties or interests in property, and regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims and Equity Interests. Except as otherwise provided herein, upon the Plan Effective Date, the Debtors shall be deemed discharged and released under section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims and Equity Interests, including, but not limited to, demands and liabilities that arose before the Plan Effective Date, and all debts of the kind specified in sections 502(g), 502(h) and 502(i) of the Bankruptcy Code, regardless of whether or not: (a) a Proof of Claim based on such debt is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (b) the Claim is Allowed, or (c) the Holder of a Claim based on such debt has accepted the Plan or is entitled to receive a distribution thereunder. Upon entry of the Confirmation Order, and subject to the occurrence of the Plan Effective Date, any Holder of such discharged Claim shall be precluded from asserting against the applicable Debtor or Reorganized Debtor, their successors and assigns, or their assets or properties any other or future Claims based upon any document, instrument, act or omission, transaction or other activity of any kind or nature that occurred before the Plan Effective Date. The Reorganized Debtors shall not be responsible for any Claims against or Interests in the Debtors or the Debtors in Possession except (a) those payments and distributions expressly provided for or due under this Plan and (b) Claims and Interests that are Unimpaired under the Plan and not previously satisfied in full.**

**9.1.2    In addition to the terms of Section 9.1.1 above, each Holder of a Noteholder Pledge Claim or an Unsecured Parent Guaranty Claim and any affiliate of such Holder shall be deemed to have waived, released and discharged IUSA and each member of the IUSA Group from any Liens, Claims, Causes of Action, rights or liabilities arising from the notes issued under, and the guarantees issued pursuant to, either of the Existing**

Indenture or the ESBDS Loan. In addition, the Confirmation Order shall provide that the Indenture Trustee is authorized and directed to take all such actions necessary to effectuate the foregoing. Upon the Plan Effective Date, all such persons shall be forever precluded and enjoined from prosecuting or asserting any such discharged Claim against IUSA, the IUSA Group, the Reorganized Debtors, or any of their respective affiliates.

9.2     Exculpation. *To the extent permitted by applicable law and approved by the Bankruptcy Court, as of the Plan Effective Date, the Released Parties shall neither have nor incur any liability to, or be subject to any right of action by, any Holder of a Claim or Equity Interest, or any other party-in-interest, or any of their respective employees, representatives, financial advisors, attorneys, or agents acting in such capacity, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of these Chapter 11 Cases, including without limitation (i) formulating, negotiating and executing this Plan, the Disclosure Statement, the Restructuring Agreement and any related agreements, instruments or other document, (ii) the solicitation of votes for and the pursuit of this Plan, (iii) the consummation of this Plan, or (iv) the implementation and administration of this Plan or the property to be distributed in conjunction with this Plan; provided, however, that the foregoing provision shall not apply to any Causes of Action arising out of an act or omission that is determined by a Final Order entered by a court of competent jurisdiction to have constituted actual or intentional fraud, willful misconduct, gross negligence or criminal conduct. Any of the Released Parties shall be entitled to rely, in all respects, upon the advice of counsel with respect to their duties and responsibilities under this Plan.*

9.3     **Release by Debtors and Plan Proponents.** *To the extent permitted by applicable law and approved by the Bankruptcy Court, on the Plan Effective Date, for good and valuable consideration, including the service of the Released Parties to facilitate the restructuring of the Debtors and the implementation of the restructuring contemplated by this Plan, the adequacy of which is hereby confirmed, the Debtors , the Reorganized Debtors and IUSA, in their individual capacities and, as applicable, as debtors in possession on behalf of the Debtors' Estates, shall be deemed to have unconditionally released the Released Parties from any and all claims, Causes of Action, obligations, rights, suits, damages, remedies and liabilities whatsoever, including any claims that could be asserted on behalf of the Debtors (whether derivatively or otherwise) including chapter 5 actions, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that the Debtors or their subsidiaries would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Equity Interest or other Person, based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Plan Effective Date; provided, however, that: these releases shall not apply to any Causes of Action arising out of an act or omission that is determined by a Final Order entered by a court of competent jurisdiction to have constituted actual or intentional fraud, willful misconduct, gross negligence or criminal conduct. The releases set forth in this paragraph shall be binding upon any chapter 7 trustee in the event the Chapter 11 Cases are converted to chapter 7.*

9.4     **Releases by Holders of Claims.** *Except as specifically set forth in the Plan or the Confirmation Order, to the fullest extent permitted by applicable law and approved by the Bankruptcy Court, on the Plan Effective Date, for good and valuable consideration, including*

*the service of the Released Parties to facilitate the restructuring of the Debtors and the implementation of the restructuring contemplated by this Plan, the adequacy of which is hereby confirmed, each Holder of a Claim that has affirmatively voted to accept the Plan, or who, directly or indirectly, is entitled to receive a distribution under the Plan, including Persons entitled to receive a distribution via an attorney or agent shall be deemed to have unconditionally released the Released Parties from any and all claims, Causes of Action, obligations, rights, suits, damages, remedies and liabilities whatsoever, including any claims that could be asserted on behalf of the Debtors (whether derivatively or otherwise) including chapter 5 actions, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that the Debtors or their subsidiaries would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Equity Interest or other Person, based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Plan Effective Date, in any way relating or pertaining to, (x) the Debtors or Reorganized Debtors, (y) the Chapter 11 Cases or (z) the negotiation, formulation, implementation and preparation of the Restructuring Agreement, this Plan, the Disclosure Statement, and any related agreements, instruments or other document, provided, however, the foregoing provision shall not apply to any Causes of Action arising out of an act or omission that is determined by a Final Order entered by a court of competent jurisdiction to have constituted actual or intentional fraud, willful misconduct, gross negligence or criminal conduct.*

