# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------------x

In re:             :     Chapter 11

                               :     Case No. 09-14353 (KJC)

TUBO DE PASTEJÉ, S.A. DE C.V., <u>et al.</u>,     :

                               :     Jointly Administered

                      Debtors.     :

-----------------------------------------------------------------x

## JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OF TUBO DE PASTEJÉ, S.A. DE C.V. AND CAMBRIDGE-LEE HOLDINGS, INC., AS DEBTORS AND DEBTORS-IN-POSSESSION, AND <u>INDUSTRIAS UNIDAS, S.A. DE C.V., AS CO-PROPONENT</u>

### June 7, 2011

**PACHULSKI STANG ZIEHL & JONES LLP**
Laura Davis Jones (Bar No. 2436)
Michael R. Seidl (Bar No. 3889)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(Courier 19801)
Telephone: 302.652.4100
Facsimile: 302.652.4400

**MILBANK, TWEED, HADLEY & McCLOY LLP**
Dennis F. Dunne
Risa M. Rosenberg
Brian Kinney
One Chase Manhattan Plaza
New York, New York 10005-1413
Telephone: 212.530.5000
Facsimile: 212.530.5219

*Attorneys for Tubo de Pasteje, S.A. de C.V. and
Cambridge-Lee Holdings, Inc.*

# TABLE OF CONTENTS

Page

SECTION 1. DEFINITIONS....................................................................................1
1.1     "9.75% Commercial Paper"........................................................................1
1.2     "12% Commercial Paper"...........................................................................1
1.3     "Administrative Claim"..............................................................................1
1.4     "Agreed Costs".........................................................................................2
1.5     "Allowed".................................................................................................2
1.6     "Avoidance Actions".................................................................................2
1.7     "Ballot".....................................................................................................2
1.8     "Bankruptcy Code"...................................................................................2
1.9     "Bankruptcy Court"..................................................................................2
1.10    "Bankruptcy Rules"..................................................................................2
1.11    "Benefit Plans".........................................................................................2
1.12    "Business Day".........................................................................................2
1.13    "Cash".......................................................................................................2
1.14    "Causes of Action"...................................................................................2
1.15    "Chapter 11 Cases"..................................................................................3
1.16    "Claim".....................................................................................................3
1.17    "Class".......................................................................................................3
1.18    "CLH".......................................................................................................3
1.19    "Commercial Paper"..................................................................................3
1.20    "Confirmation".........................................................................................3
1.21    "Confirmation Date".................................................................................3
1.22    "Confirmation Hearing"............................................................................3
1.23    "Confirmation Order"...............................................................................3
1.24    "Consenting Creditors".............................................................................3
1.25    "Consensual Exchange"............................................................................3
1.26    "Copper Contracts"..................................................................................3
1.27    "Copper Debt"..........................................................................................3
1.28    "Copper Debt Finalization Amount".........................................................4
1.29    "Copper Debt Principal Amount".............................................................4
1.30    "Corporate Documents"............................................................................4
1.31    "Cure Amount"........................................................................................4
1.32    "Cure Dispute".........................................................................................4
1.33    "D&O Liability Insurance Policies"..........................................................4
1.34    "Debtor"...................................................................................................4
1.35    "Disallowed Claim"..................................................................................4
1.36    "Disbursing Agent"..................................................................................4
1.37    "Disclosure Statement".............................................................................4
1.38    "Disputed Claim"......................................................................................4
1.39    "Distribution Date"...................................................................................4
1.40    "Distribution Record Date".......................................................................4
1.41    "Eligible Debt".........................................................................................5

1.42  "Equity Interest" ..................................................................................5
1.43  "ESBDS Loan" ...................................................................................5
1.44  "Estate" ................................................................................................5
1.45  "Executory Contract" .........................................................................5
1.46  "Existing Guarantor" ..........................................................................5
1.47  "Existing Indenture" ...........................................................................5
1.48  "Existing Pledge Agreement" ............................................................5
1.49  "File or Filed" ....................................................................................5
1.50  "Final Order" ......................................................................................5
1.51  "General Unsecured Claim" ...............................................................6
1.52  "Holder" ..............................................................................................6
1.53  "Impaired" ..........................................................................................6
1.54  "Indemnitee" .......................................................................................6
1.55  "Indenture Trustee" ............................................................................6
1.56  "Indenture Trustee Expenses" ...........................................................6
1.57  "Intercompany Claims" ......................................................................6
1.58  "Intercompany Interest" .....................................................................6
1.59  "IUSA" ................................................................................................6
1.60  "IUSA Group" .....................................................................................6
1.61  "IUSA Noteholder Claims" ................................................................6
1.62  "Lien" ..................................................................................................6
1.63  "New Corporate Documents" .............................................................6
1.64  "New Indentures" ...............................................................................6
1.65  "New Notes" ........................................................................................7
1.66  "New Pledge Agreement" ..................................................................7
1.67  "New Series A Indenture" ..................................................................7
1.68  "New Series B Indenture" ..................................................................7
1.69  "New Series A Notes" .........................................................................7
1.70  "New Series B Notes" .........................................................................7
1.71  "Non-Debtor Subsidiaries" .................................................................7
1.72  "Noteholders" ......................................................................................7
1.73  "Noteholder Pledge Claims" ..............................................................7
1.74  "Old 2016 Notes" ...............................................................................7
1.75  "Other Priority Claim" .......................................................................7
1.76  "Other Secured Claim" .......................................................................7
1.77  "Petition Date" ...................................................................................7
1.78  "Person" ..............................................................................................8
1.79  "Plan" ..................................................................................................8
1.80  "Plan Documents" ..............................................................................8
1.81  "Plan Effective Date" .........................................................................8
1.82  "Plan Proponents" ..............................................................................8
1.83  "Plan Supplement" .............................................................................8
1.84  "Priority Tax Claim" ..........................................................................8
1.85  "Professional Fee Claims" .................................................................8
1.86  "Professional Person" ........................................................................8
1.87  "Proof of Claim" .................................................................................8

1.88 "Reinstated or Reinstatement" ................................................................8
1.89 "Released Parties" ................................................................................9
1.90 "Reorganized Debtor" ..........................................................................9
1.91 "Restructuring Agreement" ...................................................................9
1.92 "Restructuring Agreement Effective Date" ............................................9
1.93 "Restructuring Transactions" ................................................................9
1.94 "Retirement Plan" ................................................................................9
1.95 "Retirement Plan Sponsor" ...................................................................9
1.96 "Schedule of Assumed Contracts" ........................................................9
1.97 "Schedule of Intercompany Claims" ...................................................10
1.98 "Schedule of Rejected Contracts" .......................................................10
1.99 "Schedule of Retained Causes of Action" ..........................................10
1.100 "Secured Claim" ...............................................................................10
1.101 "Series A Eligible Debt" ....................................................................10
1.102 "Series B Eligible Debt" ....................................................................10
1.103 "Tubo" ...............................................................................................10
1.104 "Tubo Pledge Claims" .......................................................................10
1.105 "Unimpaired" .....................................................................................10
1.106 "Unsecured Parent Guaranty Claims" ...............................................10
1.107 "U.S. Trustee" ...................................................................................10

