# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------x

In re:

TUBO DE PASTEJÉ, S.A. DE C.V., et al.,[1]

                  Debtors.

-------------------------------------------------------------x

Chapter 11

Case No. 09-14353 (KJC)

Jointly Administered

Re: Docket No. 360

## FINDINGS OF FACT AND CONCLUSIONS OF LAW RELATED TO, AND ORDER CONFIRMING, THE JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OF TUBO DE PASTEJÉ, S.A. DE C.V. AND CAMBRIDGE-LEE HOLDINGS, INC., AS DEBTORS AND DEBTORS-IN-POSSESSION, AND INDUSTRIAS UNIDAS, S.A. DE C.V. AND THE SUBSIDIARY GUARANTORS AS CO-PROPONENTS

**WHEREAS,** on December 8, 2009 (the "Petition Date"), Tubo de Pastejé, S.A. de C.V. ("Tubo") and Cambridge-Lee Holdings, Inc. ("CLH," together with Tubo, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (11 U.S.C. §§ 101-1532, as amended, the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Court"), thereby commencing these cases (the "Chapter 11 Cases");

**WHEREAS,** during the pendency of the Chapter 11 Cases: (a) the Debtors have operated their business and managed their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code; and (b) no committee, trustee or examiner was appointed;

**WHEREAS,** Industrias Unidas, S.A. de C.V. ("IUSA") and IUSA, S.A. de C.V., Industrias Unidas de Pastejé, S.A. de C.V., Gas Padilla, S.A. de C.V., IUSA Comercializadora, S.A. de C.V., Forgamex, S.A. de C.V., Centro Comercial y Cultural Pastejé, S.A. de C.V., and Convivencia y Educación Infantil Pastejé, S.A. de C.V. (collectively, the "Subsidiary Guarantors," and together with the Debtors and IUSA, the "Plan Proponents"), certain holders of

---

[1] The Debtors, along with the last four digits of their respective federal tax identification numbers, are as follows: Tubo de Pastejé, S.A. de C.V. (2870) ("Tubo") and Cambridge-Lee Holdings, Inc. (2123) ("CLH"). The mailing address for Tubo is Km. 109 Carretera Panamericana, México-Querétaro, Jocotitlán, Estado de México, 50700 and the mailing address for CLH is 86 Tube Drive, Reading, PA 19605.

11.50% senior notes due 2016 issued by IUSA and certain other holders of Eligible Debt[2] (together, the "Consenting Creditors") entered into that certain Restructuring Agreement, dated as of July 12, 2011, (the "Restructuring Agreement"), which Restructuring Agreement provides for the restructuring of certain obligations of IUSA and its direct and indirect subsidiaries.

WHEREAS, on July 19, 2011, the Plan Proponents filed the: (a) *Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of Tubo de Pasteje, S.A. de C.V. and Cambridge-Lee Holdings, Inc., as Debtors and Debtors-In-Possession, and Industrias Unidas, S.A. de C.V. and the Subsidiary Guarantors as Co-Proponents*, [Docket No. 360] (as amended, supplemented and/or modified through the date hereof, the "Plan"); and (b) the *Third Amended Disclosure Statement Relating to Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of Tubo de Pasteje, S.A. de C.V. and Cambridge-Lee Holdings, Inc., as Debtors and Debtors-In-Possession, and Industrias Unidas, S.A. de C.V. and the Subsidiary Guarantors as Co-Proponents* [Docket No. 361] (the "Disclosure Statement"); and

WHEREAS, the Disclosure Statement contemplates, and the Plan is predicated upon, the simultaneous implementation of a series of transactions (the "Restructuring Transactions") pursuant to the terms of the Restructuring Agreement, which together are designed to maximize recoveries to all creditors of the IUSA Group and enhance the financial stability of the Reorganized Debtors and the IUSA Group, as a whole;

WHEREAS, the Restructuring Transactions contemplate: (a) the cancellation of (i) the Old 2016 Notes and the ESBDS I Loan, and (ii) the Series B Eligible Debt; and (b) the issuance of: (i) new debt securities (the "New Series A Notes"), which New Series A Notes shall be guaranteed by Tubo and secured by the capital stock of CLH (along with other guarantees and collateral from members of the IUSA Group), to the holders of the Old 2016 Notes and the ESBDS I Loan; and (ii) new debt securities (the "New Series B Notes" and together with the New Series A Notes, the "New Notes"), which New Series B Notes shall be on substantially the same terms as the New Series A Notes, but shall not be secured by any assets of the Reorganized Debtors, to holders of the Copper Debt and holders of the Commercial Paper (each, as defined below) who elect to accept such New Series B Notes in exchange for their Series B Eligible Debt;

WHEREAS, on July 18, 2011, the Court entered the *Order (i) Approving the Disclosure Statement; (ii) Approving Solicitation Procedures; and (iii) Scheduling Hearing and Establishing Notice and Objection Procedures With Respect to Confirmation of Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of Tubo de Pasteje, S.A. de C.V. and Cambridge-Lee Holdings, Inc., as Debtors and Debtors-In-Possession, and Industrias Unidas, S.A. de C.V. and the Subsidiary Guarantors as Co-Proponents* [Docket No. 358] (the "Disclosure Statement Order");

WHEREAS, on August 15, 2011, the Debtors' filed on behalf of Epiq Bankruptcy Solutions, LLC (the "Notice and Balloting Agent"), the Affidavit of Service dated July 28, 2011 [Docket No. 384] (the "Solicitation Affidavit") of James F. Daloia, an employee of

---

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan or the Disclosure Statement, as the case may be.

2

the Notice and Balloting Agent, stating that, in compliance with the Disclosure Statement Order: (a) the Disclosure Statement (which includes as an exhibit a copy of the Plan), together with the additional solicitation materials approved by the Court (the "Solicitation Package"), were transmitted to each Holder of a Claim entitled to vote to accept or reject the Plan; and (b) certain non-voting materials approved by the Court in the Disclosure Statement Order (the "Notices of Non-Voting Status") were provided to Holders of Claims and Equity Interests that were not entitled to vote to accept or reject the Plan;

WHEREAS, on August 12, 2011, the Plan Proponents filed the Plan Supplement [Docket No. 381] (the "Plan Supplement");

WHEREAS, on August 23, 2011, the Plan Proponents filed, on behalf of the Notice and Balloting Agent, the Declaration of Jane Sullivan [Docket No. 389], describing the methodology for the tabulation and results of voting with respect to the Plan (the "Epiq Tabulation Affidavit");

WHEREAS, on August 23, 2011, the Plan Proponents filed the declaration of Michael S. Correra, managing director at Conway Mackenzie, financial advisor to certain of the Debtors' operating subsidiaries, in support of the Plan's satisfaction of the "best interests test" [Docket No. 390] (the "Correra Declaration");

WHEREAS, on August 23, 2011, the Plan Proponents filed the *Declaration of Rafael Davila Olvera in Support of Confirmation of Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of Tubo de Pastejé, S.A. de C.V. and Cambridge-Lee Holdings, Inc., as Debtors and Debtors-In-Possession, and Industrias Unidas, S.A. de C.V. and the Subsidiary Guarantors as Co-Proponents* [Docket No. 391] (the "Davila Declaration"), setting forth certain matters in connection with confirmation of the Plan;

WHEREAS, on August 23, 2011, the Plan Proponents filed the *Memorandum of Law in Support of Confirmation of Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of Tubo de Pastejé, S.A. de C.V. and Cambridge-Lee Holdings, Inc., as Debtors and Debtors-In-Possession, and Industrias Unidas, S.A. de C.V. and the Subsidiary Guarantors as Co-Proponents* [Docket No. 392] (the "Confirmation Brief"); and

WHEREAS, pursuant to section 1128(a) of the Bankruptcy Code, the Court held a hearing beginning on August 25, 2011 (the "Confirmation Hearing") to consider confirmation of the Plan ;

NOW, THEREFORE, based upon the Court's review of the affidavits and reports previously filed with the Court, including the Solicitation Affidavit, the Epiq Tabulation Affidavit, the Correra Declaration, the Davila Declaration, and upon all of the evidence proffered or adduced at the Confirmation Hearing, memoranda and objections filed in connection with the Plan, and arguments of counsel made at the Confirmation Hearing; and after due deliberation and sufficient cause appearing therefor; and upon the entire record of the Chapter 11 Cases;

3

**IT IS HEREBY FOUND, DETERMINED, ORDERED, ADJUDGED AND DECREED, AS FOLLOWS:[3]**

A.    <u>Jurisdiction and Venue</u>. The Court has jurisdiction over the Debtors' Chapter 11 Cases and confirmation of the Plan pursuant to 28 U.S.C. § 1334. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (L), and (O) and the Court has jurisdiction to enter a final order with respect thereto. Each of the Debtors is an eligible debtor under section 109 of the Bankruptcy Code. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    <u>Judicial Notice</u>. The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the various hearings held before the Court during the pendency of the Chapter 11 Cases.

C.    <u>Burden of Proof</u>. The Plan Proponents have met the burden of proving the elements of section 1129 of the Bankruptcy Code by a preponderance of the evidence, which is the applicable standard.

D.    <u>Solicitation and Notice</u>. On July 18, 2011, the Court entered the Disclosure Statement Order, which, among other things: (i) approved the Disclosure Statement, finding that it contained "adequate information" within the meaning of section 1125 of the Bankruptcy Code and complied with Bankruptcy Rule 3017; and (ii) established procedures for the Plan Proponents' solicitation of votes on the Plan. The Solicitation Packages and Notices of Non-Voting Status were served in compliance with the Disclosure Statement Order, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and the Local Rules of Bankruptcy Practice and Procedures of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), and such transmittal and service was adequate and sufficient. Adequate and sufficient notice of the Confirmation Hearing and other requirements, deadlines, hearings and matters described in the Disclosure Statement Order were timely provided in compliance with the Disclosure Statement Order, Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and provided due process and an opportunity to appear and to be heard to all parties in interest, and no further notice was required. The solicitation of votes was made in good faith and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other rules, laws, and regulations.

E.    <u>Voting</u>. Votes on the Plan were solicited after disclosure of "adequate information," as defined in section 1125 of the Bankruptcy Code. As evidenced by the Epiq Tabulation Affidavit, votes to accept the Plan have been solicited and tabulated fairly, in good

---

[3]    The findings and conclusions set forth herein and the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

4

faith and in a manner consistent with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

F. **Plan Supplement.** In accordance with the Plan, the Plan Proponents filed the Plan Supplement, which includes the following documents: (a) the New Indentures; (b) the New Pledge Agreement; (c) the Joint Collateral Documents (as defined in the New Indentures) (d) the Schedule of Assumed Contracts; (e) the Schedule of Rejected Contracts; (f) the Schedule of Retained Causes of Action; (g) the Schedule of Intercompany Claims; (h) the New Corporate Documents; and (i) a list of the officers and directors of the Reorganized Debtors, each of which may be amended prior to the Plan Effective Date pursuant to the terms and conditions of the Restructuring Agreement. The documents and materials in the Plan Supplement comply with the terms of the Plan and were served in accordance with Bankruptcy Rules 2002 and 9014.