9.5 **Injunction.** *Except as otherwise provided in the Plan or the Confirmation Order, and in addition to the injunction provided under sections 524(a) and 1141 of the Bankruptcy Code, all Persons who have held, currently hold or may hold a Claim or other debt or liability or Equity Interest which is released, discharged or terminated under the Plan, are permanently enjoined, on and after the Plan Effective Date, from taking any of the following actions against a Released Party or its property on account of such released, discharged or terminated Claims, debts, liabilities or Equity Interests: (1) commencing or continuing in any manner (including by directly or indirectly assisting or facilitating the commencement or continuation of) any action or other proceeding of any kind; (2) enforcing, levying, attaching, collecting or otherwise recovering in any manner any judgment, award, decree or order; (3) creating, perfecting or enforcing any lien or encumbrance of any kind; (4) except as provided herein, asserting any setoff, right of subrogation or recoupment of any kind against any obligation due from any Released Party; and (5) commencing, continuing or in any manner taking part or participating in any action, proceeding or event (whether directly or indirectly) that would be in contravention of the terms, conditions and intent of the Plan. The foregoing injunction will extend to the benefit of the successors of the Released Parties and their respective properties and interests in property. Any Person injured by any willful violation of such injunction may recover actual damages, including costs and attorneys' fees and, in appropriate circumstances, may recover punitive damages from the willful violator.*

9.6 **Term of Injunctions and Stays**. Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Plan Effective Date.

## SECTION 10.
## CLAIM RESOLUTION PROCESS

10.1     **No Bar Date; No Proofs of Claim.** Except as otherwise provided in this Plan, Holders of Claims against and Equity Interests in the Debtors shall not be required to file proofs of Claim or proofs of Equity Interest with the Bankruptcy Court.

10.2     **Administrative Claim and Priority Tax Claims Allowed as Set Forth in Books and Records.** Except as otherwise specified in this Plan, the amount set forth in the books and records of the applicable Debtor (or agreed to by the applicable Debtor and the Holder in the ordinary course) shall constitute the amount of the Allowed Administrative Claim an/or Allowed Priority Tax Claim of such Holder, subject to the right of such Holder to object to the amount of such Claim.

## SECTION 11.
## RETENTION OF JURISDICTION

Except as otherwise provided herein, under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Plan Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law (except in the case of the New Notes and the Restructuring Agreement which shall be subject to the jurisdiction indicated in the definitive documentation thereof), including, without limitation, jurisdiction to:

11.1     Allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims;

11.2     Hear and construe and take any action to execute and enforce the Plan, the Confirmation Order or any other order of the Bankruptcy Court, issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan, all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order, and all matters referred to herein, and determine all matters that may be pending before the Bankruptcy Court in the Chapter 11 Cases on or before the Plan Effective Date;

11.3     Rule on any and all Professional Fee Claims under sections 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Code; provided, however, that from and after the Plan Effective Date, the payment of the fees and expenses of any retained Professional Persons of the Reorganized Debtors shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

11.4     Hear and resolve any dispute arising in connection with the consummation, implementation, enforcement or interpretation of the Plan, or the Plan Documents;

11.5    Resolve all applications, adversary proceedings, contested matters, and other litigated matters arising out of, under, or related to, the Chapter 11 Cases;

11.6    Hear and determine such other matters and to perform other functions as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

11.7    Modify the Plan under section 1127 of the Bankruptcy Code, to remedy any apparent nonmaterial defect or omission in the Plan, or to reconcile any nonmaterial inconsistency in the Plan so as to carry out its intent and purposes;

11.8    Issue injunctions, enter and implement other orders, or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any entity;

11.9    Issue such orders in aid of execution, implementation or consummation of the Plan or the Plan Documents and the Confirmation Order, notwithstanding any otherwise applicable non-bankruptcy law, with respect to any entity, to the full extent authorized by the Bankruptcy Code;

11.10   Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which any Debtor is a party or with respect to which a Debtor may be liable, including, if necessary, any Cure Amount or the liquidation or allowance of any Claims arising therefrom;

11.11   Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified or vacated, or distributions pursuant to the Plan are enjoined or stayed;

11.12   Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Cases;

11.13   Recover all assets of the Debtors and property of the Estate, wherever located;

11.14   Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

11.15   Hear and determine all disputes involving the existence, nature or scope of the Debtors' discharge and/or the Released Parties' release;

11.16   Enforce performance of and payments under the provisions of the Plan and the Plan Documents; and

11.17   Enter a final decree closing the Chapter 11 Cases.

## SECTION 12.
## MISCELLANEOUS PROVISIONS

12.1 **Exemption from Certain Transfer Taxes**. Pursuant to section 1146 of the Bankruptcy Code, any transfers from any Debtor to the applicable Reorganized Debtor or any other Person pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any instruments evidencing such transfers without the payment of any such tax or governmental assessment.