SECTION 2. INTERPRETATION, RULES OF CONSTRUCTION, COMPUTATION
    OF TIME, AND GOVERNING LAW .................................................11
2.1 Undefined Terms ...............................................................................11
2.2 Rules of Interpretation .......................................................................11
2.3 Time Periods .....................................................................................11
2.4 Governing Law ..................................................................................11
2.5 Limitation ..........................................................................................11

SECTION 3. ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS,
    PRIORITY TAX CLAIMS, AND INTERCOMPANY CLAIMS .......................12
3.1 Administrative Claims ........................................................................12
3.2 Professional Fee Claims .....................................................................12
3.3 Priority Tax Claims ............................................................................12
3.4 Intercompany Claims and Intercompany Interests ...............................12

SECTION 4. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ........13
4.1 Summary of Classification ..................................................................13
4.2 Treatment of Claims and Equity Interests ...........................................13

SECTION 5. ACCEPTANCE OR REJECTION OF THE PLAN .............................................16
5.1 Acceptance or Rejection of Plan .........................................................16
5.2 Acceptance by Impaired Classes ........................................................16

SECTION 6. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
    LEASES ..........................................................................................16
6.1 Assumption ........................................................................................16

| | | |
|---|---|---|
| 6.2 | Rejection | 18 |
| 6.3 | Indemnification of Directors, Officers and Employees | 18 |
| 6.4 | D&O Liability and Insurance Policies | 18 |
| 6.5 | Compensation and Benefits Plans | 19 |

SECTION 7. PROVISIONS GOVERNING DISTRIBUTIONS .......................................19
| | | |
|---|---|---|
| 7.1 | Timing and Calculation of Amounts to Be Distributed | 19 |
| 7.2 | Disbursing Agent | 20 |
| 7.3 | Rights and Powers of Disbursing Agent | 20 |
| 7.4 | Distributions on Account of Claims Allowed After the Plan Effective Date | 20 |
| 7.5 | Delivery of Distributions and Undeliverable or Unclaimed Distributions | 21 |

SECTION 8. MEANS FOR IMPLEMENTATION OF THE PLAN .................................22
| | | |
|---|---|---|
| 8.1 | Continued Corporate Existence | 22 |
| 8.2 | Revesting of Assets | 22 |
| 8.3 | Operation of Business and Properties | 23 |
| 8.4 | Retention of Causes of Action | 23 |
| 8.5 | Cancellation of Existing Agreements | 24 |
| 8.6 | New Notes | 24 |
| 8.7 | Restructuring Transactions | 24 |
| 8.8 | Effectuating Documents; Further Transactions | 25 |
| 8.9 | Management of Reorganized Debtors | 25 |

SECTION 9. DISCHARGE, RELEASES AND EXCULPATION ....................................26
| | | |
|---|---|---|
| 9.1 | Discharge | 26 |
| 9.2 | Exculpation | 27 |
| 9.3 | Release by Debtors and Plan Proponents | 27 |
| 9.4 | Releases by Holders of Claims | 27 |
| 9.5 | Injunction | 28 |
| 9.6 | Term of Injunctions and Stays | 28 |

SECTION 10. CLAIM RESOLUTION PROCESS ..........................................................29
| | | |
|---|---|---|
| 10.1 | No Bar Date; No Proofs of Claim | 29 |
| 10.2 | Administrative Claim and Priority Tax Claims Allowed as Set Forth in Books and Records | 29 |

SECTION 11. RETENTION OF JURISDICTION ...........................................................29

SECTION 12. MISCELLANEOUS PROVISIONS ..........................................................31
| | | |
|---|---|---|
| 12.1 | Exemption from Certain Transfer Taxes | 31 |
| 12.2 | Section 1145 Exemption | 31 |
| 12.3 | Payment of Statutory Fees | 31 |
| 12.4 | Payment of Indenture Trustee Expenses | 31 |
| 12.5 | Manner of Payment | 31 |
| 12.6 | Successors and Assigns | 31 |
| 12.7 | Amendment and Modification | 31 |
| 12.8 | Binding Effect | 32 |

iv

12.9     Notices ...........................................................................................................32
12.10   Substantial Consummation ............................................................................33
12.11   Inconsistencies ...............................................................................................33

SECTION 13. CONDITIONS TO CONFIRMATION AND PLAN EFFECTIVE DATE ..........33
13.1     Conditions to Confirmation ...........................................................................33
13.2     Conditions to Effectiveness ...........................................................................34
13.3     Waiver of Conditions......................................................................................34
13.4     Effects of Failure of Conditions.....................................................................35

# CHAPTER 11 PLAN

Pursuant to title 11 of the United States Code, 11 U.S.C. §§ 101 - 1532, Tubo de Pasteje, S.A. de C.V., Cambridge-Lee Holdings, Inc. and Industrias Unidas, S.A. de C.V., hereby respectfully jointly propose the following Plan of Reorganization for Tubo de Pasteje, S.A. de C.V. and Cambridge-Lee Holdings, Inc. pursuant to section 1121(a) of the Bankruptcy Code.

The Plan is a joint plan that does not provide for substantive consolidation of the Estates, and on the Plan Effective Date, the Estates shall not be deemed to be substantively consolidated for purposes thereof. Except as specifically set forth herein, nothing in the Plan or this Disclosure Statement shall constitute or be deemed to constitute an admission that any Debtor is subject to or liable for any claim against any other Debtor.

Additionally, claimants holding Claims against multiple Debtors, to the extent Allowed in each Debtor's case, will be treated as a separate claim against each Debtor's Estate; *provided, however*, that no Holder shall be entitled to receive more than payment in full of its Allowed Claim, and such Claims will be administered and treated in the manner provided for herein by the Debtors or otherwise.

## SECTION 1.
## DEFINITIONS

As used in the Plan, the following terms shall have the following meanings:

1.1 **"9.75% Commercial Paper"** means the 9.75% commercial paper with a principal amount outstanding of $9,500,000 due March 26, 2010, issued by IUSA and guaranteed by certain of its subsidiaries.

1.2 **"12% Commercial Paper"** means the 12% commercial paper with a principal amount outstanding of $15,000,000 due August 6, 2010, issued by IUSA and guaranteed by certain of its subsidiaries.

1.3 **"Administrative Claim"** means any right to payment against a Debtor constituting a cost or expense of administration of the Chapter 11 Cases Allowed under and in accordance with, as applicable, sections 328, 330, 364(c)(1), 365, 503(b), 507(a)(2), 507(b), and 1114(e) of the Bankruptcy Code, including (a) any actual and necessary costs and expenses of preserving the Debtors' estates, (b) any actual and necessary costs and expenses of operating the Debtors' businesses, (c) any indebtedness or obligations incurred or assumed by the Debtors during the Chapter 11 Cases, and (d) any compensation for professional services rendered and reimbursement of expenses incurred. Any fees or charges assessed against the estates of the Debtors under section 1930 of chapter 123 of title 28 of the United States Code, 28 U.S.C. § 1930, are excluded from the definition of Administrative Claims and shall be paid in accordance with Section 12.3 of the Plan.