## COMPLIANCE WITH SECTION 1129 OF THE BANKRUPTCY CODE

G. **Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).** The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(i) **Date and Identification of Plan Proponents (Bankruptcy Rule 3016(a)).** As required by Bankruptcy Rule 3016(a), the Plan is dated and specifically identifies the Plan Proponents as the proponents of the Plan. IUSA and the Subsidiary Guarantors are affiliates (as defined in section 101(2) of the Bankruptcy Code) of the Debtors.

(ii) **Proper Classification (11 U.S.C. §§ 1122(a)).** As required by section 1122(a) of the Bankruptcy Code, Section 4 of the Plan adequately and properly identifies and classifies all Claims against and Equity Interests in the Debtors. The Plan's classification scheme is proper and satisfies section 1122 of the Bankruptcy Code because such scheme recognizes the differing legal and equitable rights of the Holders of Claims against and Equity Interests in the Debtors. Moreover, the Plan's classification scheme does not separately classify substantially similar claims in order to secure the vote of an Impaired, accepting Class of Claims. Each of the Claims or Equity Interests in each particular Class is substantially similar to the other Claims or Equity Interests in such Class. Accordingly, the classification of Claims and Equity Interests in the Plan complies with section 1122 of the Bankruptcy Code

(iii) **Proper Designation (11 U.S.C. § 1123(a)(1)).** As required by section 1123(a)(1) of the Bankruptcy Code, Section 4 of the Plan adequately and properly identifies and classifies all Claims against and Equity Interests in the Debtors. The Plan designates ten (10) Classes of Claims and Equity Interests, based upon differences in the legal nature and/or priority of such Claims and Equity Interests. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative

NY3 3091578.16

Claims, Professional Fee Claims, Intercompany Claims and Intercompany Equity Interests, and Priority Tax Claims are not classified. Accordingly, the Plan complies with the requirements of section 1123(a)(1) of the Bankruptcy Code.

(iv) <u>Specified Treatment of Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>. Section 4 of the Plan specifies that Classes T1 (Other Priority Claims against Tubo), T2 (Other Secured Claims against Tubo), T4 (General Unsecured Claims against Tubo), T5 (Equity Interests in Tubo), C1 (Other Priority Claims against CLH), C2 (Other Secured Claims against CLH), C4 (General Unsecured Claims against CLH), and C5 (Equity Interests in CLH) are Unimpaired under the Plan. The Plan, therefore, complies with the requirements of section 1123(a)(2) of the Bankruptcy Code.

(v) <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>. Section 4 of the Plan designates Classes T3 (Noteholder Pledge Claims) and C3 (Unsecured Parent Guaranty Claims) as Impaired and specifies the treatment of the Claims in such Classes. The Plan, therefore, complies with the requirements of section 1123(a)(3) of the Bankruptcy Code.

(vi) <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>. The Plan provides for the same treatment for each Claim or Equity Interest in each respective Class unless the holder of a particular Claim or Equity Interest has agreed to less favorable treatment on account of such Claim or Equity Interest. The Plan, therefore, complies with the requirements of section 1123(a)(4) of the Bankruptcy Code.

(vii) <u>Implementation of Plan (11 U.S.C. § 1123(a)(5))</u>. As required by section 1123(a)(5) of the Bankruptcy Code, the Plan and the documents and agreements included in the Plan Supplement provide for adequate means for implementation of the Plan. Specifically, Section 8 of the Plan provides for, except as otherwise expressly provided in the Plan, among other things:

- the continued existence of the Reorganized Debtors after the Plan Effective Date as separate corporate entities and the amendment of the Corporate Documents, as necessary;

- the revesting of assets in the applicable Reorganized Debtor on the Plan Effective Date;

- the vesting of all rights, privileges, entitlements, authorizations, grants, permits, licenses, easements, franchises, and other similar items that constitutes part of, or are necessary or useful in the operation of the property of the Debtors or the

6

Reorganized Debtors, in the applicable Reorganized Debtor on the Plan Effective Date;

- the revesting in the applicable Reorganized Debtor on the Plan Effective Date of any and all Causes of Action accruing to any Debtor or its Estate against any Person;

- the waiving of the Reorganized Debtors' rights to institute or prosecute any Avoidance Actions;

- the cancellation of the Existing Indenture, the Existing Pledge Agreement, and any and all notes, instruments or other documents evidencing the Old 2016 Notes, Noteholder Pledge Claims, the Unsecured Parent Guaranty Claims and the ESBDS I Loan;

- the effectuation of the Restructuring Transactions, including:

    a. the entry into the New Indentures by IUSA and the Subsidiary Guarantors;

    b. the issuance by IUSA of the New Series A Notes to (1) Holders of Old 2016 Notes (Allowed Noteholder Pledge Claims); and (2) Holders of the ESBDS I Loan (Allowed Unsecured Parent Guaranty Claims), in each instance in full and final satisfaction and discharge of all such obligations of any member of the IUSA Group with respect to such obligations;

    c. the issuance by IUSA of the New Series B Notes to holders of Series B Eligible Debt that have elected to participate in the Consensual Exchange, in each instance in full and final satisfaction and discharge of all such Series B Eligible Debt owed by any member of the IUSA Group with respect to such Series B Eligible Debt;

    d. the execution and delivery of the New Indentures by IUSA, and each of the guarantors thereunder; and

    e. the execution and delivery of the New Pledge Agreement by Tubo.

- the continued service of the current Board of Directors of each Reorganized Debtor, which shall have the responsibility for the management, control, and operation of each respective Reorganized Debtor on and after the Plan Effective Date; and

7

(viii)    Nonvoting Equity Securities (11 U.S.C. §1123(a)(6)). Section 8.1 of the Plan provides that the Reorganized Debtors' Corporate Documents shall be amended to comply with section 1123(a)(6) of the Bankruptcy Code. Accordingly, the Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

(ix)    Selection of Officers and Directors (11 U.S.C. §1123(a)(7)). Section 8.9.1 of the Plan provides that, on the Plan Effective Date, the management, control, and operation of each Reorganized Debtor shall become the general responsibility of its respective board of directors in accordance with applicable non-bankruptcy law. Section 8.9.2 of the Plan provides that, as part of the Plan Supplement, the Debtors shall disclose (a) the identity and affiliation of any individual who is proposed to serve as an officer or director of any Reorganized Debtor; (b) the identity of any other insider who will be employed or retained by any Reorganized Debtor; and (c) the compensation for each such individual. Accordingly, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

(x)    No Personal Services Performed (11 U.S.C. §1123(a)(8)). The Debtors are not individuals and, accordingly, section 1123(a)(8) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

(xi)    Additional Plan Provisions (11 U.S.C. § 1123(b)). The other provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b) of the Bankruptcy Code.

(xii)    Impairment/Unimpairment of Classes of Claims and Equity Interests (11 U.S.C. § 1123(b)(1)). In accordance with section 1123(b)(1) of the Bankruptcy Code, Section 4 of the Plan provides that (a) Classes T1 (Other Priority Claims against Tubo), T2 (Other Secured Claims against Tubo), T4 (General Unsecured Claims against Tubo), T5 (Equity Interests in Tubo), C1 (Other Priority Claims against CLH), C2 (Other Secured Claims against CLH), C4 (General Unsecured Claims against CLH), and C5 (Equity Interests in CLH) are Unimpaired; and (b) Classes T3 (Noteholder Pledge Claims) and C3 (Unsecured Parent Guaranty Claims) are Impaired. Accordingly, the Plan is consistent with section 1123(b)(1) of the Bankruptcy Code.

(xiii)    Assumption and Rejection of Executory Contracts (11 U.S.C. § 1123(b)(2)). In accordance with section 1123(b)(2) of the Bankruptcy Code, Section 6.1 of the Plan provides that, except as otherwise provided in the Plan or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, each Executory Contract of the Debtors that has not expired by its own terms before the Plan Effective Date that either: (1) is listed on

8

the Schedule of Assumed Contracts; (2) is not rejected prior to the Plan Effective Date; (3) is not the subject of a motion to reject Filed on or before the Confirmation Date upon which the Court has not entered an Order; (4) is not listed on the Schedule of Rejected Contracts; or (5) has not been otherwise modified or superseded by agreement of the parties thereto, shall be deemed to have been assumed by the applicable Debtor as of the Plan Effective Date pursuant to section 365 of the Bankruptcy Code. Additionally, Section 6.2 of the Plan provides that each Executory Contract of the Debtors listed on the Schedule of Rejected Contracts is rejected, to the extent, if any, each constitutes an executory contract or unexpired lease, and without conceding that each constitutes an executory contract or unexpired lease or that the Debtors have any liability under each. Accordingly, the Plan is consistent with section 1123(b)(2) of the Bankruptcy Code.

(xiv)   Settlement or Retention of Claims or Equity Interests (11 U.S.C. § 1123(b)(3)). In accordance with section 1123(b)(3)(A) of the Bankruptcy Code, Section 8.4.2 of the Plan provides that, due to the Plan's Unimpaired and/or agreed treatment of Claims, the Debtors and the Reorganized Debtors waive their rights to institute or prosecute any Avoidance Actions. In accordance with section 1123(b)(3)(B) of the Bankruptcy Code, Section 3.4 of the Plan provides that Intercompany Claims and Intercompany Equity Interests shall be Unimpaired and shall remain in full force and effect after the Plan Effective Date, provided that such Intercompany Claims are subject to the requirements of and restrictions (including, without limitation, the relative ranking and priority of such Intercompany Claims contained in the New Indentures. In addition, Section 8.4 of the Plan provides that:

> Except to the extent any Causes of Action are expressly and specifically waived, released or abandoned under the Plan or the Confirmation Order, or pursuant to any contract, instrument, release, or other agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code: (1) any and all Causes of Action accruing to any Debtor or its Estate against any Person shall remain assets of and vest in the applicable Reorganized Debtor, whether or not litigation relating thereto is pending on the Plan Effective Date, and whether or not such Causes of Action have been listed or referred to in the Plan, the Disclosure Statement, the Schedule of Retained Causes of Action, or any other document Filed with the Court; and (2) neither any Debtor nor any Reorganized Debtor waives, relinquishes, or abandons (nor shall they be estopped or otherwise precluded from asserting) any Causes of Action: (a) whether or not such Causes of Action have been listed or referred to in the Plan, the Disclosure Statement, the Schedule of Retained Causes of Action, or any other document Filed with the Court; (b) whether or not such Causes of

9

Action are currently known to the Debtors; and (c) whether or not a defendant in any litigation relating to such Causes of Action Filed a Proof of Claim, a notice of appearance, or any other pleading or notice in the Chapter 11 Cases, voted for or against the Plan, or received or retained any consideration under the Plan. Without in any manner limiting the generality of the foregoing, notwithstanding any otherwise applicable principle of law or equity, including, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, or refer to any Causes of Action in the Plan, the Schedule of Retained Causes of Action or any other document Filed with the Court shall in no manner waive, eliminate, modify, release, or alter the Reorganized Debtors' right to commence, prosecute, defend against, settle, and realize upon any Causes of Action, that any Debtor or any Reorganized Debtor has, or may have, as of the Confirmation Date.