12.2 **Section 1145 Exemption**. Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of the New Notes contemplated by the Restructuring Agreement, this Plan and all agreements incorporated herein, shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution, or sale of securities. In addition, under section 1145 of the Bankruptcy Code, the New Notes and any and all agreements incorporated therein, will be freely tradable by the recipients thereof, subject to (1) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act; (2) compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments; (3) the restrictions, if any, on the transferability of such securities and instruments; and (4) applicable regulatory approval.

12.3 **Payment of Statutory Fees**. All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Plan Effective Date. All such fees that arise after the Plan Effective Date but prior to the closing of the Chapter 11 Cases shall be paid by the Reorganized Debtors.

12.4 **Payment of Indenture Trustee Expenses**. The Indenture Trustee Expenses shall be paid by either IUSA or the Debtors.

12.5 **Manner of Payment**. Except as specifically provided herein, at the option of the Debtors, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements.

12.6 **Successors and Assigns**. The rights, benefits, and obligations of any entity named or referred to in the Plan are binding on, and will inure to the benefit of, any permitted heirs, executors, administrators, successors or assigns of such entity.

12.7 **Amendment and Modification**.

12.7.1 The Plan Proponents may amend or modify the Plan before the Confirmation Date to the extent provided by section 1127 of the Bankruptcy Code, provided that the Plan, as altered, amended or modified satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code and the Plan Proponents have complied with section 1125 of the

Bankruptcy Code. After the Confirmation Date and prior to substantial consummation of the Plan, as defined in section 1101(2) of the Bankruptcy Code, the Plan Proponents may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Plan Documents, the Disclosure Statement, or the Confirmation Order, and to accomplish such matters as may be necessary or appropriate to carry out the purposes and effects of the Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court, and that the Plan, as altered, amended or modified satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code and the Plan Proponents have complied with section 1129 of the Bankruptcy Code. A Holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as altered, amended, modified or clarified in accordance with this section, unless the proposed alteration, amendment, modification or clarification adversely changes the treatment of the Claim of such Holder.

12.7.2 The Plan Proponents reserve the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Plan Proponents revoke or withdraw the Plan, or if Confirmation does not occur, then the Plan shall be null and void, and nothing contained in the Plan shall: (1) constitute a waiver or release of any Claims against, or Equity Interests in, any Debtor; or (2) prejudice in any manner the rights of the Debtors or any other Person in any further proceedings; or (3) constitute an admission of any sort by any Debtor or any other Person.

12.8 **Binding Effect**. The Plan shall be binding on and inure to the benefit of the Debtors, IUSA, the other members of the IUSA Group, all current and former Holders of Claims against and Equity Interests in the Debtors and their respective successors and assigns, including, but not limited to, the Reorganized Debtors, and all other parties-in-interest in the Chapter 11 Cases.

12.9 **Notices**. Any notice, request, or demand required or permitted to be made or provided to or on the Plan Proponents, the Debtors or the Reorganized Debtors under the Plan shall be (i) in writing, (ii) served by (a) certified mail, return receipt requested, (b) hand delivery, (c) overnight delivery service, (d) first class mail, or (e) facsimile transmission, and (iii) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

Tubo de Pasteje, S.A. de C.V.
c/o Industrias Unidas, S.A. de C.V.
Paseo de la Reforma, Penthouse
Colonia Lomas Altas
11950, Mexico, D.F.
México

-and-

Cambridge-Lee Holdings, Inc.
86 Tube Drive
Reading, Pennsylvania 19605

-and-

Industrias Unidas, S.A. de C.V.
Paseo de la Reforma, Penthouse
Colonia Lomas Altas
11950, Mexico, D.F.
México

with a copy to the Debtors' co-counsel:

**PACHULSKI STANG ZIEHL & JONES LLP**
Laura Davis Jones, Esq. (Bar No. 2436)
Michael R. Seidl, Esq. (Bar No. 3889)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(Courier 19801)

-and-

**MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP**
One Chase Manhattan Plaza
New York, New York 10005
Attention:     Dennis F. Dunne, Esq.
                     Risa M. Rosenberg, Esq.
                     Brian Kinney, Esq.
Telephone:   (212) 530-5000
Facsimile:    (212) 530-5219

12.10   **Substantial Consummation**.  Substantial consummation of the Plan under Bankruptcy Code section 1101(2) shall be deemed to occur on the Plan Effective Date.

12.11   **Inconsistencies**.  In the event the terms or provisions of the Plan are inconsistent with the terms and provisions of the exhibits to the Plan or documents executed in connection with the Plan, the terms of the Plan shall control.

## SECTION 13.
## CONDITIONS TO CONFIRMATION AND PLAN EFFECTIVE DATE

13.1   **Conditions to Confirmation**.  Confirmation of the Plan shall not occur unless and until each of the conditions set forth below has been satisfied or duly waived by the Debtors:

13.1.1   The Bankruptcy Court shall have entered an order in form and substance satisfactory to the Debtors, approving the Disclosure Statement used in connection with the solicitation of the votes with respect to the Plan as containing "adequate information" within the meaning of section 1125 of the Bankruptcy Code.