1.4　**"Agreed Costs"** means the legal and non-legal costs and expenses accrued in connection with the Copper Contracts prior to October 22, 2010, in an aggregate agreed amount of $2,000,000.00.

1.5　**"Allowed"** means with respect to any Claim or Equity Interest, any Claim or Equity Interest arising on or before the Plan Effective Date: (a) as to which no objection to allowance or request for estimation has been filed, or as to which any objection has been determined by Final Order in favor of the respective Holder of such Claim or Equity Interest, (b) as to which the liability of any Debtor, and the amount thereof, is determined by Final Order of a court of competent jurisdiction, or (c) as to which is expressly allowed pursuant to the Plan.

1.6　**"Avoidance Actions"** means any and all avoidance, recovery, subordination, recharacterization or other actions or remedies that may be brought by or on behalf of the Debtors or their estates under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions or remedies arising under sections 502, 510 or 542-553 of the Bankruptcy Code.

1.7　**"Ballot"** means the form of ballot distributed to each Holder of an Impaired Claim that, in each case, is entitled to vote on the Plan for the purpose of indicating an acceptance or rejection of the Plan.

1.8　**"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as now in effect or hereafter amended (to the extent applicable to the Chapter 11 Cases).

1.9　**"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Delaware, or any other court with jurisdiction over the Chapter 11 Cases.

1.10　**"Bankruptcy Rules"** means, collectively, the (a) Federal Rules of Bankruptcy Procedure, as amended from time to time, as applied to the Chapter 11 Cases pursuant to 28 U.S.C. § 2075 and (b) any Local Rules of the Bankruptcy Court, all as now in effect or hereafter amended (to the extent applicable to the Chapter 11 Cases).

1.11　**"Benefit Plans"** means all benefit plans, policies and programs sponsored by a Debtor or IUSA, including all savings plans, pension plans, and health and welfare plans.

1.12　**"Business Day"** means any day, excluding Saturdays, Sundays or "legal holidays" as defined in Bankruptcy Rule 9006(a).

1.13　**"Cash"** means legal tender of the United States, unless the agreement or course of business or conduct between a Debtor and a particular creditor otherwise requires payment in a different currency.

1.14　**"Causes of Action"** means any and all actions, causes of action (including Avoidance Actions), suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted

or assertable directly or derivatively, in law, equity or otherwise, and expressly including any defenses or equitable remedies necessary for the adjudication of such Causes of Action.

1.15 **"Chapter 11 Cases"** means, collectively, the bankruptcy cases of the Debtors under chapter 11 of the Bankruptcy Code commenced on the Petition Date in the Bankruptcy Court.

1.16 **"Claim"** means a claim against a Debtor, whether or not asserted or Allowed, as defined in section 101(5) of the Bankruptcy Code.

1.17 **"Class"** means any group of substantially similar Claims or Equity Interests classified by the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

1.18 **"CLH"** means Cambridge-Lee Holdings, Inc.

1.19 **"Commercial Paper"** means, collectively, the 9.75% Commercial Paper and the 12% Commercial Paper.

1.20 **"Confirmation"** means the Bankruptcy Court's confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

1.21 **"Confirmation Date"** means the day on which the Confirmation Order is entered on the docket for the Chapter 11 Cases.

1.22 **"Confirmation Hearing"** means the hearing held pursuant to Bankruptcy Rule 3020(b)(2) and section 1128 of the Bankruptcy Code, including any adjournments thereof, at which the Bankruptcy Court will consider Confirmation of the Plan.

1.23 **"Confirmation Order"** means the Order of the Bankruptcy Court confirming the Plan.

1.24 **"Consenting Creditors"** means the Holders of the Eligible Debt that are parties to the Restructuring Agreement.

1.25 **"Consensual Exchange"** means that certain consensual out-of-court exchange pursuant to which holders of Copper Debt and Commercial Paper agree to exchange their Copper Debt and Commercial Paper for New Series B Notes.

1.26 **"Copper Contracts"** means, collectively, (a) that certain Amended and Restated Copper Cathode Sale Agreement, executed on August 1, 2009, and dated as of June 25, 2008, by and among Gerald Metals, Inc., IUSA, and IUSA, S.A. de C.V. as amended, including all annexes and exhibits thereto, and the guarantee issued by IUSA in respect thereof; and (b) that certain Copper Cathode Sale Agreement, dated as of June 30, 2009, by and among Gerald Metals, Inc., IUSA, and IUSA S.A. de C.V. as amended, including all annexes and exhibits thereto, and the guarantees by IUSA and IUSA, S.A. de C.V. issued in respect thereof.

1.27 **"Copper Debt"** means $148,006,210.08, consisting of (a) the Copper Debt Principal Amount, (b) the Copper Debt Finalization Amount, and (c) the Agreed Costs.

1.28 **"Copper Debt Finalization Amount"** means the agreed upon August 2009 finalization amount of $155,000.

1.29 **"Copper Debt Principal Amount"** means $145,696,210.08, consisting of the amounts due under the promissory notes (*pagarés*) issued pursuant to the Copper Contracts (which, for the avoidance of doubt, includes any such promissory note (*pagaré*) that were originally issued in connection with any Copper Contract, whether such promissory note (*pagaré*) is currently held by the original holder thereof or a subsequent holder thereof).

1.30 **"Corporate Documents"** means, with respect to any Debtor, as applicable, its certificate of incorporation, limited liability agreement, by-laws, and any other organizational and/or governing documents, in all cases, as in effect from time to time.

1.31 **"Cure Amount"** is defined in Section 6.1.1 of the Plan.

1.32 **"Cure Dispute"** is defined in Section 6.1.4 of the Plan.

1.33 **"D&O Liability Insurance Policies"** means all insurance policies for directors', managers', and officers' liability maintained by the Debtors as of the Petition Date.

1.34 **"Debtor"** means each of CLH and Tubo.

1.35 **"Disallowed Claim"** means any Claim against any Debtor that has been disallowed, in whole or in part, by a Final Order, or which has been withdrawn, in whole or in part, by the Holder thereof.

1.36 **"Disbursing Agent"** means Reorganized Debtors or another party designated by the Reorganized Debtors to serve as a disbursing agent under the Plan.

1.37 **"Disclosure Statement"** means the Disclosure Statement for the Plan, including the schedules and exhibits thereto, as it may be amended, supplemented, or modified from time to time, that is prepared and distributed in accordance with section 1125, 1126(b) and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018 and any other applicable laws and as approved by the Bankruptcy Court.

1.38 **"Disputed Claim"** means a Claim, or portion thereof, that is not an Allowed Claim or a Disallowed Claim, provided, however, that in no event shall a Claim that is deemed Allowed pursuant to this Plan be a Disputed Claim.