Accordingly, the Plan is consistent with section 1123(b)(3) of the Bankruptcy Code.

(xv) <u>Modification of Creditor Rights (11 U.S.C. § 1123(b)(5))</u>. The Plan modifies the rights of Holders of Claims in Classes T3 (Noteholder Pledge Claims) and C3 (Unsecured Parent Guaranty Claims). The Plan leaves unaffected the rights of Holders of Claims in Classes T1 (Other Priority Claims against Tubo), T2 (Other Secured Claims against Tubo), T4 (General Unsecured Claims against Tubo), C1 (Other Priority Claims against CLH), C2 (Other Secured Claims against CLH), and C4 (General Unsecured Claims against CLH). Accordingly, the Plan is consistent with section 1123(b)(5) of the Bankruptcy Code.

(xvi) <u>Other Appropriate Provisions (11 U.S.C. § 1123(b)(6))</u>. Section 1123(b)(6) of the Bankruptcy Code is a catchall provision that permits inclusion of any appropriate provision as long as it is not inconsistent with applicable provisions of the Bankruptcy Code. In accordance therewith, the Plan provides for, among other things: (a) certain releases, injunctions, and exculpations; (b) an exemption pursuant to section 1145 of the Bankruptcy Code for the offering, issuance, and distribution of the New Notes contemplated by the Restructuring Agreement, the Plan, and all agreements incorporated therein; and (c) an exemption from the obligations referenced in section 1146 of the Bankruptcy Code for any transfers from any Debtor to the applicable Reorganized Debtor or any other Person pursuant to the Plan.

(xvii) <u>Cure of Defaults (11 U.S.C. § 1123(d))</u>. The Plan provides for the satisfaction of default claims associated with each Executory Contract

10

to be assumed, if any, pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code. All cure amounts will be determined in accordance with the underlying agreements and applicable bankruptcy and non-bankruptcy laws. Accordingly, the Plan complies with section 1123(d) of the Bankruptcy Code.

H.    <u>Plan Proponents' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>. The Plan Proponents have complied with the applicable provisions of the Bankruptcy Code, including the provisions of sections 1125 and 1126 of the Bankruptcy Code regarding disclosure and plan solicitation. Specifically:

(i)    Each of the Debtors is a proper debtor under section 109 of the Bankruptcy Code;

(ii)    The Plan Proponents have complied with all applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court;

(iii)    The Plan Proponents solicited acceptances or rejections of the Plan from Class T3 (Noteholder Pledge Claims) and Class C3 (Unsecured Parent Guaranty Claims), and such Holders have voted to accept the Plan. The Plan reflects that Classes T1 (Other Priority Claims against Tubo), T2 (Other Secured Claims against Tubo), T4 (General Unsecured Claims against Tubo), T5 (Equity Interests in Tubo), C1 (Other Priority Claims against CLH), C2 (Other Secured Claims against CLH), C4 (General Unsecured Claims against CLH), and C5 (Equity Interests in CLH) are Unimpaired and, thus, are conclusively presumed to have accepted the Plan; and

(iv)    The Plan Proponents have complied with the applicable provisions of the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules in transmitting the Solicitation Package and in tabulating the votes with respect to the Plan, thereby complying with section 1125 with respect to the Disclosure Statement and the Plan.

I.    <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>. The Plan Proponents have met their good faith obligation under the Bankruptcy Code. The Plan Proponents have proposed the Plan with the legitimate and honest purpose of maintaining the Debtors' business as a going concern and maximizing the distribution to creditors. The Plan is the product of arm's length negotiations among the Debtors, the IUSA Group, and their major creditor constituencies to formulate a plan that (i) provides for a restructuring of certain of the outstanding obligations of the Debtors and (ii) reinstates and leaves unaltered all other Claims and Equity Interests in the Debtors. Creditor support for the Plan was, among those voting, unanimous. The proposal of such a widely accepted chapter 11 plan is the very essence of good faith. The Plan, therefore, complies with section 1129(a)(3) of the Bankruptcy Code.

11

J.     <u>Payment for Services or Cost and Expenses (11 U.S.C. § 1129(a)(4))</u>. The Court has already authorized and approved procedures for the interim payment of certain fees and expenses of professionals retained in this cases under section 331 of the Bankruptcy Code pursuant to the Court's order dated April 5, 2010 [Docket No. 85]. Pursuant to Section 3.2 of the Plan, all Professional Fee Claims incurred on or prior to the Confirmation Date are subject to final allowance or disallowance upon application to the Court, and payment thereon shall be made only in such amounts as are Allowed by the Court. Additionally, Section 11.3 of the Plan expressly provides for the retention of the Court's jurisdiction to "[r]ule on any and all Professional Fee Claims under sections 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Code; <u>provided</u>, <u>however</u>, that from and after the Plan Effective Date, the payment of fees and expenses of any retained Professional Persons of the Reorganized Debtors shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court." Moreover, pursuant to sections 503(b)(3) and (4) of the Bankruptcy Code, the Court must review any application for substantial contribution to ensure compliance with the statutory requirements and that the fees requested are reasonable. Based upon the foregoing, the Plan complies with the requirements of section 1129(a)(4) of the Bankruptcy Code.

K.     <u>Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5))</u>. The Plan Proponents have complied with Section 1129(a)(5) of the Bankruptcy Code. Specifically, the Plan Proponents have filed a schedule disclosing: (i) the identity and affiliation of any individual who is proposed to serve as an officer or director of any Reorganized Debtor; (ii) the identity of any other insider who will be employed or retained by any Reorganized Debtor; and (iii) compensation to the extent paid by the Reorganized Debtors for each such individual.

L.     <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>. No rates are being changed that require approval of a governmental regulatory commission, and accordingly, section 1129(a)(6) is inapplicable to the Plan.

M.     <u>Best Interest Test of Creditors (11 U.S.C. § 1129(a)(7))</u>. The Plan complies with section 1129(a)(7) of the Bankruptcy Code. Specifically:

    (i)     Classes T1 (Other Priority Claims against Tubo), T2 (Other Secured Claims against Tubo), T4 (General Unsecured Claims against Tubo), T5 (Equity Interests in Tubo), C1 (Other Priority Claims against CLH), C2 (Other Secured Claims against CLH), C4 (General Unsecured Claims against CLH) and C5 (Equity Interests in CLH) are Unimpaired and deemed to accept the Plan. The best interest test, therefore, is inapplicable to these Classes.

    (ii)     With respect to Classes T3 (Noteholder Pledge Claims) and C3 (Unsecured Parent Guaranty Claims), all of the Holders in such Classes that timely submitted a ballot voted to accept the Plan, and the Plan Proponents have received no objections from any Holder of a Class T3 Claim or Class C3 Claim asserting that the Plan violates the best interest test. Furthermore, each Holder of an Impaired Claim against, or Equity Interest in, the Debtors will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a

value, as of the Plan Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. Accordingly, the Plan satisfies the best interest test and satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

N.  Acceptance By or Unimpairment of Each Class (11 U.S.C. § 1129(a)(8)). Classes T1 (Other Priority Claims against Tubo), T2 (Other Secured Claims against Tubo), T4 (General Unsecured Claims against Tubo), T5 (Equity Interests in Tubo), C1 (Other Priority Claims against CLH), C2 (Other Secured Claims against CLH), C4 (General Unsecured Claims against CLH), and C5 (Equity Interests in CLH) are Classes of Unimpaired Claims and Equity Interests each of which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code. Classes T3 (Noteholder Pledge Claims) and C3 (Unsecured Parent Guaranty Claims) are Impaired Classes of Claims against the Debtors entitled to vote on the Plan and each such Class has voted to accept the Plan in accordance with section 1126(b) and (c) of the Bankruptcy Code. Accordingly, the Plan satisfies the requirements of Section 1129(a)(8).

O.  Treatment of Administrative Claims, Priority Tax Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9)). The treatment of Administrative Claims, Priority Tax Claims and Other Priority Claims pursuant to Sections 3 and 4 of the Plan satisfies the requirements of sections 1129(a)(9)(A), (B), and (C) of the Bankruptcy Code.

P.  Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10)). As indicated by the Epiq Tabulation Affidavit, Classes T3 (Noteholder Pledge Claims) and C3 (Unsecured Parent Guaranty Claims), each of which is Impaired under the Plan and entitled to vote, voted to accept the Plan by the requisite majorities, determined without including any acceptance of the Plan by any insider, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

Q.  Feasibility (11 U.S.C. § 1129(a)(11)). The information in the Disclosure Statement, the Davila Declaration, and the evidence proffered, adduced, and/or presented at the Confirmation Hearing: (i) is persuasive and credible; (ii) has not been controverted by other evidence; and (iii) establishes that, based on the Restructuring Agreement, the Plan is feasible and that there is a reasonable prospect of the Reorganized Debtors being able to meet their financial obligations under the Plan and in the ordinary course of business, and that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtors. Accordingly, the Plan is feasible in accordance with section 1129(a)(11) of the Bankruptcy Code.