13.1.2 The Confirmation Order, in form and substance satisfactory to the Debtors, shall have been entered by the Bankruptcy Court.

13.2 **Conditions to Effectiveness.** The Plan Effective Date shall not occur unless and until each of the conditions set forth below has been satisfied or duly waived by the Debtors in accordance with Section 13.3 of this Plan.

13.2.1 The Confirmation Order shall become a Final Order, shall not have been modified (except as consented to by the Debtors) and shall not be subject to any motion pursuant to Rule 60 of the Federal Rules of Civil Procedure, and shall be in full force and effect.

13.2.2 There shall not be in effect any order or law staying, restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the transactions contemplated by the Plan.

13.2.3 No request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending.

13.2.4 All necessary consents, approvals and actions of, filings with and notices to any governmental or regulatory authority necessary to permit the Reorganized Debtors to perform their obligations under the Plan and to permit the Reorganized Debtors to consummate the transactions contemplated hereby shall have been duly obtained, made or given and shall be in full force and effect, and all terminations or expirations of waiting periods imposed by any governmental or regulatory authority necessary for the consummation of the transactions contemplated by the Plan shall have occurred.

13.2.5 All conditions to the effectiveness of the Consensual Exchange and Restructuring Agreement shall have been satisfied or waived (to the extent capable of being waived) in accordance with the terms thereof; the Consensual Exchange and Restructuring Agreement shall be successfully completed simultaneously with the effectiveness of this Plan.

13.2.6 All conditions precedent to the issuance of the New Notes shall have been satisfied or waived (to the extent capable of being waived) in accordance with the terms thereof and the Consensual Exchange shall be successfully completed simultaneously.

13.2.7 All other actions, documents, and agreements necessary to implement this Plan shall have been effected or executed.

13.3 **Waiver of Conditions.** Each of the conditions set forth in Section 13.2 may be waived in whole or in part by the Debtors, without any notice to parties in interest or the Bankruptcy Court and without a hearing; provided that, Sections 13.2.5 and 13.2.6 may not be waived by the Debtors except as provided for in the Consensual Exchange, the Restructuring Agreement and the New Notes. The failure to satisfy or waive any condition to the Plan Effective Date may be asserted by the Debtors regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtors or any of them). The failure of the Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

13.4 **Effects of Failure of Conditions**. If, following entry of the Confirmation Order, the Restructuring Agreement has terminated in accordance with its terms prior to the occurrence of the Plan Effective Date, then the Confirmation Order shall be vacated by the Bankruptcy Court without further notice or order. If the Confirmation Order is vacated pursuant to this Section 13.4 of the Plan, (a) the Debtors shall File a notice to this effect with the Bankruptcy Court, (b) the Plan shall be null and void in all respects, and (c) nothing contained in the Plan shall (x) constitute a waiver or release of any Claim against or Equity Interest in any Debtor or (y) prejudice in any manner the rights of the Holder of any Claim or Equity Interest.

\* \* \*

The Plan Proponents request Confirmation of the Plan under Bankruptcy Code section 1129.

*[Remainder of Page Intentionally Left Blank]*

Dated: June 7, 2011

TUBO DE PASTEJE, S.A. DE C.V.

_____

By: Rafael Dávila Olvera
Title: Attorney in Fact

CAMBRIDGE-LEE HOLDINGS, INC.

_____

By: Rafael Dávila Olvera
Title: Attorney in Fact

INDUSTRIAS UNIDAS, S.A. DE C.V.

_____

By: Rafael Dávila Olvera
Title: Attorney in Fact

# Schedule A

## Agreed Accrual Rate

| Eligible Debt | Agreed Accrual Rate (per annum, compounded quarterly) | Applicable Date |
|---|---|---|
| 2016 Notes | 4.750% | 5/15/2009 |
| ESBDS Loan | (L+1.50%) x (4.75%/11.5%) | 10/12/2010 |
| 12% Commercial Paper | 12% x (4.75%/11.5%) | 3/26/2010 |
| 9.75% Commercial Paper | 9.75% x (4.75%/11.5%) | 8/6/2010 |
| August 2009 Finalization Amount | 9% x (4.75%/11.5%) | 8/31/2009 |
| Agreed Costs | | October 22, 2010 |
| Copper Debt Pagare Reference | | |
| 400-JAN | 9% x (4.75%/11.5%) | 8/7/09 |
| 401-JAN | 9% x (4.75%/11.5%) | 8/6/09 |
| 429-FEB | 9% x (4.75%/11.5%) | 8/3/09 |
| 437-FEB | 9% x (4.75%/11.5%) | 8/3/09 |
| 438-FEB | 9% x (4.75%/11.5%) | 7/27/09 |
| 439-FEB | 9% x (4.75%/11.5%) | 7/28/09 |
| 440-FEB | 9% x (4.75%/11.5%) | 7/29/09 |
| 441-FEB | 9% x (4.75%/11.5%) | 7/30/09 |
| 442-FEB | 9% x (4.75%/11.5%) | 7/31/09 |
| 443-FEB | 9% x (4.75%/11.5%) | 7/31/09 |
| 444-FEB | 9% x (4.75%/11.5%) | 8/4/09 |
| 445-FEB | 9% x (4.75%/11.5%) | 8/4/09 |
| 446-FEB | 9% x (4.75%/11.5%) | 8/4/09 |
| 447-FEB | 9% x (4.75%/11.5%) | 8/5/09 |
| 448-FEB | 9% x (4.75%/11.5%) | 8/7/09 |
| 449-FEB | 9% x (4.75%/11.5%) | 8/10/09 |
| 450-FEB | 9% x (4.75%/11.5%) | 8/10/09 |
| 451-FEB | 9% x (4.75%/11.5%) | 8/11/09 |
| 452-FEB | 9% x (4.75%/11.5%) | 8/5/09 |
| 453-FEB | 9% x (4.75%/11.5%) | 8/6/09 |
| 454-FEB | 9% x (4.75%/11.5%) | 8/7/09 |
| 455-FEB | 9% x (4.75%/11.5%) | 8/6/09 |
| 456-FEB | 9% x (4.75%/11.5%) | 8/14/09 |