1.39 **"Distribution Date"** means the date selected by the Debtors or the Reorganized Debtors occurring as soon as reasonably practicable on or after the Plan Effective Date.

1.40 **"Distribution Record Date"** means the date established by the Debtors for determining the Holders of Claims entitled to distribution under the Plan and the holders of Eligible Debt for purposes of distribution of the Series B Notes, which shall be the Confirmation Date or such other date as designated in the Confirmation Order.

1.41 **"Eligible Debt"** means, collectively, the Series A Eligible Debt and the Series B Eligible Debt.

1.42 **"Equity Interest"** means the interest of any holders, other than any of the Debtors, of equity securities of any of the Debtors represented by issued and outstanding shares of common or preferred stock or other instruments evidencing a present ownership interest in any of the Debtors, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest; provided that, for the avoidance of doubt, Equity Interests do not include Intercompany Interests.

1.43 **"ESBDS Loan"** means the unsecured loan issued pursuant to that certain Credit Agreement dated as of September 26, 2008, with a principal amount outstanding of $800,000.00, entered into by and among Espirito Santo Bank, as lender, IUSA, S.A. de C.V., as borrower, and IUSA and CLH, as Guarantors.

1.44 **"Estate"** means the estate of any Debtor as created under section 541 of the Bankruptcy Code.

1.45 **"Executory Contract"** means a contract or unexpired lease which one or more of the Debtors is a party to that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.46 **"Existing Guarantor"** means any guarantor under the Existing Indenture.

1.47 **"Existing Indenture"** means that certain Indenture, dated as of November 13, 2006, entered into by and among IUSA, as issuer, the guarantors named therein, the Bank of New York, as trustee and the Bank of New York (Luxembourg) S.A., as Luxembourg paying agent and Luxembourg transfer agent, with a principal amount outstanding of $200,000,000.00.

1.48 **"Existing Pledge Agreement"** means that certain Pledge and Security Agreement, dated as of November 16, 2006, entered into by and among Tubo, as pledgor, and the Bank of New York, as trustee on behalf of itself and the noteholders under the Existing Indenture.

1.49 **"File or Filed"** means file or filed with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

1.50 **"Final Order"** means an order or judgment, the operation or effect of which has not been stayed, reversed or amended and as to which order or judgment (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing has expired, and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending; provided, however, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to sections 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

1.51 **"General Unsecured Claim"** means any Claim other than an (a) Administrative Claim, (b) Priority Tax Claim, (c) Other Priority Claim, (d) Other Secured Claim, (e) Noteholder Pledge Claim, (f) Unsecured Parent Guaranty Claim or (g) Intercompany Claim.

1.52 **"Holder"** means any Person that holds a Claim or an Equity Interest.

1.53 **"Impaired"** means, when used in reference to a Claim or an Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.54 **"Indemnitee"** is defined in Section 6.3 of the Plan.

1.55 **"Indenture Trustee"** means the Bank of New York Mellon, in its capacity as Indenture Trustee under the Existing Indenture.

1.56 **"Indenture Trustee Expenses"** means any reasonable, unpaid fees of the Indenture Trustee, and reasonable, unpaid out-of-pocket costs and expenses, including reasonable fees and expenses of counsel, incurred by the Indenture Trustee through the Plan Effective Date or incurred by the Indenture Trustee after the Plan Effective Date in connection with making distributions pursuant to the Plan, except any such costs and expenses as may be attributable to the Indenture Trustee's gross negligence or willful misconduct.

1.57 **"Intercompany Claims"** means all prepetition Claims against any Debtor (a) held by another Debtor or a Non-Debtor Subsidiary or (b) held by any member of the IUSA Group, and listed on the Schedule of Intercompany Claims.

1.58 **"Intercompany Interest"** means all prepetition Equity Interests in a Debtor held by any other Debtor, a Non-Debtor Subsidiary or any member of the IUSA Group.

1.59 **"IUSA"** means Industrias Unidas, S.A. de C.V.

1.60 **"IUSA Group"** means IUSA and its direct and indirect subsidiaries.

1.61 **"IUSA Noteholder Claims"** means all Claims, rights and interests of the Noteholders against IUSA or other members of the IUSA Group arising out of or related to the Old 2016 Notes, the Existing Indenture, the Existing Pledge Agreement, and any instruments, documents or agreements executed in connection therewith, including, without limitation, all accrued but unpaid interest thereon but not including any Indenture Trustee Expenses.

1.62 **"Lien"** shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

1.63 **"New Corporate Documents"** means the Corporate Documents of the Reorganized Debtors.

1.64 **"New Indentures"** means, collectively, the New Series A Indenture and the New Series B Indenture.

1.65 **"New Notes"** means the New Series A Notes and the New Series B Notes.

1.66 **"New Pledge Agreement"** means that certain Pledge and Security Agreement, to be entered into on the Plan Effective Date, under which, among other things, Tubo shall pledge Reorganized CLH's stock for the benefit of the New Series A Notes.

1.67 **"New Series A Indenture"** means that certain Indenture to be executed in connection with the issuance of the New Series A Notes, to be entered into on the Plan Effective Date, by and among IUSA, as issuer, the guarantors named therein, [the Bank of New York, as trustee, and the Bank of New York (Luxembourg) S.A., as Luxembourg paying agent and Luxembourg transfer agent].

1.68 **"New Series B Indenture"** means that certain Indenture to be executed in connection with the issuance of the New Series B Notes, to be entered into on the Plan Effective Date, by and among IUSA, as issuer, the guarantors named therein, [the Bank of New York, as trustee, and the Bank of New York (Luxembourg) S.A., as Luxembourg paying agent and Luxembourg transfer agent].

1.69 **"New Series A Notes"** means the Series A Notes due November 15, 2016 to be issued by IUSA pursuant to the New Series A Indenture, which shall be secured by the capital stock of CLH pursuant to the New Pledge Agreement.

1.70 **"New Series B Notes"** means the Series B Notes due November 15, 2016 to be issued by IUSA pursuant to the New Series B Indenture, which shall not be secured by any assets of the Reorganized Debtors.

1.71 **"Non-Debtor Subsidiaries"** means, collectively, Eagle Tube Industries LLC, United Copper Industries, Inc., Cambridge-Lee Industries LLC, UCI Land Development Inc., Cambridge-Lee (UK) LTD., Cambridge-Lee Europe, Inc., Cambridge-Lee (Holland) B.V. and Cambridge-Lee (France) S.A..

1.72 **"Noteholders"** means the Holders of the Old 2016 Notes.

1.73 **"Noteholder Pledge Claims"** means the IUSA Noteholder Claims and the Tubo Pledge Claims.

1.74 **"Old 2016 Notes"** means the 11.50% Senior Series A Notes due November 15, 2016, issued by IUSA pursuant to the Existing Indenture.

1.75 **"Other Priority Claim"** means a Claim entitled to priority under section 507(a) of the Bankruptcy Code that is not a Priority Tax Claim or an Administrative Claim.

1.76 **"Other Secured Claim"** means any Secured Claim other than a Noteholder Pledge Claim.