R.  Payment of Fees (11 U.S.C. § 1129(a)(12)). In accordance with sections 507 and 1129(a)(12) of the Bankruptcy Code, Section 12.3 of the Plan provides that all fees payable pursuant to section 1930 of title 28 of the United States Code shall be paid on or before the Plan Effective Date, and that all such fees that arise after the Plan Effective Date, but prior to the closing of the Chapter 11 Cases shall be paid by the Reorganized Debtors. Thus, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

13

S.     Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).  Section 6.5.1 of the Plan provides that all employee compensation and Benefit Plans, including Benefit Plans and programs subject to sections 1114 and 1129(a)(13) of the Bankruptcy Code, if any, entered into before or after the Petition Date and not since terminated, shall be deemed to be, and shall be treated as if they were, executory contracts that are to be assumed under the Plan.  Thus, the Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

T.     Debtors Are Not Required to Pay Domestic Support Obligations (11 U.S.C. § 1129(a)(14)).  The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation.  Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

U.     Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15)).  The Debtors are not individuals.  Accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

V.     Debtors Are Not Nonprofit Corporations (11 U.S.C. § 1129(a)(16)).  Section 1129(a)(16) of the Bankruptcy Code requires all transfers of property of a plan to be made in accordance with any applicable provisions of non-bankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.  Neither of the Debtors is a nonprofit corporation and, therefore, section 1129(a)(16) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

W.     Only One Plan (11 U.S.C. § 1129(c)).  The Plan is the only plan filed in these cases, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

X.     Principal Purpose of Plan (11 U.S.C. § 1129(d)).  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, and no governmental unit has requested that the Court not confirm the Plan for this reason.  Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

Y.     Good-Faith Solicitation (11 U.S.C. § 1125(e)).

(i)     The Plan Proponents and the Consenting Creditors, and each of their respective agents, accountants, business consultants, representatives, attorneys and advisors, through their participation in the negotiation and preparation of the Plan and the Disclosure Statement and their efforts to confirm the Plan, have solicited acceptances and rejections of the Plan in good faith and participated in the Chapter 11 Cases in compliance with the applicable provisions of the Bankruptcy Code.

(ii)    The Plan Proponents (and each of their respective affiliates, agents, directors, officers, employees, investment bankers, financial advisors, attorneys and other professionals) have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code

14

in the offer and issuance of the securities under the Plan, and therefore are not, and on account of such offer, issuance, and solicitation will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of securities under the Plan.

Z. <u>Satisfaction of Confirmation Requirements</u>. Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

## ADDITIONAL FINDINGS REGARDING THE CHAPTER 11 CASES AND THE PLAN

AA. <u>Implementation</u>. All documents necessary to implement the Plan have been negotiated in good faith and at arms' length and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

BB. <u>New Series B Notes</u>. As described in the Disclosure Statement and the Davila Declaration, certain holders of Copper Debt have agreed to exchange their Copper Debt for New Series B Notes to be issued under the Plan, in accordance with and subject to the terms and conditions of the Restructuring Agreement. The Copper Debt is a claim against IUSA, and IUSA, S.A. de C.V.. In addition, simultaneous with the solicitation of acceptances and rejections of the Plan, IUSA solicited holders (the "<u>Consent Solicitation</u>") of Commercial Paper to exchange their Commercial Paper for New Series B Notes to be issued under the Plan. The Commercial Paper is a claim against IUSA. The effectiveness of the Plan is contingent upon the consummation of the Restructuring Agreement, the completion of all of the Restructuring Transactions, and the issuance of the New Series B Notes. Therefore, in order to fully provide for the implementation of the Plan as required under section 1123(a)(5) of the Bankruptcy Code, the Plan provides for the issuance by IUSA of the New Series B Notes upon a successful completion of the Consent Solicitation. The Consent Solicitation did not violate section 1125 of the Bankruptcy Code.

CC. <u>Mutual Release</u>. As described in the Restructuring Agreement, the Debtors, their subsidiaries, and the holders of the Copper Debt have agreed to enter into certain mutual releases of claims and liabilities arising out of, or relating to, among other things, the Copper Debt Note Litigation (as defined in the Restructuring Agreement), the Copper Contracts, and the Copper Debt. Such releases are fair and reasonable and are in the best interests of the Debtors, their Estates, and parties in interest. Based upon the record of the Chapter 11 Cases and the evidence proffered, adduced, and/or presented at the Confirmation Hearing, the Court finds that the releases contemplated by the Restructuring Agreement are consistent with the Bankruptcy Code and applicable law.

DD. <u>Assumption of Executory Contracts</u>. The Plan Proponents have satisfied the provisions of section 365 of the Bankruptcy Code with respect to the assumption and assignment of Executory Contracts pursuant to the Plan.

15

EE.     Transfers by Debtors. The transfers of property by the Debtors: (a) to the Reorganized Debtors (i) are or shall be legal, valid, and effective transfers of property; (ii) vest or shall vest the Reorganized Debtors with good title to such property free and clear of all Liens, charges, Claims, encumbrances, or interests, except as expressly provided in the Plan or this Order; (iii) do not and shall not constitute avoidable transfers under the Bankruptcy Code or under applicable nonbankruptcy law; and (iv) do not and shall not subject the Reorganized Debtors to any liability by reason of such transfer under the Bankruptcy Code or under applicable nonbankruptcy law, including, without limitation, any laws affecting successor or transferee liability; and (b) to Holders of Claims or Equity Interests, under the Plan are for good consideration and value and: (x) do not and shall not constitute avoidable transfers under the Bankruptcy Code or under applicable nonbankruptcy law; and (y) do not and shall not subject the Reorganized Debtors to any liability by reason of such transfer under the Bankruptcy Code or under applicable nonbankruptcy law, including, without limitation, any laws affecting successor or transferee liability.

FF.     Vesting of Assets. Except as otherwise expressly provided in the Plan, pursuant to sections 1123(a)(5), 1123(b)(3), and 1141(b) of the Bankruptcy Code, all property comprising the Estates of each Debtor, including, but not limited to, all Avoidance Actions and all Causes of Action shall automatically be retained and revested in the relevant Debtor or its respective successor, free and clear of all Claims, Liens, contractually-imposed restrictions, charges, encumbrances, and interests of Creditors and equity security holders on the Plan Effective Date, with all such Claims, Liens, contractually-imposed restrictions, charges, encumbrances and interests being extinguished, except as otherwise provided in the Plan. As of the Plan Effective Date, each Reorganized Debtor may operate its business and use, acquire, and dispose of property and settle and compromise Claims or Equity Interests without supervision of the Court free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and this Order. Without limiting the foregoing, each Debtor may pay the charges it incurs for professional fees, disbursements, expenses or related support services after the Plan Effective Date without any application to the Court.

GG.     Injunction, Exculpation, and Releases. The Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the injunction, exculpation, and releases set forth in Section 9 of the Plan. Section 105(a) of the Bankruptcy Code permits issuance of the injunction and approval of the releases and exculpation set forth in Section 9 of the Plan. Such provisions are fair and reasonable and are in the best interests of the Debtors, their Estates, and parties in interest. Further, the exculpation provision in the Plan does not relieve any party of liability for an act or omission to the extent such act or omission is determined by a final order to have constituted willful misconduct, gross negligence, fraud, or criminal conduct. Based upon the record of the Chapter 11 Cases, the Davila Declaration, and the evidence proffered, adduced, and/or presented at the Confirmation Hearing, the Court finds that the injunction, exculpation, and releases set forth in Section 9 of the Plan are consistent with the Bankruptcy Code and applicable law.

HH.     No Liquidation. The Plan does not provide for the liquidation of all or substantially all of the property of the Debtors.

16

II.    Good Faith. The Plan Proponents, the Consenting Creditors, and each of their respective affiliates, agents, directors, officers, employees, attorneys and other professionals will be acting in good faith if they proceed to: (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed by this Order.

JJ.    Jurisdiction. The Court may properly retain jurisdiction over the matters set forth in Section 11 of the Plan, subject to the terms thereof.

## CONCLUSIONS OF LAW

### NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT;

1.    Approval of Solicitation of Votes on Plan.    The Plan Proponents' solicited acceptances of the Plan in accordance with the Disclosure Statement Order.

2.    Confirmation. All requirements for confirmation of the Plan have been satisfied. Accordingly, the Plan in its entirety is CONFIRMED pursuant to section 1129 of the Bankruptcy Code. The terms of the Plan are incorporated by reference into, and are an integral part of, this Order.

3.    Plan Supplement. The documents contained in the Plan Supplement, are authorized and approved; and any amendments, modifications, and supplements thereto permitted by the Plan and this Order and all documents and agreements introduced into evidence by the Plan Proponents at the Confirmation Hearing (including all exhibits and attachments thereto and documents referred to therein), and the execution, delivery, and performance thereof by the Reorganized Debtors, are authorized and approved when they are finalized, executed, and delivered. Without further order or authorization of the Court, the Debtors, the Reorganized Debtors, the Plan Proponents, and their successors are authorized and empowered to make all modifications to all documents included as part of the Plan Supplement that are consistent with the Plan to the extent modified in accordance with Section 12.7 of the Plan. The modification of the documents contained in the Plan Supplement does not constitute a material modification of the Plan.

4.    Objections. To the extent that any objections, reservations of rights, statements, or joinders to confirmation have not been withdrawn, waived, or settled prior to entry of this Order or otherwise resolved as stated on the record of the Confirmation Hearing, they are hereby overruled on the merits.

5.    Solicitation and Notice. Notice of the Confirmation Hearing complied with the terms of the Disclosure Statement Order, was appropriate and satisfactory based on the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. The solicitation of votes on the Plan and the Solicitation Package complied with the solicitation procedures in the Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules. Notice of the Plan, the Plan Supplement, and all related

17

documents, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

6. <u>Plan Classification Controlling</u>. The classification of Claims and Equity Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.

7. <u>Assumption of Executory Contracts and Unexpired Leases</u>.

(i) Pursuant to Section 6.1.1 of the Plan, except as otherwise provided in the Plan or in any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, each Executory Contract of the Debtors that has not expired by its own terms before the Plan Effective Date that: (1) is listed on the Schedule of Assumed Contracts; (2) is not rejected prior to the Plan Effective Date; (3) is not the subject of a motion to reject Filed on or before the Confirmation Date upon which the Court has not entered an Order; (4) is not listed on the Schedule of Rejected Contracts; or (5) has not been otherwise modified or superseded by agreement of the parties thereto, shall be deemed to have been assumed by the applicable Debtor as of the Plan Effective Date, pursuant to section 365 of the Bankruptcy Code. Nothing in the Plan, any annex to the Plan, or any document executed or delivered in connection with the Plan or any such annex creates any obligation or liability on the part of the Debtors, the Reorganized Debtors or any other person or entity that is not currently liable for such obligation, with respect to any Executory Contract except as otherwise provided in the Plan. In addition, this Order shall constitute a finding of fact and conclusion of law that (i) each Executory Contract assumed hereunder is an executory contract which may be assumed by the Debtors, (ii) there are no defaults of the Debtors, no cure amounts owing pursuant to section 365(b)(i) of the Bankruptcy Code (the "Cure Amount"), no compensation due for any actual pecuniary loss, and there is adequate assurance of future performance with respect to each Executory Contract, (iii) such assumption is in the best interest of the Debtors and their estates, (iv) upon the Plan Effective Date, the assumed Executory Contracts constitute legal, valid, binding, and enforceable contracts in accordance with the terms thereof, and (v) the counterparty to each assumed Executory Contract is required to and ordered to perform under and honor the terms of the assumed Executory Contract.