| | | |
|---|---|---|
| 457-FEB | 9% x (4.75%/11.5%) | 8/18/09 |
| 461-FEB | 9% x (4.75%/11.5%) | 8/13/09 |
| 462-FEB | 9% x (4.75%/11.5%) | 8/14/09 |
| 463-FEB | 9% x (4.75%/11.5%) | 8/17/09 |
| 464-FEB | 9% x (4.75%/11.5%) | 8/17/09 |
| 465-FEB | 9% x (4.75%/11.5%) | 8/18/09 |
| 466-FEB | 9% x (4.75%/11.5%) | 8/21/09 |
| 467-FEB | 9% x (4.75%/11.5%) | 8/24/09 |
| 468-FEB | 9% x (4.75%/11.5%) | 8/25/09 |
| 469-FEB | 9% x (4.75%/11.5%) | 8/26/09 |
| 470-FEB | 9% x (4.75%/11.5%) | 8/19/09 |
| 471-FEB | 9% x (4.75%/11.5%) | 8/20/09 |
| 472-MAR | 9% x (4.75%/11.5%) | 8/13/09 |
| 473-MAR | 9% x (4.75%/11.5%) | 8/19/09 |
| 474-MAR | 9% x (4.75%/11.5%) | 8/20/09 |
| 475-MAR | 9% x (4.75%/11.5%) | 8/21/09 |
| 476-MAR | 9% x (4.75%/11.5%) | 8/24/09 |
| 477-MAR | 9% x (4.75%/11.5%) | 8/25/09 |
| 478-MAR | 9% x (4.75%/11.5%) | 8/26/09 |
| 479-MAR | 9% x (4.75%/11.5%) | 8/27/09 |
| 480-MAR | 9% x (4.75%/11.5%) | 8/27/09 |
| 481-MAR | 9% x (4.75%/11.5%) | 8/28/09 |
| 482-MAR | 9% x (4.75%/11.5%) | 8/28/09 |
| 483-MAR | 9% x (4.75%/11.5%) | 8/31/09 |
| 484-MAR | 9% x (4.75%/11.5%) | 8/31/09 |
| 485-MAR | 9% x (4.75%/11.5%) | 9/1/09 |
| 486-MAR | 9% x (4.75%/11.5%) | 9/1/09 |
| 487-MAR | 9% x (4.75%/11.5%) | 9/2/09 |
| 488-MAR | 9% x (4.75%/11.5%) | 9/2/09 |
| 489-MAR | 9% x (4.75%/11.5%) | 9/3/09 |
| 490-MAR | 9% x (4.75%/11.5%) | 9/3/09 |
| 491-MAR | 9% x (4.75%/11.5%) | 9/4/09 |
| 492-MAR | 9% x (4.75%/11.5%) | 9/4/09 |
| 493-MAR | 9% x (4.75%/11.5%) | 9/4/09 |
| 494-MAR | 9% x (4.75%/11.5%) | 8/12/09 |
| 495-MAR | 9% x (4.75%/11.5%) | 8/18/09 |
| 496-MAR | 9% x (4.75%/11.5%) | 8/20/09 |
| 497-MAR | 9% x (4.75%/11.5%) | 8/25/09 |
| 498-MAR | 9% x (4.75%/11.5%) | 8/26/09 |
| 499-MAR | 9% x (4.75%/11.5%) | 8/27/09 |
| 500-MAR | 9% x (4.75%/11.5%) | 8/28/09 |
| 501-MAR | 9% x (4.75%/11.5%) | 8/31/09 |
| 502-MAR | 9% x (4.75%/11.5%) | 9/1/09 |
| 503-MAR | 9% x (4.75%/11.5%) | 9/2/09 |
| 504-MAR | 9% x (4.75%/11.5%) | 9/3/09 |