1.77 **"Petition Date"** means December 8, 2009.

1.78   **"Person"** means any individual, corporation, partnership, association, multiemployer pension plan, plan trustee, plan administrator, indenture trustee, limited liability company, organization, joint stock company, joint venture, estate, trust, governmental unit or any political subdivision thereof, or any other entity or organization.

1.79   **"Plan"** means this joint plan of reorganization, as it may be amended, modified, or supplemented from time to time in accordance with the terms hereof, and all exhibits annexed hereto or referenced herein including, without limitation, the Plan Supplement.

1.80   **"Plan Documents"** means all documents contemplated by or executed in connection with the Plan.

1.81   **"Plan Effective Date"** means the first Business Day specified by the Plan Proponents on which all conditions to the consummation of the Plan as set forth in Section 13.2 hereof have been satisfied or, if capable of being waived, duly and expressly waived as provided in Section 13.3 hereof.

1.82   **"Plan Proponents"** means, collectively, the Debtors and IUSA.

1.83   **"Plan Supplement"** means the compilation of documents and exhibits relevant to the implementation of the Plan filed with the Bankruptcy Court not later than five (5) days prior to the last day upon which holders of Claims may vote to accept or reject the Plan, including, without limitation, (a) the New Indentures; (b) the New Pledge Agreement; (c) the Schedule of Assumed Contracts; (d) the Schedule of Rejected Contracts; (e) the Schedule of Retained Causes of Action; (f) the Schedule of Intercompany Claims; (g) the New Corporate Documents; and (h) a list of the officers and directors of the Reorganized Debtors.

1.84   **"Priority Tax Claim"** means a Claim that is entitled to priority under section 507(a)(8) of the Bankruptcy Code.

1.85   **"Professional Fee Claims"** means Claims of Professional Persons for compensation or reimbursement of costs and expenses relating to services performed after the Petition Date and to and including the Confirmation Date.

1.86   **"Professional Person"** means a professional person, as that term is used in sections 327, 328, 330, 331, 503(b)(2) and/or 1103 of the Bankruptcy Code, who is employed by the Debtors in connection with the Chapter 11 Cases.

1.87   **"Proof of Claim"** means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

1.88   **"Reinstated or Reinstatement"** means (a) leaving unaltered the legal, equitable and contractual rights to which a Claim entitles the Holder of such Claim so as to leave such Claim Unimpaired, or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default, (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code; (ii) reinstating the maturity (to the extent such maturity has not otherwise accrued by the passage of

time) of such Claim as such maturity existed before such default; (iii) compensating the Holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim arises from any failure to perform a non-monetary obligation other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensating the Holder of such Claim (other than the Debtors or an Insider) for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable or contractual rights to which such Claim entitles the Holder of such Claim. The Debtors reserve their legal, equitable and contractual rights and defenses to dispute the liability and/or the amount of any Reinstated Claim in any court of competent jurisdiction after the Plan Effective Date.

1.89    **"Released Parties"** means, collectively, (a) the Debtors, (b) each Non-Debtor Subsidiary, (c) IUSA, (d) IUSA, S.A. de C.V., (e) the Indenture Trustee, (f) each Noteholder, (g) each Existing Guarantor, (h) the present and former directors, officers and employees of the Debtors, the Non-Debtor Subsidiaries, IUSA and other members of the IUSA Group, (i) any attorneys, financial advisors, investment bankers, accountants, consultants, or other professionals of the parties described in clauses (a) through (h) hereof; provided, however, that such attorneys and professional advisors shall only include those that provided services related to the Debtors, the Chapter 11 Cases, the Disclosure Statement, the Plan and all financing and other transactions leading up to and contemplated by this Plan, and (j) the officers, directors, employees, agents, affiliates, predecessors, successors and assigns of each of the parties described in clauses (a) through (i).

1.90    **"Reorganized Debtor"** means each Debtor on and after the Plan Effective Date.

1.91    **"Restructuring Agreement"** means [that certain Restructuring Agreement, entered into as of [•], 2011, by and among IUSA, the Existing Guarantors and other subsidiary guarantors party thereto, and the Consenting Creditors, a copy of which is attached to Exhibit 3 to the Disclosure Statement].

1.92    **"Restructuring Agreement Effective Date"** means [the "Effective Date" as defined in the Restructuring Agreement].

1.93    **"Restructuring Transactions"** Means the following transactions which shall be effectuated on the Plan Effective Date: (a) entry into the New Indentures by the relevant parties thereto, and (b) issuance of the New Notes, all as more fully described in section 8.7 of the Plan.

1.94    **"Retirement Plan"** means that certain Employees' Retirement Plan of Cambridge-Lee Industries, Inc., a defined benefit plan sponsored by the Retirement Plan Sponsor.

1.95    **"Retirement Plan Sponsor"** means Cambridge-Lee Industries, Inc.

1.96    **"Schedule of Assumed Contracts"** means the schedule included in the Plan Supplement listing certain executory contracts and unexpired leases to be assumed by the Debtors and assigned to the Reorganized Debtors.

1.97    **"Schedule of Intercompany Claims"** means the schedule included in the Plan Supplement listing all Intercompany Claims.

1.98    **"Schedule of Rejected Contracts"** means the schedule included in the Plan Supplement listing certain executory contracts and unexpired leases to be rejected by the Reorganized Debtors as of the Plan Effective Date.

1.99    **"Schedule of Retained Causes of Action"** means the schedule included in the Plan Supplement listing the Causes of Action to be retained by the Reorganized Debtor as of the Plan Effective Date.

1.100    **"Secured Claim"** means, pursuant to section 506 of the Bankruptcy Code, that portion of a Claim against any Debtor that is reflected in the schedules of assets and liabilities and the statements of financial affairs pursuant to section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Forms of the Bankruptcy Rules or a proof of claim Filed as a secured claim which is (a) secured by a valid, perfected and enforceable security interest, lien, mortgage or other encumbrance, that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title or interest of any Debtor in and to property of the relevant Estate, to the extent of the value of the Holder's interest in such property as of the relevant determination date or (b) Allowed as such pursuant to the terms of the Plan (subject to the occurrence of the Plan Effective Date).  The defined term "Secured Claim" includes any Claim against any Debtor that is subject to a permissible setoff under section 553 of the Bankruptcy Code, to the extent of such permissible setoff.

1.101    **"Series A Eligible Debt"** means, collectively, the ESBDS Loan and the Old 2016 Notes.

1.102    **"Series B Eligible Debt"** means, collectively, the Copper Debt and the Commercial Paper.

1.103    **"Tubo"** means Tubo de Pastejé, S.A. de C.V.

1.104    **"Tubo Pledge Claims"** means all Claims, rights and interests against Tubo arising out of or related to the Old 2016 Notes, the Existing Indenture, the Existing Pledge Agreement, and any instruments, documents or agreements executed in connection therewith, including, without limitation, all accrued by unpaid interest thereon.