(ii) Pursuant to Section 6.1.2 of the Plan, each Executory Contract assumed pursuant to Section 6.1 of the Plan shall revest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as modified by the provisions of the Plan. Nothing in the Plan or any Plan Document shall create any obligation or liability on the part of any Debtor, any Reorganized Debtor or any other Person that does not currently have such liability or obligation, with respect to any Executory Contract

(iii) Pursuant to Section 6.1.3 of the Plan, each Executory Contract that is assumed shall include (i) all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such Executory Contract and (ii) all Executory Contracts appurtenant to the premises, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vaults, tunnel or

18

bridge agreements, or franchises, and any other interests in real estate or rights *in rem* related to such premises, but excluding any agreement rejected pursuant to an order of this Court.

(iv)     Pursuant to Section 6.1.4 of the Plan, in the event of a dispute (each, a "Cure Dispute") regarding: (i) the Cure Amount; (ii) the ability of the applicable Reorganized Debtor to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract to be assumed; or (iii) any other matter pertaining to the proposed assumption, any party in interest may file an objection to confirmation pursuant to the procedures established in the order approving the Disclosure Statement. Any objection that raises a Cure Dispute must identify the disputed Executory Contract and set forth with particularity the basis of the Cure Dispute. To the extent a Cure Dispute relates solely to the Cure Amount, the applicable Debtor may assume the applicable Executory Contract prior to the resolution of the Cure Dispute provided that such Debtor reserves Cash in an amount sufficient to pay the full amount asserted as cure payment by the non-Debtor party to such Executory Contract (or such smaller amount as may be fixed or estimated by this Court). Any party that fails to object shall be forever barred, estopped, and enjoined from raising a Cure Dispute in this Court, in any other court, in any arbitration, or otherwise.

(v)     This Order shall constitute an Order of the Court under sections 365 and 1123(b) of the Bankruptcy Code approving the assumptions described above, as of the Plan Effective Date. Each Executory Contract assumed pursuant to the Plan shall be assumed only to the extent that any such contract or lease constitutes an Executory Contract. Assumption of a contract or lease pursuant to the Plan shall not constitute an admission by the Debtors, the Reorganized Debtors or the Plan Proponents (as applicable) that such contract or lease is an Executory Contract or that the Debtors or the Reorganized Debtors (as applicable) have any liability thereunder. All contracts and leases that are assumed will be assumed under their present terms or upon such terms as are agreed to in writing between the applicable Debtor and the counterparty to such contract or lease.

8.     Rejection of Executory Contracts and Unexpired Leases.

(i)     Pursuant to Section 6.2.1 of the Plan, effective immediately prior to the Plan Effective Date, each Executory Contract of the Debtors listed on the Schedule of Rejected Contracts is rejected, to the extent, if any, each constitutes an executory contract or unexpired lease, and without conceding that each constitutes an executory contract or unexpired lease or that the Debtors have any liability under each. Listing a contract or lease on the Schedule of Rejected Contracts is not deemed an admission by the Debtors or the Reorganized Debtors that such contract is an Executory Contract or that the Debtors or the Reorganized Debtors have any liability thereunder or under the Plan. The Debtors reserve the right at any time before Confirmation to amend the Schedule of Rejected Contracts, including to (a) delete any Executory Contract on such Schedule and provide for its assumption or (b) add any Executory Contract to such Schedule, thus providing for its rejection. The Debtors shall provide notice of any amendment of such Schedule to the party to the affected executory contract or unexpired lease and the U.S. Trustee.

19

(ii)     This Order shall constitute an Order of the Court under sections 365 and 1123(b) of the Bankruptcy Code approving all such rejections as described above, as of the Plan Effective Date. If the rejection by the Debtors, pursuant to the Plan or otherwise, of an Executory Contract results in a Claim that is not theretofore evidenced by a timely filed proof of claim or a proof of claim that is deemed to be timely filed under applicable law, then such Claim shall be forever barred and shall not be enforceable against the Debtors or Reorganized Debtors, or the properties of the Debtors or Reorganized Debtors, unless a proof of claim for damages arising from the rejection under the Plan of an Executory Contract is Filed within thirty (30) days after the mailing of notice of Confirmation. Any such Claims that become Allowed Claims shall be classified in Class T4 or C4 of the Plan, as applicable.

9.     <u>Indemnification of Directors, Officers and Employees</u>. Pursuant to Section 6.3 of the Plan, for purposes of the Plan, the obligation of a Debtor to exculpate, indemnify, and advance any expenses to any Person serving at any time before, on, or after the Petition Date as one of its current, former, or future directors or officers (each, an "<u>Indemnitee</u>") by reason of such Person's service in such capacity, for acts or omissions occurring at or prior to the consummation of the Plan, whether asserted or claimed prior to, at or after the consummation of the Plan, to the extent provided in such Debtor's Corporate Documents, a written agreement with the Debtor, in accordance with any applicable law, or any combination of the foregoing or otherwise, shall:  (a) survive confirmation of the Plan and the Plan Effective Date and continue in full force and effect (and not be modified, amended, or terminated in any manner adverse to any Indemnitee without the written consent of the affected Indemnitee); (b) become an obligation of the applicable Reorganized Debtor; and (c) not be discharged in accordance with section 1141 of the Bankruptcy Code, irrespective of whether indemnification or reimbursement is owed in connection with an event occurring before, on, or after the Petition Date.

10.     <u>D&O Liability Insurance Policies</u>. Pursuant to Section 6.4 of the Plan, notwithstanding anything in the Plan to the contrary, as of the Plan Effective Date, the Debtors shall assume (and assign to any of the Reorganized Debtors as necessary to continue the D&O Liability Insurance Policies in full force) all of the D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code. Entry of this Order shall constitute the this Court's approval of the Debtors' foregoing assumption of each of the D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in the Plan, Confirmation of the Plan shall not discharge, impair, or otherwise modify any obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such obligation shall be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be Filed.

11.     <u>Compensation and Benefits Plans</u>. Pursuant to Sections 6.5.1 and 6.5.2 of the Plan, except and to the extent previously assumed by an order of the Court, all employee compensation and Benefit Plans, including Benefit Plans and programs subject to sections 1114 and 1129(a)(13) of the Bankruptcy Code, entered into before or after the Petition Date and not since terminated, shall be deemed to be, and shall be treated as if they were, Executory Contracts that are to be assumed under the Plan. The Debtors' obligations under such plans and programs shall survive confirmation of the Plan except for (1) employee compensation plans or Benefit Plans specifically rejected pursuant to the Plan (to the extent such rejection

20

does not violate sections 1114 and 1129(a)(13) of the Bankruptcy Code) and (2) such employee compensation plans or Benefit Plans as have previously been rejected, are the subject of a motion to reject as of the Confirmation Date or have been specifically waived by the beneficiaries of any of such Benefit Plans or employee compensation plans. After the Plan Effective Date, the respective obligations, if any, of the Reorganized Debtors and the Retirement Plan Sponsor will be reinstated under the Plan.

12.    Distributions Under Plan. All distributions under the Plan shall be made in accordance with Section 7 of the Plan.

13.    Timing and Calculation of Amounts to Be Distributed. Pursuant to Section 7.1 of the Plan, except as otherwise provided in the Plan, on the Plan Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Plan Effective Date, on the date that such a Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtors as of the Distribution Record Date shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class and in the manner provided in the Plan. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Section 7.4 of the Plan. Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Plan Effective Date.

14.    No Duplication of Recoveries on Series A Eligible Debt. For the avoidance of doubt, a Holder of a Noteholder Pledge Claim or a Holder of an Unsecured Parent Guaranty shall only be entitled to receive a single recovery on account of such Holders' claims against the primary obligor, guarantor, or pledgor, arising under the Old 2016 Notes or the ESBDS I Loan, as applicable (i.e., a Claim for $1,000 unpaid principal amount of Old 2016 Notes and a related Claim against Tubo in respect of any pledged stock of CLH shall be deemed to be a single Noteholder Pledge Claim for $1,000 principal amount of Old 2016 Notes. Similarly, a Claim for $1,000 unpaid principal amount arising under the ESBDS I Loan against IUSA, as guarantor, and any related claims against IUSA, S.A. de C.V., as borrower, or any other member of the IUSA Group in respect of the ESBDS I Loan shall be deemed to be a single Unsecured Parent Guaranty Claim for $1,000 principal amount arising under the ESBDS I Loan).

15.    Disbursing Agent.

(i)    Pursuant to Section 7.2.1 of the Plan, except as otherwise provided in the Plan, all distributions under the Plan shall be made on the Plan Effective Date by the Reorganized Debtors as Disbursing Agents or such other Entity designated by the Reorganized Debtors as a Disbursing Agent.. A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Court.

21

In the event that a Disbursing Agent is so ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtors.

(ii)     Pursuant to Section 7.2.2 of the Plan, distributions of the New Series A Notes on account of the Old 2016 Notes shall be made by IUSA to the Indenture Trustee for the benefit of the Holders of the Noteholder Pledge Claims.

16.     <u>Rights and Powers of Disbursing Agent</u>.

(i)     <u>Powers of Disbursing Agent</u>. Pursuant to Section 7.3.1 of the Plan, the Disbursing Agent is hereby empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by further order of the Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

(ii)     <u>Expenses Incurred On or After Plan Effective Date</u>. Pursuant to Section 7.3.2 of the Plan, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Plan Effective Date (including taxes) and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors. Notwithstanding the foregoing, the Reorganized Debtors shall have no obligation to pay any fees or expenses incurred, or any compensation or expense reimbursement claims made, by IUSA on account of the distributions of the New Series A Notes.

17.     <u>Distributions on Account of Claims After the Plan Effective Date</u>.

(i)     <u>Payments and Distributions on Disputed Claims</u>. Pursuant to Section 7.4.1 of the Plan, distributions made after the Plan Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Plan Effective Date but which later become Allowed Claims are deemed to have been made on the Plan Effective Date.