| | | |
|---|---|---|
| 505-MAR | 9% x (4.75%/11.5%) | 9/8/09 |
| 506-MAR | 9% x (4.75%/11.5%) | 9/8/09 |
| 507-MAR | 9% x (4.75%/11.5%) | 9/8/09 |
| 508-MAR | 9% x (4.75%/11.5%) | 9/9/09 |
| 509-MAR | 9% x (4.75%/11.5%) | 9/9/09 |
| 510-MAR | 9% x (4.75%/11.5%) | 9/9/09 |
| 511-MAR | 9% x (4.75%/11.5%) | 9/10/09 |
| 512-MAR | 9% x (4.75%/11.5%) | 9/10/09 |
| 513-MAR | 9% x (4.75%/11.5%) | 9/10/09 |
| 514-MAR | 9% x (4.75%/11.5%) | 9/11/09 |
| 515-MAR | 9% x (4.75%/11.5%) | 9/11/09 |
| 516-MAR | 9% x (4.75%/11.5%) | 9/14/09 |
| 517-MAR | 9% x (4.75%/11.5%) | 9/14/09 |
| 518-MAR | 9% x (4.75%/11.5%) | 9/15/09 |
| 519-MAR | 9% x (4.75%/11.5%) | 9/15/09 |
| 520-MAR | 9% x (4.75%/11.5%) | 9/16/09 |
| 521-MAR | 9% x (4.75%/11.5%) | 9/16/09 |
| 522-MAR | 9% x (4.75%/11.5%) | 9/14/09 |
| 523-MAR | 9% x (4.75%/11.5%) | 9/15/09 |
| 524-MAR | 9% x (4.75%/11.5%) | 9/17/09 |
| 525-MAR | 9% x (4.75%/11.5%) | 9/18/09 |
| 526-MAR | 9% x (4.75%/11.5%) | 9/21/09 |
| 527-MAR | 9% x (4.75%/11.5%) | 9/22/09 |
| 528-MAR | 9% x (4.75%/11.5%) | 9/23/09 |
| 529-MAR | 9% x (4.75%/11.5%) | 9/24/09 |
| 530-MAR | 9% x (4.75%/11.5%) | 9/25/09 |
| 531-MAR | 9% x (4.75%/11.5%) | 9/25/09 |
| 532-MAR | 9% x (4.75%/11.5%) | 9/21/09 |
| 533-MAR | 9% x (4.75%/11.5%) | 9/24/09 |
| 534-APR | 9% x (4.75%/11.5%) | 9/22/09 |
| 535-APR | 9% x (4.75%/11.5%) | 9/23/09 |
| 536-APR | 9% x (4.75%/11.5%) | 9/28/09 |
| 537-APR | 9% x (4.75%/11.5%) | 9/29/09 |
| 538-APR | 9% x (4.75%/11.5%) | 10/1/09 |
| 539-APR | 9% x (4.75%/11.5%) | 10/1/09 |
| 540-APR | 9% x (4.75%/11.5%) | 10/2/09 |
| 541-APR | 9% x (4.75%/11.5%) | 10/2/09 |
| 542-APR | 9% x (4.75%/11.5%) | 10/2/09 |
| 543-APR | 9% x (4.75%/11.5%) | 10/5/09 |
| 544-APR | 9% x (4.75%/11.5%) | 10/6/09 |
| 545-APR | 9% x (4.75%/11.5%) | 10/7/09 |
| 546-APR | 9% x (4.75%/11.5%) | 10/7/09 |
| 547-APR | 9% x (4.75%/11.5%) | 10/8/09 |
| 548-APR | 9% x (4.75%/11.5%) | 10/9/09 |
| 549-APR | 9% x (4.75%/11.5%) | 10/9/09 |