1.105    **"Unimpaired"** means, with respect to a Class of Claims or Equity Interest, a Claim or Equity Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

1.106    **"Unsecured Parent Guaranty Claims"** means all Claims, rights and interests against CLH arising out of or related to the ESBDS Loan, and any instruments, documents or agreements executed in connection therewith, including, without limitation, all accrued by unpaid interest thereon.

1.107    **"U.S. Trustee"** means the Office of the United States Trustee for the District of Delaware.

## SECTION 2.
## INTERPRETATION, RULES OF CONSTRUCTION,
## COMPUTATION OF TIME, AND GOVERNING LAW

2.1     **Undefined Terms**.  Any capitalized term used in the Plan that is not defined in the Plan, either in Section 1 or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

2.2     **Rules of Interpretation**.  For purposes of the Plan:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release, note or other agreement or document being in a particular form or on particular terms and conditions means that such contract, instrument, release, note or other agreement or document shall be substantially in such form or substantially on such terms and conditions, but if there exists any inconsistency between a summary of, or reference to, any contract, instrument, release, note or other agreement or document in the Plan or the Confirmation Order and the contract, instrument, release, note or other agreement or document itself, the terms of the Confirmation Order shall control; (c) any reference in the Plan to an existing document Filed or to be Filed means such document, as it may have been or may subsequently be amended, modified or supplemented; (d) unless otherwise specified in a particular reference, all references in the Plan to "section," "article," and "Exhibit" are references to a section, article, and Exhibit of or to the Plan; (e) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (f) captions and section headings are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; and (g) the rules of construction set forth in Bankruptcy Code section 102 shall apply.

2.3     **Time Periods**.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

2.4     **Governing Law**.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of New York shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection therewith, without giving effect to the principles of conflicts of law thereof which would require the application of the law of another jurisdiction, except as otherwise expressly provided for in such agreements, documents, and instruments.

2.5     **Limitation**.  While this Plan provides for the issuance of New Series B Notes to holders of Series B Eligible Debt in exchange for such Series B Eligible Debt, this Plan shall not otherwise affect the rights of such holders, unless such holder is also a Holder of a Claim against or interest in a Debtor.

# SECTION 3.
## ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, PRIORITY TAX CLAIMS, AND INTERCOMPANY CLAIMS

3.1 **Administrative Claims**. Each Holder of an Allowed Administrative Claim will receive payment in full in Cash of the unpaid portion of such Allowed Administrative Claim (a) in the case of professional fees and expenses for advisors to the Debtors, as soon as practicable after Bankruptcy Court approval thereof, or, in the case of professionals retained by the Debtors in the ordinary course of their business, if any, on such terms as are customary between the Debtors and such professionals; (b) with respect to all other Holders of Allowed Administrative Claims, on the later of (i) the Plan Effective Date and (ii) the date on which such payment would be made in the ordinary course of the Debtors' business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements or regulations governing, instruments evidencing or other documents relating to such transactions; or (c) with respect to any Claims described in clauses (a) and (b) hereof, as otherwise agreed by the Holder of such Claim and the Debtors.

3.2 **Professional Fee Claims**. All entities seeking awards by the Bankruptcy Court of Professional Fee Claims shall File and serve on counsel for the Reorganized Debtors, the Committee, if any, the U.S. Trustee, and any other party specifically requesting a copy in writing, an application for its Professional Fee Claim no later than forty (40) days after the Plan Effective Date and be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court in accordance with the order relating to or Allowing any such Professional Fee Claim. Any interested party desiring to object to any Professional Fee Claim must File and serve its objection on the Reorganized Debtors, the Committee, if any, the U.S. Trustee, and the Professional Person to whose application the objection is addressed no later than sixty (60) days after the Plan Effective Date. Notwithstanding anything else provided herein, the Reorganized Debtors are authorized to pay compensation for professional services rendered and reimbursement of expenses incurred after the Confirmation Date in the ordinary course and without the need for Bankruptcy Court approval.

3.3 **Priority Tax Claims**. Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each Holder of an Allowed Priority Tax Claim shall, in full satisfaction, release and discharge of such Allowed Priority Tax Claim, receive, in the Reorganized Debtors' discretion, (a) on the applicable Distribution Date, Cash in an amount equal to such Allowed Priority Tax Claim, (b) such other treatment as to which the Debtors and the Holder of such Allowed Priority Tax Claim have agreed upon in writing or (c) such other treatment as will cause such Claim not to be Impaired; provided, however, that any such Priority Tax Claim not due and owing on the Plan Effective Date will be paid when such Claim becomes due and owing.

3.4 **Intercompany Claims and Intercompany Interests** Notwithstanding anything to the contrary contained in this Plan, Intercompany Claims and Intercompany Interests shall be Unimpaired and shall remain in full force and effect after the Plan Effective Date, provided that such Intercompany Claims are subject to the requirements of and restrictions (including, without limitation, the relative ranking and priority of such Intercompany Claims) contained in the New Indentures.

## SECTION 4.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

In accordance with section 1123(a)(1) of the Bankruptcy Code, the Administrative Claims and Priority Tax Claims have not been classified and thus the Holders thereof are excluded from the Classes of Claims entitled to vote on the Plan.

4.1    **Summary of Classification**. All Claims and Equity Interests, other than the Administrative Claims and Priority Tax Claims, are classified in the Classes set forth in this Section 4 for all purposes, including voting, Confirmation, and distributions pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Equity Interest is classified in a particular Class only to the extent that such Claim or Equity Interest is within the description of that Class and is classified in another Class to the extent that any remainder of such Claim or Equity Interest belongs within such other Class or Classes. A Claim or Equity Interest is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Equity Interest is an Allowed Claim in the Class and has not been paid, released, or otherwise satisfied prior to the Plan Effective Date.

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| T1 | Other Priority Claims against Tubo | Unimpaired | Deemed to Accept |
| T2 | Other Secured Claims against Tubo | Unimpaired | Deemed to Accept |
| T3 | Noteholder Pledge Claims against Tubo | Impaired | Entitled to Vote |
| T4 | General Unsecured Claims against Tubo | Unimpaired | Deemed to Accept |
| T5 | Equity Interests in Tubo | Unimpaired | Deemed to Accept |
| C1 | Other Priority Claims against CLH | Unimpaired | Deemed to Accept |
| C2 | Other Secured Claims against CLH | Unimpaired | Deemed to Accept |
| C3 | Unsecured Parent Guaranty Claims against CLH | Impaired | Entitled to Vote |
| C4 | General Unsecured Claims against CLH | Unimpaired | Deemed to Accept |
| C5 | Equity Interests in CLH | Unimpaired | Deemed to Accept |

4.2    **Treatment of Claims and Equity Interests**. To the extent a Class contains Allowed Claims with respect to a particular Debtor, the treatment provided to each Class for distribution purposes is specified below:

4.2.1    *Classes T1 and C1 – Other Priority Claims.*

(a)    *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, each Holder of

an Allowed Priority Claim shall have its Claim Reinstated to the extent such Claim is not paid in the ordinary course of business prior to the Plan Effective Date.