(ii)     <u>Special Rules for Distributions to Holders of Disputed Claims</u>. Pursuant to Section 7.4.2 of the Plan, notwithstanding any provision otherwise in the Plan and except as may be agreed to by the Debtors or the Reorganized Debtors, on the one hand, and the Holder of a Disputed Claim, on the other hand, no partial payments and no partial distributions shall be made with respect to any Disputed Claim until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

18.     <u>Distributions on Account of Claims After the Plan Effective Date</u>.

(i)     <u>Delivery of Distributions in General</u>. Pursuant to Section 7.5.1 of the Plan, except as otherwise provided in the Plan, the Reorganized Debtors shall make distributions to Holders of Allowed Claims, except for Holders of Allowed Claims in Class T3,

22

at the address for each such Holder as indicated on the Debtors' books and records as of the date of any such distribution; provided, however, that the manner of such distributions shall be determined at the discretion of the Reorganized Debtors; and provided, further, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in the Debtors' books and records or, as applicable, any Proof of Claim filed by that Holder. Distributions of New Series A Notes of the Reorganized Debtors to Holders of Allowed Claims in Class T3 shall be made to the Indenture Trustee for the benefit of the Holders of the Noteholder Pledge Claims as provided in the Plan. The Indenture Trustee shall, in turn, promptly administer the distributions to the Holders of Allowed Noteholder Pledge Claims, in accordance with the Plan and the Existing Indenture.

(ii)  Distributions Free and Clear. Pursuant to Section 7.5.2 of the Plan, except as otherwise provided in the Plan, any distributions under the Plan and the issuance and distribution of the New Notes shall be free and clear of any Liens, Claims and encumbrances, and no other entity, including but not limited to the Debtors, the Reorganized Debtors, or the members of the IUSA Group shall have any interest, legal, beneficial or otherwise, in assets transferred to holders of Allowed Claims or Eligible Debt pursuant to the Plan; provided, however, that nothing herein or in the Plan shall affect the Indenture Trustee's charging lien, which lien is expressly preserved and shall survive confirmation of the Plan and the Plan Effective Date.

(iii)  Undeliverable Distributions and Unclaimed Property. Pursuant to Section 7.5.3 of the Plan, in the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then current address of such Holder, at which time such distribution shall be made to such Holder without interest; provided, however, such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the Plan Effective Date. After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors or IUSA, as applicable (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such Claim shall be discharged and forever barred.

(iv)  Compliance with Tax Requirements/Allocations. Pursuant to Section 7.5.4 of the Plan, in connection with the Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant thereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens and encumbrances. Except as otherwise provided in the Plan, distributions in respect of Allowed Claims shall be allocated first to the principal

23

amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

        (v)    Setoff. Pursuant to Section 7.5.5 of the Plan, each Debtor and each Reorganized Debtor may withhold (but not set off except as set forth below) from the distributions called for under the Plan on account of any Allowed Claim (other than a Noteholder Pledge Claim or an Unsecured Parent Guaranty Claim) an amount equal to any claims, equity interests, rights, and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the Holder of any such Allowed Claim. In the event that any such claims, equity interests, rights, and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the Holder of any such Allowed Claim are adjudicated by Final Order or otherwise resolved, the Debtors may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant hereto on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim) the amount of any adjudicated or resolved claims, equity interests, rights, and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the Holder of any such Allowed Claim, but only to the extent of such adjudicated or resolved amount. Neither the failure to effect such a setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such Claims, Equity Interests, rights, and Causes of Action that the Debtors or the Reorganized Debtors may possess against any such Holder, except as specifically provided herein.

        19.    Continued Corporate Existence. Pursuant to Section 8.1 of the Plan, the Reorganized Debtors shall continue to exist after the Plan Effective Date as separate corporate entities in accordance with applicable law under their respective Corporate Documents, except to the extent such Corporate Documents shall be amended including to comply with section 1123(a)(6) of the Bankruptcy Code, without the need for any further corporate action. Any proposed amendments to the Corporate Documents, including but not limited to any changes in the corporate and organizational structure of the Debtors, have been filed in the Plan Supplement. On and after the Plan Effective Date, the Corporate Documents, as so amended, shall continue to govern the Reorganized Debtors' operations. After the Plan Effective Date, the Reorganized Debtors shall be authorized to: (i) establish new by-laws or corporate charters for either of the Reorganized Debtors, and/or (ii) change the corporate structure (e.g., corporation to limited liability company) of either Reorganized Debtor under the law of its applicable jurisdiction of organization, without further order of the Court.

        20.    Revesting of Assets. Pursuant to Section 8.2 of the Plan, except as otherwise set forth in the Plan or in this Order, as of the Plan Effective Date, the property of the Estates, together with any property of the Debtors that is not property of the Estates and that is not specifically disposed of pursuant to the Plan, shall revest in the applicable Reorganized Debtors free and clear of all Claims, Liens, encumbrances and other interests of the Holders of Claims or Equity Interests. Thereafter, the Reorganized Debtors may operate their businesses and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code, Bankruptcy Rules, and Court.

21.     Operation of Business and Properties.  Pursuant to Section 8.3 of the Plan, all rights, privileges, entitlements, authorizations, grants, permits, licenses, easements, franchises, and other similar items which constitute part of, or are necessary or useful in the operation of the property or the business of the Debtors or the Reorganized Debtors, whether in the United States, Mexico or elsewhere, shall be vested in the applicable Reorganized Debtors on the Plan Effective Date, and shall thereafter be exercisable and usable by the Reorganized Debtors to the same extent they would have been exercisable and usable by the Debtors before the Petition Date or by the Estates or Debtors in Possession during the pendency of the Chapter 11 Cases.

22.     Retention of Causes of Action.  Pursuant to Section 8.4 of the Plan, except to the extent any Causes of Action are expressly and specifically waived, released or abandoned under the Plan or this Order, or pursuant to any contract, instrument, release, or other agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code: (1) any and all Causes of Action accruing to any Debtor or its Estate against any Person shall remain assets of and vest in the applicable Reorganized Debtor, whether or not litigation relating thereto is pending on the Plan Effective Date, and whether or not such Causes of Action have been listed or referred to in the Plan, the Disclosure Statement, the Schedule of Retained Causes of Action, or any other document Filed with the Court; and (2) neither any Debtor nor any Reorganized Debtor waives, relinquishes, or abandons (nor shall they be estopped or otherwise precluded from asserting) any Causes of Action: (a) whether or not such Causes of Action have been listed or referred to in the Plan, the Disclosure Statement, the Schedule of Retained Causes of Action, or any other document Filed with the Court; (b) whether or not such Causes of Action are currently known to the Debtors; and (c) whether or not a defendant in any litigation relating to such Causes of Action Filed a Proof of Claim, a notice of appearance or any other pleading or notice in the Chapter 11 Cases, voted for or against the Plan, or received or retained any consideration under the Plan.  Without in any manner limiting the generality of the foregoing, notwithstanding any otherwise applicable principle of law or equity, including, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion or any similar doctrine, the failure to list, disclose, describe, identify, or refer to any Causes of Action in the Plan, the Schedule of Retained Causes of Action or any other document Filed with the Court shall in no manner waive, eliminate, modify, release, or alter the Reorganized Debtors' right to commence, prosecute, defend against, settle, and realize upon any Causes of Action that any Debtor or any Reorganized Debtor has, or may have, as of the Confirmation Date.

(i)     Pursuant to Section 8.4.1 of the Plan, except as otherwise provided in the Plan, this Order, any other order of the Court or any Plan Document, nothing shall affect any Debtor's or Reorganized Debtor's rights and defenses, both legal and equitable, with respect to any Disputed Claims, including, but not limited to, all rights with respect to legal and equitable defenses to setoffs or recoupments against such Claims.

(ii)     Pursuant to Section 8.4.2 of the Plan, the Debtors and the Reorganized Debtors have waived their rights to institute or prosecute any Avoidance Actions.

23.     Cancellation of Existing Agreements.

25

(i) Except as provided in Section 8.5.3 of the Plan, or otherwise expressly provided in the Plan or herein, on the Plan Effective Date, the Existing Indenture, the Existing Pledge Agreement and any and all notes, instruments or other documents evidencing the Old 2016 Notes, the Noteholder Pledge Claims, the ESBDS I Loan and the Unsecured Parent Guaranty Claims shall be deemed cancelled, extinguished, discharged, and of no further force and effect, and, upon the delivery to the Holders of the Allowed Noteholder Pledge Claims and Allowed Unsecured Parent Guaranty Claims their ratable distribution of the New Series A Notes as set forth in Section 4 of the Plan, the obligations of the Debtors, the Non-Debtor Subsidiaries, IUSA, the Existing Guarantors, the Indenture Trustee, and any of their respective affiliates to the Holders of the Old 2016 Notes and ESBDS I Loan for obligations and/or duties arising under or related to the Old 2016 Notes and the ESBDS I Loan, respectively, shall be discharged. The Indenture Trustee is authorized to take whatever action may be necessary or appropriate (in each case, as requested by the Debtors or the Reorganized Debtors) to effectuate the terms and conditions specified herein. Without limiting the generality of the foregoing, the Indenture Trustee shall be expressly obligated to deliver to the Debtors, the Reorganized Debtors or the New Indenture Trustee, as directed by the Debtors, the shares pledged pursuant to the New Pledge Agreement to be held as collateral for the New Series A Notes.

(ii) Pursuant to Section 8.5.2 of the Plan, Section 8.5 of the Plan shall apply only to notes, instruments or other documents which evidence the Old 2016 Notes, the ESBDS I Loan and any guaranties and pledges thereunder, and except as otherwise expressly provided in the Plan or this Order, all other notes, instruments, and other documents evidencing Claims against any Debtor shall continue in full force and effect after the Plan Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

(iii) Pursuant to Section 8.5.3 of the Plan, notwithstanding anything in the Plan or this Order to the contrary, the Existing Indenture, the Old 2016 Notes and the Existing Pledge Agreement, shall continue in effect for the purposes of allowing (a) the Holders of the Noteholder Pledge Claims to receive their distributions under the Plan, (b) IUSA and/or the Indenture Trustee to make all distributions on account of the Allowed Noteholder Pledge Claims pursuant to the Plan and to perform any other necessary administrative functions with respect thereto, and (c) permitting the Indenture Trustee to assert its charging lien against such distribution for payment of any fees and expenses.

24. Restructuring Transactions. On the Plan Effective Date, the Restructuring Transactions enumerated in Section 8.7 of the Plan shall be effectuated. The Debtors or the Reorganized Debtors, as the case may be, are authorized and directed to issue the New Notes and execute and deliver all documents related thereto. While the Plan provides for the issuance of New Series B Notes to holders of Series B Eligible Debt pursuant to section 1145 of the Bankruptcy Code in exchange for such Series B Eligible Debt, notwithstanding anything contained herein to the contrary, including, without limitation, Sections 26, 27, 28, 29, 30 and 31 hereof, neither the Plan nor this Order shall otherwise affect any rights of such holders of such Series B Eligible Debt, unless, and then only to the extent, such holder is also the Holder of a Claim against or Equity Interest in a Debtor.