| | | |
|---|---|---|
| 550-APR | 9% x (4.75%/11.5%) | 10/14/09 |
| 551-APR | 9% x (4.75%/11.5%) | 10/15/09 |
| 552-APR | 9% x (4.75%/11.5%) | 9/21/09 |
| 553-APR | 9% x (4.75%/11.5%) | 9/22/09 |
| 554-APR | 9% x (4.75%/11.5%) | 9/23/09 |
| 555-APR | 9% x (4.75%/11.5%) | 9/24/09 |
| 556-APR | 9% x (4.75%/11.5%) | 9/25/09 |
| 557-APR | 9% x (4.75%/11.5%) | 10/5/09 |
| 558-APR | 9% x (4.75%/11.5%) | 10/6/09 |
| 559-APR | 9% x (4.75%/11.5%) | 10/7/09 |
| 560-APR | 9% x (4.75%/11.5%) | 10/8/09 |
| 561-APR | 9% x (4.75%/11.5%) | 9/28/09 |
| 562-APR | 9% x (4.75%/11.5%) | 10/13/09 |
| 563-APR | 9% x (4.75%/11.5%) | 10/13/09 |
| 564-APR | 9% x (4.75%/11.5%) | 10/13/09 |
| 565-APR | 9% x (4.75%/11.5%) | 10/14/09 |
| 566-MAR | 9% x (4.75%/11.5%) | 9/18/09 |
| 567-APR | 9% x (4.75%/11.5%) | 9/30/09 |
| 568-MAR | 9% x (4.75%/11.5%) | 9/17/09 |
| 569-MAR | 9% x (4.75%/11.5%) | 9/18/09 |
| 570-APR | 9% x (4.75%/11.5%) | 10/15/09 |
| 571-APR | 9% x (4.75%/11.5%) | 10/16/09 |
| 572-APR | 9% x (4.75%/11.5%) | 10/20/09 |
| 573-APR | 9% x (4.75%/11.5%) | 10/15/09 |
| 575-APR | 9% x (4.75%/11.5%) | 8/19/09 |
| 581-APR | 9% x (4.75%/11.5%) | 8/14/09 |
| 583-APR | 9% x (4.75%/11.5%) | 10/19/09 |
| 584-APR | 9% x (4.75%/11.5%) | 10/20/09 |
| 585-APR | 9% x (4.75%/11.5%) | 10/21/09 |
| 586-APR | 9% x (4.75%/11.5%) | 10/21/09 |
| 587-APR | 9% x (4.75%/11.5%) | 10/22/09 |
| 588-APR | 9% x (4.75%/11.5%) | 10/23/09 |
| 589-APR | 9% x (4.75%/11.5%) | 10/16/09 |
| 590-MAY | 9% x (4.75%/11.5%) | 10/23/09 |
| 591-MAY | 9% x (4.75%/11.5%) | 10/26/09 |
| 592-MAY | 9% x (4.75%/11.5%) | 10/27/09 |
| 593-MAY | 9% x (4.75%/11.5%) | 10/28/09 |
| 594-MAY | 9% x (4.75%/11.5%) | 11/2/09 |
| 595-MAY | 9% x (4.75%/11.5%) | 11/2/09 |
| 596-MAY | 9% x (4.75%/11.5%) | 8/21/09 |
| 597-MAY | 9% x (4.75%/11.5%) | 11/4/09 |
| 598-MAY | 9% x (4.75%/11.5%) | 11/3/09 |
| 599-MAY | 9% x (4.75%/11.5%) | 10/22/09 |
| 600-MAY | 9% x (4.75%/11.5%) | 10/26/09 |
| 601-MAY | 9% x (4.75%/11.5%) | 10/27/09 |

| | | |
|---|---|---|
| 602-MAY | 9% x (4.75%/11.5%) | 10/28/09 |
| 603-MAY | 9% x (4.75%/11.5%) | 10/29/09 |
| 604-MAY | 9% x (4.75%/11.5%) | 8/18/09 |
| 605-MAY | 9% x (4.75%/11.5%) | 10/30/09 |
| 606-MAY | 9% x (4.75%/11.5%) | 10/30/09 |
| 607-MAY | 9% x (4.75%/11.5%) | 11/5/09 |
| 608-MAY | 9% x (4.75%/11.5%) | 11/6/09 |
| 609-MAY | 9% x (4.75%/11.5%) | 11/4/09 |
| 610-MAY | 9% x (4.75%/11.5%) | 11/5/09 |
| 611-MAY | 9% x (4.75%/11.5%) | 8/24/09 |
| 612-MAY | 9% x (4.75%/11.5%) | 10/30/09 |
| 613-MAY | 9% x (4.75%/11.5%) | 11/9/09 |
| 614-MAY | 9% x (4.75%/11.5%) | 11/9/09 |
| 615-MAY | 9% x (4.75%/11.5%) | 11/9/09 |
| 616-MAY | 9% x (4.75%/11.5%) | 11/10/09 |
| 617-MAY | 9% x (4.75%/11.5%) | 11/10/09 |
| 618-MAY | 9% x (4.75%/11.5%) | 11/13/09 |
| 619-MAY | 9% x (4.75%/11.5%) | 11/13/09 |
| 620-MAY | 9% x (4.75%/11.5%) | 11/12/09 |
| 621-MAY | 9% x (4.75%/11.5%) | 11/10/09 |
| 622-MAY | 9% x (4.75%/11.5%) | 11/12/09 |
| 623-MAY | 9% x (4.75%/11.5%) | 8/26/09 |
| 624-MAY | 9% x (4.75%/11.5%) | 11/16/09 |
| 625-MAY | 9% x (4.75%/11.5%) | 11/17/09 |
| 626-MAY | 9% x (4.75%/11.5%) | 11/16/09 |
| 627-MAY | 9% x (4.75%/11.5%) | 8/25/09 |
| 628-JUN | 9% x (4.75%/11.5%) | 11/25/09 |
| 629-JUN | 9% x (4.75%/11.5%) | 11/25/09 |
| 630-JUN | 9% x (4.75%/11.5%) | 11/30/09 |
| 631-JUN | 9% x (4.75%/11.5%) | 11/30/09 |
| 632-JUN | 9% x (4.75%/11.5%) | 12/1/09 |
| 633-JUN | 9% x (4.75%/11.5%) | 12/1/09 |
| 634-JUN | 9% x (4.75%/11.5%) | 12/4/09 |
| 635-JUN | 9% x (4.75%/11.5%) | 12/7/09 |
| 636-JUN | 9% x (4.75%/11.5%) | 12/7/09 |
| 637-JUN | 9% x (4.75%/11.5%) | 12/8/09 |
| 638-JUN | 9% x (4.75%/11.5%) | 12/8/09 |
| 639-JUN | 9% x (4.75%/11.5%) | 12/3/09 |
| 640-JUN | 9% x (4.75%/11.5%) | 12/4/09 |
| 641-JUN | 9% x (4.75%/11.5%) | 12/2/09 |
| 642-JUN | 9% x (4.75%/11.5%) | 12/4/09 |
| 643-JUN | 9% x (4.75%/11.5%) | 12/3/09 |
| 644-JUN | 9% x (4.75%/11.5%) | 12/4/09 |
| 645-JUN | 9% x (4.75%/11.5%) | 12/7/09 |
| 646-JUN | 9% x (4.75%/11.5%) | 12/8/09 |