(b) *Voting*: Classes T1 and C1 are Unimpaired under the Plan and, consequently, the Holders of Other Priority Claims are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote on the Plan.

4.2.2 *Classes T2 and C2 – Other Secured Claims.*

(a) *Treatment*: Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, each Holder of an Allowed Other Secured Claim shall have its Claim Reinstated and shall retain its Lien on the property that secures each such Claim, to the extent such Claim is not paid in the ordinary course of business prior to the Plan Effective Date.

(b) *Voting*: Classes T2 and C2 are Unimpaired under the Plan and, consequently, the Holders of Other Secured Claims are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote on the Plan.

4.2.3 Class T3 – *Noteholder Pledge Claims against Tubo.*

(a) *Allowance*: On the Plan Effective Date, the Noteholder Pledge Claims against Tubo shall be deemed Allowed in full.

(b) *Treatment*: Each Holder of a Noteholder Pledge Claim as of the Distribution Record Date shall receive on the Plan Effective Date, in accordance with the Restructuring Transactions, in full and final satisfaction of each such Holder's Allowed Noteholder Pledge Claim, New Series A Notes to be issued by IUSA in the principal amount of (i) 100.00% of the face amount of Old 2016 Notes held by such Holder, plus (ii) unpaid and accruing interest at the rate of 4.75% per annum, from May 15, 2009 through November 15, 2011, plus (iii) 1.75% of the face amount of the Old 2016 Notes held by such Holder compounded at the rate of 4.75% per annum from May 15, 2011 through November 15, 2011, which New Series A Notes shall be guaranteed by Tubo and secured by a pledge of the capital stock of CLH (along with other guarantees and collateral from members of the IUSA Group).

(c) *Voting*: Class T3 is Impaired under the Plan and, consequently, the Holders of Allowed Noteholder Pledge Claims against Tubo are entitled to vote on the Plan.

4.2.4 *Class C3 – Unsecured Parent Guaranty Claims against CLH.*

(a)     *Allowance*: On the Plan Effective Date, the Unsecured Parent Guaranty Claims against CLH shall be deemed Allowed in full.

(b)     *Treatment*: Each Holder of an Unsecured Parent Guaranty Claim as of the Distribution Record Date shall receive on the Plan Effective Date, in accordance with the Restructuring Transactions, in full and final satisfaction of each such Holder's Allowed an Unsecured Parent Guaranty Claim, New Series A Notes to be issued by IUSA in the principal amount of (i) 100.00% of the principal amount of Unsecured Parent Guaranty Claims held by such Holder, plus (ii) unpaid and accruing interest at the rate set forth on Schedule A hereto, from October 12, 2010 through November 15, 2011, plus (iii) 1.75% of the principal amount of Unsecured Parent Guaranty Claims held by such Holder compounded at the rate set forth on Schedule A hereto from May 15, 2011 through November 15, 2011, which New Series A Notes shall be guaranteed by Tubo and secured by a pledge of the capital stock of CLH (along with other guarantees and collateral from members of the IUSA Group).

(c)     *Voting:* Class C3 is Impaired under the Plan and, consequently, the Holders of Allowed Unsecured Parent Guaranty Claims are entitled to vote on the Plan.

### 4.2.5   *Classes T4 and C4 – General Unsecured Claims.*

(a)     *Treatment*: Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, each Holder of an Allowed General Unsecured Claim shall have its Claim Reinstated to the extent that such Claim is not paid in the ordinary course of business prior to the Plan Effective Date.

(b)     *Voting*: Classes T4 and C4 are Unimpaired under the Plan and, consequently, the Holders of General Unsecured Claims are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote on the Plan.

### 4.2.6   *Classes T5 and C5 – Equity Interests.*

(a)     *Treatment*: The Equity Interests are unaltered by the Plan and each Holder of Equity Interests will retain its interests to the same extent as if the Chapter 11 Cases had not been commenced.

(b)     *Voting*: Classes T5 and C5 are Unimpaired under the Plan and, consequently, the Holders of Equity Interests are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote on the Plan.

# SECTION 5.
## ACCEPTANCE OR REJECTION OF THE PLAN

5.1 **Acceptance or Rejection of Plan.**

    5.1.1 *Voting Classes.* Classes T3 and C3 are Impaired under the Plan, and Holders of Claims in Classes T3 and C3 are entitled to vote on the Plan.

    5.1.2 *Presumed Acceptance of the Plan.* Classes T1, C1, T2, C2, T4, C4, T5 and C5 are Unimpaired under the Plan and, therefore, are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

5.2 **Acceptance by Impaired Classes.** An Impaired Class of Claims shall have accepted the Plan if (i) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (ii) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

# SECTION 6.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1 **Assumption.**

    6.1.1 Except as otherwise provided in the Plan or in any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, each executory contract or unexpired lease of the Debtors that has not expired by its own terms before the Plan Effective Date that either: (1) is listed on the Schedule of Assumed Contracts, (2) is not rejected prior to the Plan Effective Date, (3) is not the subject of a motion to reject Filed on or before the Confirmation Date upon which the Bankruptcy Court has not entered an Order, (4) is not listed on the Schedule of Rejected Contracts, or (5) has not been otherwise modified or superseded by agreement of the parties thereto, shall be deemed to have been assumed by the applicable Debtor as of the Plan Effective Date, pursuant to section 365 of the Bankruptcy Code. Nothing in the Plan, any annex to the Plan, or any document executed or delivered in connection with the Plan or any such annex creates any obligation or liability on the part of the Debtors, the Reorganized Debtors or any other person or entity that is not currently liable for such obligation, with respect to any executory contract or unexpired lease except as otherwise provided in the Plan. In addition, the Confirmation Order shall constitute a finding of fact and conclusion of law that (i) each Executory Contract assumed hereunder is an executory contract which may be assumed by the Debtors, (ii) there are no defaults of the Debtors, no cure amounts owing pursuant to section 365(b)(i) of the Bankruptcy Code (the "Cure Amount"), no compensation due for any actual pecuniary loss and there is adequate assurance of future performance with respect to each Executory Contract, (iii) such assumption is in the best interest of the Debtors and their estates, (iv) upon the Plan Effective Date, the assumed Executory Contracts constitute legal, valid, binding and enforceable contracts in accordance with the terms thereof, and (v) the counter party to each assumed Executory Contract is required to and ordered to perform under and honor the terms of the assumed Executory Contract.

6.1.2   Each executory contract and unexpired lease assumed pursuant to this Section 6.1 shall revest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as modified by the provisions of the Plan. Nothing in the Plan or any Plan Document shall create any obligation or liability on the part of any Debtor, any Reorganized Debtor or any other Person that does not currently have such liability or obligation, with respect to any executory contract or unexpired lease.

6.1.3   Each executory contract and unexpired lease that is assumed shall include (i) all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease and (ii) all executory contracts or unexpired leases appurtenant to the premises, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vaults, tunnel or bridge agreements, or franchises, and any other interests in real estate or rights in rem related to such premises, but excluding any agreement rejected pursuant to an order of the Bankruptcy Court.