26

25. <u>Mutual Release</u>. The releases by and among the Debtors, their subsidiaries, and the holders of the Copper Debt contemplated by the Restructuring Agreement, are hereby approved, and the Debtors and their subsidiaries may execute and deliver all documents related thereto.

26. <u>Effectuating Documents; Further Transactions</u>.

(i) Pursuant to Section 8.8.1 of the Plan, the entry of this Order shall constitute a direction to and authorization for the Plan Proponents and the Reorganized Debtors (as the case may be) and their respective directors and officers to take or cause to be taken any action that they deem necessary or appropriate to consummate the transactions contemplated by the Restructuring Agreement, the Plan and the Plan Supplement, and to execute any contracts, instruments, and other agreements or documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, in each case, without further order by the Court.

(ii) Pursuant to Section 8.8.2 of the Plan, the appropriate officers (including the chief executive officer, chief financial officer, president, treasurer, or any vice president thereof) of each of the Plan Proponents (as the case may be), each acting singly, are hereby authorized to execute, deliver, file or record such contracts, instruments, releases, and other agreements or documents, and take such actions, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and the transactions contemplated by the Plan and Plan Supplement, without any requirement or further action by the board of directors or stockholders of the applicable Plan Proponent. The secretary, assistant secretary or other appropriate officer of each of the Plan Proponents are hereby authorized to certify or attest to any of the foregoing actions.

27. <u>Management of Reorganized Debtors</u>. Pursuant to Section 8.9.1 of the Plan, subject to the New Corporate Documents, on the Plan Effective Date, the management, control, and operation of each Reorganized Debtor shall become the general responsibility of its respective board of directors in accordance with applicable non-bankruptcy law. Except as otherwise has been disclosed, the individuals serving as members of the Board of Directors of each Debtor as of the Petition Date shall continue to serve as directors of each respective Reorganized Debtor. Subject to the New Corporate Documents, the directors of each Reorganized Debtor shall have the responsibility for the management, control, and operation of each respective Reorganized Debtor on and after the Plan Effective Date.

28. <u>Discharge</u>.

(i) Pursuant to Section 9.1.1 of the Plan, except as otherwise provided in the Plan or this Order, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims and Equity Interests of any nature whatsoever against the Debtors or any of their Estates, assets, properties or interests in property, and regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Equity Interests. Except as otherwise provided in the Plan, upon the Plan Effective Date, the Debtors shall be deemed discharged and released under section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims and

Equity Interests, including, but not limited to, demands and liabilities that arose before the Plan Effective Date, and all debts of the kind specified in sections 502(g), 502(h) and 502(i) of the Bankruptcy Code, regardless of whether or not: (a) a Proof of Claim based on such debt is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (b) the Claim is Allowed, or (c) the Holder of a Claim based on such debt has accepted the Plan or is entitled to receive a distribution thereunder. Upon entry of this Order, and subject to the occurrence of the Plan Effective Date, any Holder of such discharged Claim shall be precluded from asserting against the applicable Debtor or Reorganized Debtor, their successors and assigns, or their assets or properties any other or future Claims based upon any document, instrument, act or omission, transaction or other activity of any kind or nature that occurred before the Plan Effective Date. The Reorganized Debtors shall not be responsible for any Claims against or Equity Interests in the Debtors or the Debtors in Possession except (a) those payments and distributions expressly provided for or due under the Plan and (b) Claims and Equity Interests that are Unimpaired under the Plan and not previously satisfied in full.

(ii)     Pursuant to Section 9.1.2 of the Plan, upon the Plan Effective Date, each Holder of a Noteholder Pledge Claim or an Unsecured Parent Guaranty Claim and any affiliate of such Holder shall be deemed to have waived, released and discharged IUSA and each member of the IUSA Group from any Liens, Claims, Causes of Action, rights or liabilities arising from notes issued under, and the guarantees issued pursuant to, the Existing Indenture or the ESBDS I Loan. In addition, the Indenture Trustee is authorized and directed to take all such actions necessary to effectuate the foregoing. Upon the Plan Effective Date, all such persons shall be forever precluded and enjoined from prosecuting or asserting any such discharged Claim against IUSA, the IUSA Group, the Reorganized Debtors, or any of their respective affiliates. Notwithstanding any other provision herein or in the Plan to the contrary, the Indenture Trustee's charging lien shall not be discharged, released, or otherwise impaired by confirmation of the Plan.

29.     Exculpation. Pursuant to Section 9.2 of the Plan, to the extent permitted by applicable law, as of the Plan Effective Date, the Released Parties and any attorneys, financial advisors, investment bankers, accountants, consultants, or other professionals of the Released Parties shall neither have nor incur any liability to, or be subject to any right of action by, any Holder of a Claim or Equity Interest, or any other party-in-interest, or any of their respective employees, representatives, financial advisors, attorneys, or agents acting in such capacity, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Chapter 11 Cases, including without limitation: (i) formulating, negotiating and executing the Plan, the Disclosure Statement, the Restructuring Agreement and any related agreements, instruments or other documents; (ii) the solicitation of votes for and the pursuit of the Plan; (iii) the consummation of the Plan; or (iv) the implementation and administration of the Plan or the property to be distributed in conjunction with the Plan; provided, however, that the foregoing provision shall not apply to any Causes of Action arising out of an act or omission that is determined by a Final Order entered by a court of competent jurisdiction to have constituted actual or intentional fraud, willful misconduct, gross negligence or criminal conduct.

30.     Releases by Debtors and Plan Proponents. Pursuant to Section 9.3 of the Plan, to the extent permitted by applicable law, on the Plan Effective Date, for good and

valuable consideration, including the service of the Released Parties to facilitate the restructuring of the Debtors and the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, the Debtors , the Reorganized Debtors and IUSA, in their individual capacities and, as applicable, as debtors in possession on behalf of the Debtors' Estates, shall be deemed to have unconditionally released the Released Parties and any attorneys, financial advisors, investment bankers, accountants, consultants, or other professionals of the Released Parties from any and all claims, Causes of Action, obligations, rights, suits, damages, remedies and liabilities whatsoever, including any claims that could be asserted on behalf of the Debtors (whether derivatively or otherwise) including chapter 5 actions, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that the Debtors or their subsidiaries would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Equity Interest or other Person, based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Plan Effective Date; provided, however, that these releases shall not apply to any Causes of Action arising out of an act or omission that is determined by a Final Order entered by a court of competent jurisdiction to have constituted actual or intentional fraud, willful misconduct, gross negligence or criminal conduct. The releases set forth in this paragraph shall be binding upon any chapter 7 trustee in the event the Chapter 11 Cases are converted to chapter 7.

31.     Releases by Holders of Claims.  Pursuant to Section 9.4 of the Plan, except as specifically set forth in the Plan or this Order, to the fullest extent permitted by applicable law, on the Plan Effective Date, for good and valuable consideration, including the service of the Released Parties to facilitate the restructuring of the Debtors and the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, each Holder of a Claim shall unconditionally release the Released Parties from any and all claims, Causes of Action, obligations, rights, suits, damages, remedies and liabilities whatsoever, including any claims that could be asserted on behalf of the Debtors (whether derivatively or otherwise) including chapter 5 actions, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that the Debtors or their subsidiaries would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Equity Interest or other Person, based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Plan Effective Date, in any way relating or pertaining to, (x) the Debtors or Reorganized Debtors, (y) the Chapter 11 Cases or (z) the negotiation, formulation, implementation and preparation of the Restructuring Agreement, the Plan, the Disclosure Statement, and any related agreements, instruments or other document, provided, however, the foregoing provision shall not apply to any Causes of Action arising out of an act or omission that is determined by a Final Order entered by a court of competent jurisdiction to have constituted actual or intentional fraud, willful misconduct, gross negligence or criminal conduct; provided, further, however, the foregoing provision shall not apply to any claim, Cause of Action,  right, suit, damage or remedy against UCI held by GECC (or any other lender or holder of obligations, if any, related to the GECC Loan), or to any obligation or liability of UCI to GECC (or any other lender or holder of obligations, if any, related to the GECC Loan), arising from or related to the GECC Loan; provided, further, however, nothing in the Chapter 11 Cases, the Confirmation Order, the Plan, or section 1141 of the Bankruptcy

Code shall in any way be construed to discharge, release, exculpate, limit, or relieve the Released Parties, or any other entity that may be liable with respect to the Cambridge-Lee Industries, Inc. Employees Retirement Plan or any other IUSA Group defined benefit plan from the claims of the PBGC or the Cambridge-Lee Industries, Inc. Employees Retirement Plan under any law, governmental policy, or regulatory provision, and the PBGC, the Cambridge-Lee Industries, Inc. Employees Retirement Plan, and any other IUSA Group defined benefit plan shall not be enjoined or precluded from enforcing such liability or responsibility by any of the provisions of the Plan, Confirmation Order, or section 1141 of the Bankruptcy Code. Nevertheless, the PBGC is not aware of any claims or causes of action as of the Plan Effective Date that the PBGC or the Cambridge-Lee Industries, Inc. Employee Retirement Plan would assert against the Released Parties, any member of the IUSA Group, or any other entity.

32.     Injunction. Pursuant to Section 9.5 of the Plan, except as otherwise provided in the Plan or this Order, and in addition to the injunction provided under sections 524(a) and 1141 of the Bankruptcy Code, on and after the Plan Effective Date, all Persons who have held, currently hold or may hold a Claim or other debt or liability or Equity Interest which is released, discharged or terminated under the Plan, are permanently enjoined, on and after the Plan Effective Date, from taking any of the following actions against a Released Party or its property on account of such released, discharged or terminated Claims, debts, liabilities or Equity Interests: (1) commencing or continuing in any manner (including by directly or indirectly assisting or facilitating the commencement or continuation of) any action or other proceeding of any kind; (2) enforcing, levying, attaching, collecting or otherwise recovering in any manner any judgment, award, decree or order; (3) creating, perfecting or enforcing any lien or encumbrance of any kind; (4) except as provided herein, asserting any setoff, right of subrogation or recoupment of any kind against any obligation due from any Released Party; and (5) commencing, continuing or in any manner taking part or participating in any action, proceeding or event (whether directly or indirectly) that would be in contravention of the terms, conditions and intent of the Plan. The foregoing injunction will extend to the benefit of the successors of the Released Parties and their respective properties and interests in property. Any Person injured by any willful violation of such injunction may recover actual damages, including costs and attorneys' fees and, in appropriate circumstances, may recover punitive damages from the willful violator.