| | | |
|---|---|---|
| 647-JUN | 9% x (4.75%/11.5%) | 12/9/09 |
| 648-JUN | 9% x (4.75%/11.5%) | 12/14/09 |
| 649-JUN | 9% x (4.75%/11.5%) | 12/15/09 |
| 650-JUN | 9% x (4.75%/11.5%) | 12/16/09 |
| 651-JUN | 9% x (4.75%/11.5%) | 12/10/09 |
| 652-JUN | 9% x (4.75%/11.5%) | 12/11/09 |
| 653-JUN | 9% x (4.75%/11.5%) | 12/10/09 |
| 654-JUN | 9% x (4.75%/11.5%) | 12/11/09 |
| 655-JUN | 9% x (4.75%/11.5%) | 12/10/09 |
| 656-JUN | 9% x (4.75%/11.5%) | 12/2/09 |
| 657-JUN | 9% x (4.75%/11.5%) | 12/9/09 |
| 658-JUN | 9% x (4.75%/11.5%) | 12/14/09 |
| 659-JUN | 9% x (4.75%/11.5%) | 12/15/09 |
| 665A-JUN | 9% x (4.75%/11.5%) | 8/20/09 |
| 665B-JUN | 9% x (4.75%/11.5%) | 12/15/09 |
| 666-JUN | 9% x (4.75%/11.5%) | 12/16/09 |
| 667-JUN | 9% x (4.75%/11.5%) | 12/17/09 |
| 668-JUN | 9% x (4.75%/11.5%) | 12/18/09 |
| 669-JUN | 9% x (4.75%/11.5%) | 12/21/09 |
| 670-JUN | 9% x (4.75%/11.5%) | 12/22/09 |
| 671-JUN | 9% x (4.75%/11.5%) | 12/23/09 |
| 673-AUG | 9% x (4.75%/11.5%) | 2/1/10 |
| 674-AUG | 9% x (4.75%/11.5%) | 2/1/10 |
| 675-AUG | 9% x (4.75%/11.5%) | 2/2/10 |
| 676-AUG | 9% x (4.75%/11.5%) | 2/2/10 |
| 677-AUG | 9% x (4.75%/11.5%) | 2/3/10 |
| 678-AUG | 9% x (4.75%/11.5%) | 2/3/10 |
| 679-AUG | 9% x (4.75%/11.5%) | 2/4/10 |
| 680-AUG | 9% x (4.75%/11.5%) | 2/4/10 |
| 681-AUG | 9% x (4.75%/11.5%) | 2/5/10 |
| 682-AUG | 9% x (4.75%/11.5%) | 2/5/10 |
| 683-AUG | 9% x (4.75%/11.5%) | 2/5/10 |
| 684-AUG | 9% x (4.75%/11.5%) | 2/8/10 |
| 685-AUG | 9% x (4.75%/11.5%) | 2/8/10 |
| 686-AUG | 9% x (4.75%/11.5%) | 2/8/10 |
| 687-AUG | 9% x (4.75%/11.5%) | 2/9/10 |
| 688-AUG | 9% x (4.75%/11.5%) | 2/9/10 |
| 689-AUG | 9% x (4.75%/11.5%) | 2/10/10 |
| 100-JUL | 9% x (4.75%/11.5%) | 11/19/09 |
| 101-JUL | 9% x (4.75%/11.5%) | 11/24/09 |
| 102-JUL | 9% x (4.75%/11.5%) | 11/25/09 |
| 103-JUL | 9% x (4.75%/11.5%) | 11/20/09 |
| 104-JUL | 9% x (4.75%/11.5%) | 11/20/09 |
| 105-JUL | 9% x (4.75%/11.5%) | 11/23/09 |
| 106-JUL | 9% x (4.75%/11.5%) | 11/18/09 |

| 107-JUL | 9% x (4.75%/11.5%) | 11/18/09 |
|---------|---------------------|----------|
| 108-JUL | 9% x (4.75%/11.5%) | 1/6/10 |
| 109-JUL | 9% x (4.75%/11.5%) | 1/6/10 |
| 110-JUL | 9% x (4.75%/11.5%) | 1/4/10 |
| 111-JUL | 9% x (4.75%/11.5%) | 1/4/10 |
| 112-JUL | 9% x (4.75%/11.5%) | 1/5/10 |
| 113-JUL | 9% x (4.75%/11.5%) | 1/8/10 |
| 130-JUL | 9% x (4.75%/11.5%) | 9/10/09 |
| 131-JUL | 9% x (4.75%/11.5%) | 9/11/09 |