6.1.4   In the event of a dispute (each, a "Cure Dispute") regarding: (i) the Cure Amount; (ii) the ability of the applicable Reorganized Debtor to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed; or (iii) any other matter pertaining to the proposed assumption, any party in interest may file an objection to confirmation pursuant to the procedures established in the order approving the Disclosure Statement.  Any objection that raises a Cure Dispute must identify the disputed executory contract and set forth with particularity the basis of the Cure Dispute.  To the extent a Cure Dispute relates solely to the Cure Amount, the applicable Debtor may assume the applicable contract or lease prior to the resolution of the Cure Dispute provided that such Debtor reserves Cash in an amount sufficient to pay the full amount asserted as cure payment by the non-Debtor party to such contract or lease (or such smaller amount as may be fixed or estimated by the Bankruptcy Court).  Any party that fails to object shall be forever barred, estopped and enjoined from raising a Cure Dispute in the Bankruptcy Court, in any other court, in any arbitration or otherwise.

6.1.5   The Confirmation Order shall constitute an Order of the Court under sections 365 and 1123(b) of the Bankruptcy Code approving the assumptions described above, as of the Plan Effective Date.  Each contract and lease assumed pursuant to the Plan shall be assumed only to the extent that any such contract or lease constitutes an executory contract or unexpired lease.  Assumption of a contract or lease pursuant to the Plan shall not constitute an admission by the Debtors, the Reorganized Debtors or the Plan Proponents (as applicable) that such contract or lease is an executory contract or unexpired lease or that the Debtors or the Reorganized Debtors (as applicable) have any liability thereunder.  All executory contracts and unexpired leases that are assumed will be assumed under their present terms or upon such terms as are agreed to in writing between the applicable Debtor and the counterparty to such contract or lease.

6.2 **Rejection**.

     6.2.1    Effective immediately prior to the Plan Effective Date, each executory contract or unexpired lease of the Debtors listed on the Schedule of Rejected Contracts is rejected, to the extent, if any, each constitutes an executory contract or unexpired lease, and without conceding that each constitutes an executory contract or unexpired lease or that the Debtors have any liability under each. Listing a contract or lease on the Schedule of Rejected Contracts is not deemed an admission by the Debtors or the Reorganized Debtors that such contract is an executory contract or unexpired lease or that the Debtors or the Reorganized Debtors have any liability thereunder. The Debtors reserve the right at any time before Confirmation to amend the Schedule of Rejected Contracts, including to (a) delete any executory contract or unexpired lease listed on such Schedule and provide for its assumption or (b) add any executory contract or unexpired lease to such Schedule, thus providing for its rejection. The Debtors shall provide notice of any amendment of such Schedule to the party to the affected executory contract or unexpired lease and the U.S. Trustee.

     6.2.2    The Confirmation Order shall constitute an Order of the Bankruptcy Court under sections 365 and 1123(b) of the Bankruptcy Code approving all such rejections as described above, as of the Plan Effective Date. If the rejection by the Debtors, pursuant to the Plan or otherwise, of an executory contract or unexpired lease results in a Claim that is not theretofore evidenced by a timely filed proof of claim or a proof of claim that is deemed to be timely filed under applicable law, then such Claim shall be forever barred and shall not be enforceable against the Debtors or Reorganized Debtors, or the properties of the Debtors or Reorganized Debtors, unless a proof of claim for damages arising from the rejection under the Plan of an executory contract or unexpired lease is Filed within thirty (30) days after the mailing of notice of Confirmation or such claim shall be forever barred and unenforceable against the Debtors, the Reorganized Debtors and their properties and barred from receiving any distribution under the Plan. Any such Claims that become Allowed Claims shall be classified in Class T4 or C4 of the Plan, as applicable.

     6.3    **Indemnification of Directors, Officers and Employees**. For purposes of the Plan, the obligation of a Debtor to exculpate, indemnify and advance any expenses to any Person serving at any time before, on or after the Petition Date as one of its current, former and future directors or officers (each, an "Indemnitee") by reason of such Person's service in such capacity, for acts or omissions occurring at or prior to the consummation of the Plan, whether asserted or claimed prior to, at or after the consummation of the Plan, to the extent provided in such Debtor's Corporate Documents, a written agreement with the Debtor, in accordance with any applicable law, or any combination of the foregoing or otherwise, shall: (a) survive confirmation of the Plan and the Plan Effective Date and continue in full force and effect (and not be modified, amended or terminated in any manner adverse to any Indemnitee without the written consent of the affected Indemnitee); (b) become an obligation of the applicable Reorganized Debtor; and (c) not be discharged in accordance with section 1141 of the Bankruptcy Code, irrespective of whether indemnification or reimbursement is owed in connection with an event occurring before, on, or after the Petition Date.

     6.4    **D&O Liability and Insurance Policies**. Notwithstanding anything herein to the contrary, as of the Plan Effective Date, the Debtors shall assume (and assign to any of the

Reorganized Debtors as necessary to continue the D&O Liability Insurance Policies in full force) all of the D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained herein, Confirmation of the Plan shall not discharge, impair, or otherwise modify any obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such obligation shall be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be Filed.

     6.5    **Compensation and Benefits Plans**.

         6.5.1   Except and to the extent previously assumed by an order of the Bankruptcy Court, on or before the Confirmation Date, all employee compensation and Benefit Plans, including Benefit Plans and programs subject to sections 1114 and 1129(a)(13) of the Bankruptcy Code, entered into before or after the Petition Date and not since terminated, shall be deemed to be, and shall be treated as if they were, executory contracts that are to be assumed hereunder. The Debtors' obligations under such plans and programs shall survive confirmation of the Plan, except for (1) executory contracts or Benefit Plans specifically rejected pursuant to the Plan (to the extent such rejection does not violate sections 1114 and 1129(a)(13) of the Bankruptcy Code) and (2) such executory contracts or Benefit Plans as have previously been rejected, are the subject of a motion to reject as of the Confirmation Date or have been specifically waived by the beneficiaries of any of such Benefit Plans or executory contracts.

         6.5.2   Neither of the Debtors is a sponsor of a defined benefit pension plan under ERISA. However, the Retirement Plan Sponsor, a Non-Debtor Subsidiary, is the sponsor of the Retirement Plan that has been frozen since 1993. As of the most recent FAS valuation of the Retirement Plan for the fiscal year ended December 31, 2009, the Retirement Plan was adequately funded, with funding in excess of the aggregate pension benefit obligations under the Retirement Plan. After the Plan Effective Date, the respective obligations, if any, of the Reorganized Debtors and the Retirement Plan Sponsor will be reinstated under the Plan.

**SECTION 7.**
**PROVISIONS GOVERNING DISTRIBUTIONS**

     7.1    **Timing and Calculation of Amounts to Be Distributed**. Except as otherwise provided in the Plan, on the Plan Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Plan Effective Date, on the date that such a Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtors as of the Distribution Record Date shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class and in the manner provided herein. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Section 7.4 hereof. Except as otherwise provided herein, Holders of