33.     Terms of Injunctions and Stays. Pursuant to Section 9.6 of the Plan, unless otherwise provided in the Plan or in this Order, all injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or any order of the Court, and in existence on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Order), shall remain in full force and effect until the Plan Effective Date.

34.     Administrative Claim and Priority Tax Claims Allowed as Set Forth in Books and Records. Except as otherwise specified in the Plan, the amount set forth in the books and records of the applicable Debtor (or agreed to by the applicable Debtor and the Holder in the ordinary course) shall constitute the amount of the Allowed Administrative Claim an/or Allowed Priority Tax Claim of such Holder, subject to the right of such Holder to object to the amount of such Claim; provided, however, that notwithstanding any provision in

30

the Plan, this Order, or any other Plan Documents to the contrary, the allowance and payment of an Administrative Expense Claim held by the IRS, if any, shall be governed by section 503 of the Bankruptcy Code.

35.     Retention of Jurisdiction. The Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law (except in the case of the New Indentures, the New Notes and the Restructuring Agreement, and each of the documents and agreements relating to any of them, which in each case, shall be subject to the jurisdiction or exclusive jurisdiction, as applicable, indicated in the definitive documentation thereof). Until the Chapter 11 Cases are closed, any party in interest may commence a proceeding in the Court in respect of any matter as to which jurisdiction has been retained.

36.     Exemption from Certain Transfer Taxes. Pursuant to Section 12.1 of the Plan, to the fullest extent permitted under section 1146 of the Bankruptcy Code, any transfers from any Debtor to the applicable Reorganized Debtor or any other Person pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment. Any and all appropriate state or local governmental officials or agents are hereby directed to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any instruments evidencing such transfers without the payment of any such tax or governmental assessment.

37.     Section 1145 Exemption. Pursuant to Section 12.2 of the Plan and section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of the New Notes, including the New Series B Notes, contemplated by the Restructuring Agreement, the Plan, and all agreements incorporated herein, shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable federal or state law requiring registration prior to the offering, issuance, distribution, or sale of securities. In addition, under section 1145 of the Bankruptcy Code, the New Notes and any and all agreements incorporated therein, will be freely tradable by the recipients thereof, subject to: (1) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act; (2) compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments; and (3) applicable regulatory approval.

38.     Payment of Statutory Fees. Pursuant to Section 12.3 of the Plan, all fees payable pursuant to section 1930 of title 28 of the United States Code shall be paid on or before the Plan Effective Date. All such fees that arise after the Plan Effective Date, but prior to the closing of the Chapter 11 Cases, shall be paid by the Reorganized Debtors.

39.     Payment of Indenture Trustee Expenses. Pursuant to Section 12.4 of the Plan, the Indenture Trustee Expenses incurred through the Plan Effective Date shall be paid, in full in Cash, on or before the Plan Effective Date by either IUSA or the Debtors. Any Indenture Trustee Expenses incurred after the Plan Effective Date shall be paid in full in Cash within 20 days of receipt of the Indenture Trustee's invoice.

31

40. <u>Manner of Payment</u>. Pursuant to Section 12.5 of the Plan, except as specifically provided in the Plan, at the option of the Debtors, any Cash payment to be made under the Plan may be made by a check or wire transfer or as otherwise required or provided in applicable agreements.

41. <u>Successors and Assigns</u>. Pursuant to Section 12.6 of the Plan, the rights, benefits, and obligations of any entity named or referred to in the Plan are binding on, and will inure to the benefit of, any permitted heirs, executors, administrators, successors or assigns of such entity.

42. <u>Amendment and Modification</u>. Pursuant to Section 12.7.2 of the Plan, after the Confirmation Date and prior to substantial consummation of the Plan, as defined in section 1101(2) of the Bankruptcy Code, the Plan Proponents may, under section 1127(b) of the Bankruptcy Code, institute proceedings in this Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Plan Documents, the Disclosure Statement, or this Order, and to accomplish such matters as may be necessary or appropriate to carry out the purposes and effects of the Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of this Court, and that the Plan, as altered, amended or modified satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code and the Plan Proponents have complied with section 1129 of the Bankruptcy Code. A Holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as altered, amended, modified or clarified in accordance with Section 12.7.2 of the Plan, unless the proposed alteration, amendment, modification or clarification adversely changes the treatment of the Claim of such Holder.

43. <u>Technical Adjustments</u>. Notwithstanding anything in the Plan or herein to the contrary, prior to the Plan Effective Date the Debtors may make appropriate technical adjustments and modifications to the Plan or the Plan Documents without further order or approval of this Court, *provided, however,* that such technical adjustments and modifications are made in accordance with the terms and conditions of the Restructuring Agreement and do not adversely affect in a material way the treatment of Holders of Claims or Equity Interests.

44. <u>Binding Effect</u>. Upon the Plan Effective Date, pursuant to Section 12.8 of the Plan, the Plan shall be binding on and inure to the benefit of the Debtors, IUSA, the other members of the IUSA Group, all current and former Holders of Claims against and Equity Interests in the Debtors and their respective successors and assigns, including, but not limited to, the Reorganized Debtors, and all other parties-in-interest in the Chapter 11 Cases.

45. <u>Substantial Consummation</u>. Pursuant to Section 12.10 of the Plan, substantial consummation of the Plan under Bankruptcy Code section 1101(2) is hereby deemed to occur on the Plan Effective Date.

46. <u>Conditions to Effectiveness</u>. Pursuant to Section 13.2 of the Plan, the Plan Effective Date shall not occur unless and until the conditions enumerated in Section 13.2 of the Plan have been satisfied or been duly waived in accordance with Section 13.3 of the Plan.

47.     Waiver of Conditions. Pursuant to Section 13.3 of the Plan, each of the conditions set forth in Section 13.2 may be waived in whole or in part by the Debtors without any notice to parties in interest or the Court and without a hearing; provided that, Sections 13.2.5 and 13.2.6 may not be waived by the Debtors except as may be provided in the Consensual Exchange, the Restructuring Agreement and the New Notes. The failure to satisfy or waive any condition to the Plan Effective Date may be asserted by the Debtors regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtors or any of them). The failure of the Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

48.     Effect of Failure of Conditions. Pursuant to Section 13.4 of the Plan, if, following entry of this Order, the Restructuring Agreement has terminated in accordance with its terms prior to the occurrence of the Plan Effective Date, then this Order shall be vacated by the Court without further notice or order. If this Order is vacated pursuant to Section 13.4 of the Plan: (a) the Debtors shall File a notice to this effect with the Court; (b) the Plan shall be null and void in all respects; and (c) nothing contained in the Plan shall (x) constitute a waiver or release of any Claim against or Equity Interest in any Debtor or (y) prejudice in any manner the rights of the Holder of any Claim or Equity Interest.

49.     Filing of Additional Documents. On or before the Plan Effective Date, the Plan Proponents may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and provisions hereof or the Plan that are consistent with the Plan and the Restructuring Agreement.

50.     Post-Confirmation/Pre-Plan Effective Date Operations. The Debtors shall continue to operate their businesses in the ordinary course in accordance with this Order, the Bankruptcy Code, Bankruptcy Rules, Local Rules and other applicable laws.

51.     Severability. The provisions of the Plan shall not be severable unless such severance is agreed to by the Debtors and the Consenting Creditors as if such severance constituted an amendment or modification in accordance with the terms and conditions of the Restructuring Agreement.

52.     No Further Action. All actions authorized to be taken pursuant to the Plan shall be effective on or as of the Plan Effective Date pursuant to this Order, without further application to or order of the Court, or further action by the respective officers, directors, members or stockholders of the Reorganized Debtors, and with the effect that such actions had been taken by unanimous action of such officers, directors, members or stockholders.

53.     Record. The record of the Confirmation Hearing is closed. The findings of fact and conclusions of law of the Court set forth in this Order and at the Confirmation Hearing shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and the findings of fact and conclusions of the Court at the Confirmation Hearing are incorporated herein by reference.

NY3 3091578.16

54.     Reversal. If any or all of the provisions of this Order are hereafter reversed, modified or vacated by subsequent order of the Court or any other court, such reversal, modification or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Plan Proponents' receipt of written notice of any such order. Notwithstanding any such reversal, modification or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Order and the Plan or any amendments or modifications thereto.

55.     Conflicts Between Order and Plan. The failure to specifically describe or include any particular provision of the Plan in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan is approved and confirmed in its entirety. The provisions of the Plan and this Order shall be construed in a manner consistent with each other so as to effect the purpose of each; *provided, however*, that if there is determined to be any inconsistency between any Plan provision and any provision of this Order that cannot be so reconciled, then solely to the extent of such inconsistency, the provisions of this Order shall govern and any provision of this Order shall be deemed a modification of the Plan and shall control and take precedence. The provisions of this Order are integrated with each other and are non-severable and mutually dependent.

56.     Inconsistencies. In the event that the terms or provisions of the Plan are inconsistent with the terms and provisions of any document executed in connection with the Plan or any other Plan Documents Filed with the Court in connection with the Plan (except with respect to the Restructuring Agreement, the New Notes, the New Indentures, or any of the collateral documents relating to the New Notes, in which case each such document controls), the terms of the Plan shall control. This provision is not intended and shall not modify in any way paragraph 55 above.

57.     Notice of Entry of Confirmation Order. In accordance with Bankruptcy Rules 2002 and 3020(c), on or before the Plan Effective Date, the Plan Proponents (or their agents) shall give notice of the entry of this Order (the "Notice of Confirmation") by United States first class mail postage prepaid, by hand or by overnight courier service to, without duplication, the parties entitled to notice thereto.

58.     Notice of Plan Effective Date. On the Plan Effective Date, or as soon as practicable after the occurrence of the Plan Effective Date, the Plan Proponents shall File notice of the occurrence of the Plan Effective Date and shall serve a copy of same on the parties entitled to notice thereto.

59.     Authorization to Close. The Court directs that Bankruptcy Rule 3020(e) shall not apply to this Order and authorizes the Plan Proponents to consummate the Plan immediately after entry of this Order, except as otherwise provided in this Order.

60.     <u>Final Order</u>. This Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof. Pursuant to the authority of the Court granted under Bankruptcy Rule 3020(e), this Order shall not be stayed until the expiration of fourteen (14) days after entry of this Order and shall be effective immediately upon its entry.

Dated: Aug 25, 2011

HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE